IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

TERESA VALENCIA )
)
      Plaintiff, )
)
v. )     CASE NO. 3:08-cv-069-WKW
)     [WO]
DEPARTMENT OF INTERIOR, )
WASHINGTON, DC, *et al.*, )
)
      Defendants. )

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Pursuant to 28 U.S.C. § 636(b)(1) this case was referred to the undersigned United States Magistrate Judge for review and submission of a report with recommended findings of fact and conclusions of law (Doc. 3, filed February 1, 2008). Now pending before the Court is *Defendants' Motion to Dismiss* and *Defendants' Memorandum in Support of Motion to Dismiss* (Docs. 18-19, filed April 29, 2008). For good cause herein shown, it is the recommendation of the Magistrate Judge to grant the motion and dismiss the action.

### I. PARTIES AND COMPLAINT

*Pro se* Plaintiff, Teresa Valencia ("Valencia" or "Plaintiff") is a resident of Montgomery, Alabama, a location in the Middle District of Alabama. Valencia initiated this action on January 30, 2008. *See* Doc. 1, "Complaint." Valencia filed her amended complaint on February 6, 2008. *See* Doc. 6, "Amended Complaint." By Order filed February 7, 2008, the Court granted permission for Teresa Valencia to proceed *in forma pauperis*. *See* Doc. 7, "Order Granting IFP."

Valencia's amended complaint asserts claims against the United States Department of Interior ("DOI"), Catherine Farmer Light ("Light") and Herbert Tyrone Brandyburg ("Brandyburg"), her two supervisors, in both their individual and official capacities. *See* Doc. 19. In her amended complaint, Valencia states she was employed as a Museum Specialist since October 2002 at the Tuskegee Institute National Historic Site ("Tuskegee Institute") which is part of the DOI. In her amended complaint, Valencia asserts a variety of claims interspersed over six separate counts. Her claims include: (1) breach of implied contract of employment; (2) disparate treatment and hostile work environment; (3) hazardous work environment; (4) denial of sick leave; (5) worker's compensation violations; (6) deliberate indifference to medical well-being; (7) negligence; (8) negligence estoppels [sic]; (9) loss of enjoyment of life; and (10) mental anguish. Valencia ostensibly brings her claims under (1) the Fourth, Eighth and Fourteenth Amendments via 42 U.S.C. §§ 1983 and 1986; (2) the Family Medical Leave Act ("FMLA"); (3) the Federal Torts Claim Act ("FTCA"); (4) the Civil Rights Act - presumptively 42 U.S.C. § 2000e-5 (Title VII); and (5) 28 U.S.C. § 2283 ("Federal Anti-Injunction Act"). *See generally* Doc. 6.

In Count I, Valencia asserts she learned several objects in the museum were laced with arsenic and lead, and despite Brandyburg being aware of the contaminated museum collection, he did not tell her about it. *See* Doc. 6 at ¶ 5. Valencia alleges Brandyburg and Light refused to assist her in obtaining a test to determine her occupational exposure to lead and arsenic. *Id.* at ¶ 6. Valencia avers she did not receive any help until she contacted headquarters in Washington D.C. and they sent her to Atlanta, GA for tests. *Id.* at ¶¶ 6-7.

On April 16, 2007, the contaminated museum collection went missing, and Valencia states Brandyburg would not give her any information on where it was taken. *Id.* at ¶ 7. Next, Valencia asserts she was threatened with disciplinary action for contacting Washington D.C. and Light and Brandyburg said she deliberately contaminated herself. *Id.* at ¶ 8. As a result, Valencia submitted a formal complaint to the Occupational Safety and Health Administration. *Id.* Afterwards, she was forced by Light and Brandyburg to move her office to the Carver Museum which was allegedly contaminated with mold spores. *Id.* at ¶ 9. Valencia alleges she was also reprimanded by Facility Manager Andrew Callens for bringing up several other safety and health issues during a building inspection. *Id.* at ¶ 11.

In Count II, Valencia states she suffered heart failure on December 30, 2006. *Id.* at ¶ 12. Her treating physician, Dr. Gilberto Sanchez ("Dr. Sanchez")asked for Valencia to be excused from work until January 12, 2007. *Id.* One day after returning to work, Valencia alleges she had to go to the emergency room because of a blood pressure spike. *Id.* Around 6:00 p.m., Brandyburg allegedly came to the hospital to confirm she was there. *Id.* On February 18, 2007,[1] Valencia alleges Brandyburg called her at her hospital room to demand her computer password to access some documents she was working on; however, he ultimately did nothing with the documents. *Id.* Valencia then avers Dr. Sanchez requested she be placed on light duty for six weeks or until further notice. *Id.* at ¶ 13. Brandyburg said her position description would need to be rewritten, but Valencia disagreed. *Id.* On February

---

[1]     The Amended Complaint states February 18, 2007, yet the chronology of Valencia's allegations would seem to imply she intended January 18, 2007.

2, 2007, Brandyburg then sent Valencia a letter asking for in-depth medical documentation not required under the FMLA. *Id.* at ¶ 14. That same day, Valencia was diagnosed with coronary artery disease, and Dr. Sanchez sent a letter to Brandyburg stating Valencia would be unable to return to work. *Id.* at ¶ 15. Brandyburg allegedly continued to harass Valencia during this time. *Id.* Valencia also avers Brandyburg threatened to fire her when at a staff meeting she asked about the last time the museum underwent an audit. *Id.* at ¶ 16. Next, Valencia was tasked with a project and received no assistance from management or maintenance despite promises to do so. *Id.* at ¶ 17. As a result of the intensive physical labor, Valencia developed carpal tunnel in both hands. *Id.* Valencia also alleges Light and Brandyburg created a hostile work environment by both spreading and ignoring rumors about Valencia's sexual orientation. *Id.* at ¶ 18. Finally, Valencia asserts Light permitted Facility Manager Andrew Callens to film and photograph her throughout the day without her permission. *Id.* at ¶ 19.

In Count III, Valencia reiterates she was denied her sick leave, her right to invoke the FMLA, and was repeatedly told her medical documentation was insufficient. *Id.* at ¶¶ 21-22. In Count IV, Valencia states her Fourteenth Amendment right to due process was violated when her ability to invoke the FMLA and take leave were denied. *Id.* at ¶¶ 23-24. In Count V, Valencia avers Brandyburg and his staff did not complete the paperwork for Valencia's worker's compensation claim. *Id.* at ¶ 25. In addition, Valencia alleges she faced reprisal for participating in union activities and acting as a witness in a co-worker's EEOC claim. *Id.* at ¶ 26-27. Finally, in October 2007, Valencia's pay stopped and she was told her

medical documentation was no longer sufficient to support her time off from work. *Id.* at ¶ 28. Valencia was also denied permission to telecommute from her home. *Id.* Lastly, Valencia avers she has been subject to a "management vendetta" for her outspokenness. *Id.* at ¶ 30.

Valencia seeks "compensatory damages, nominal damages, punitive damages" for the "loss of enjoyment of life, mental anguish, deliberate indifference of medical well being, negligence estoppels, and willful wanton recklessness endangerment of life."[2] Specifically she requests $7 million dollars and injunctive relief pursuant to 28 U.S.C. § 2283.

## II. MOTION TO DISMISS

On April 29, 2008, Defendants filed several pleadings. First, the United States filed a request for substitution as a party for the DOI, Light, and Brandyburg with respect to Valencia's tort and other state law claims. *See* Doc. 17, "Notice of Substitution." Next, Defendants filed a motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. *See* Docs. 18-19, "Motion to Dismiss."

Defendants state Valencia's negligence and tort claims can only be brought against the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b) and 2671-2680, and since Valencia has not complied with the mandatory administrative exhaustion requirements the Court does not have jurisdiction over those claims. *See* Doc. 19 at p. 3. Additionally, Defendants asserts Valencia cannot recover damages under the

---

[2]     The Court recites the above exactly as Valencia states it in the section on "Relief Sought" including typographical and spelling errors. *See* Doc. 6 at p. 12.

FTCA for any on-the-job injuries because the exclusive remedy for such injuries is the Federal Employees Compensation Act, 5 U.S.C. § 1801, *et seq*. *Id*.

Next, Defendants assert Valencia's claims under the FMLA fail because there is no cause of action under the FMLA for full-time federal employees. *Id*. Additionally, Valencia's constitutional claims against the DOI and individual employees are barred by sovereign immunity and precluded by the Civil Service Reform Act. *Id*. at p. 4. Next, Defendants state her employment discrimination claims fail as she has not exhausted her administrative remedies or name the proper defendants. *Id*. Defendants also aver the Court lacks jurisdiction over any implied breach of contract claim. *Id*. Finally, Defendants argue the Federal Anti-Injunction Act is not applicable and thus cannot be a basis for relief. *Id*. Consequently, Defendants request the dismissal of Valencia's claims. *Id*.

The Court initially ordered Valencia to file her response to the motion to dismiss on or before May 20, 2008. On May 22, 2008, Valencia requested an extension of time to file her response. *See* Doc. 25. The Court granted Valencia's request and the new deadline for her response was June 10, 2008. *See* Doc. 26. On June 11, 2008, Valencia filed a request for another 21 day extension. *See* Doc. 27. Concurrently, Valencia filed her own dispositive motion in excess of 300 pages. *See* Doc. 30. The Court vacated its prior briefing orders and issued a new briefing schedule which gave Valencia until June 20, 2008 to file her response to the motion to dismiss. *See* Doc. 33. The Court also admonished Valencia that court imposed deadlines are not optional and last minute extension requests (or in Valencia's case late extension requests) are disfavored by the courts. *See id*. The Court also noted Valencia

took the time to file her own lengthy dispositive motion in lieu of responding to the defendants' motion as required. *Id*.

Valencia never filed a formal response to the motion to dismiss. On July 25, 2008, Valencia filed an Amended Judgement on the Pleadings, which the Court construes as an attempt to amend her original Judgment on the Pleadings. *See* Docs. 30 and 36. On July 28, Valencia filed another Motion for Judgment as a Matter of Law. *See* Doc. 36. In that motion she states the "June 10, 2008" Motion for Judgment on the Pleadings was intended as a response to the motion to dismiss. *See* Doc. 37 at p. 1. The Court notes the June 10, 2008 pleading does somewhat address the motion to dismiss, the Court finds Valencia lacks credibility in her assertion since as noted above, she clearly filed a request for another 21 day extension to file her response. *See* Doc. 27. Nonetheless, the Court too into account these pleadings prior to addressing the motion to dismiss.

### III. STANDARD OF REVIEW

**A.      Rule 12(b)(1)**

A Rule 12(b)(1) motion directly challenges the district court's subject matter jurisdiction. *Gilmore v. Day*, 125 F.Supp.2d 468, 470 (M.D. Ala. 2000). A motion to dismiss for lack of subject matter jurisdiction may occur either facially or factually. *Morrison v. Amway Corp.*, 323 F.3d 920, 925 n.5 (11th Cir. 2003). A "facial attack" is based solely on the pleadings and requires the court to assess whether the plaintiff has alleged a sufficient basis for subject matter jurisdiction. *Id*.; *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990). Further, for the purposes of the court's analysis, the allegations in the

plaintiff's complaint are taken as true. *Id.* On the other hand, a "factual attack" challenges "subject matter jurisdiction in fact, irrespective of the pleadings." *Morrison*, 323 F.3d at 925. The burden of proof on a Rule 12(b)(1) motion is on the party averring jurisdiction. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S.Ct. 1673, 1675, 128 L.Ed.2d 391 (1994); *Gilmore*, 125 F.Supp.2d at 471 (citing *Thomson v. Gaskill*, 315 U.S. 442, 446, 62 S.Ct. 673, 86 L.Ed. 951 (1942)).

**B.    Rule 12(b)(6)**

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint. *Gilmore*, 125 F. Supp.2d at 471. To survive a motion to dismiss for failure to state a claim, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, --- U.S. ---, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). In considering a defendant's motion to dismiss, the "court must view the complaint in the light most favorable to the plaintiff and accept al the plaintiff's well-pleaded facts as true." *Am. United Life Ins. v. Martinez*, 480 F.3d 1043, 1057 (11th Cir. 2007) (citing *St. Joseph's Hosp. Inc. v. Hosp. Corp. of Am.*, 795 F.2d 948, 954 (11th Cir. 1986)). In other words, in deciding a 12(b)(6) motion to dismiss, the court will accept the petitioner's allegations as true. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L. Ed.2d 59 (1984); *Ellis v. General Motors Acceptance Corp.*, 160 F.3d 703, 706 (11th Cir. 1998); *Roberts v. Florida Power & Light Co.*, 146 F.3d 1305, 1307 (11th Cir. 1998) (citing *Lopez v. First Union National Bank of Florida*, 129 F.3d 1186, 1189 (11th Cir. 1997)). However, "[c]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading

as facts will not prevent dismissal." *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1262 (11th Cir. 2004) (quoting *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002)); *see also Associated Builders, Inc. v. Alabama Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974) (conclusory allegations and unwarranted deductions of fact are not admitted as true).[3]

Thus, a complaint should be dismissed "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, --- U.S. ---, 127 S.Ct. at 1966. Further, "this basic deficiency should ... be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id*. (citations omitted). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 1964-65 (citations omitted). Factual allegations must be enough to raise a right to relief above the speculative level. *Id*. Thus, it does not require a heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face. *Id*. at 1974. It is not enough that the pleadings merely "le[ave] open the possibility that the plaintiff might later establish some set of undisclosed facts to support recovery." *Id*. at 1968 (internal quotation and alteration omitted). Consequently, the threshold for a complaint

---

[3]    In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

to survive a motion to dismiss is "exceedingly low." *Ancata v. Prison Health Services, Inc.,* 769 F.2d 700, 703 (11th Cir. 1985).

All litigants, *pro se* or not, must comply with the Federal Rules of Civil Procedure. Although the court is required to liberally construe a *pro se* litigant's pleadings, the court does not have "license to serve as *de facto* counsel for a party. . .or to rewrite an otherwise deficient pleading in order to sustain an action." *GJR Investments, Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998) (citations omitted).

## IV. DISCUSSION AND ANALYSIS

### A.    Substitution of United States as a Party for tort claims

Under the Westfall Act, when a federal employee is sued on state tort claims and the United States Attorney[4] certifies the "employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a United States district court shall be deemed an action against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant." 28 U.S.C. § 2679(d)(1). On April 29, 2008, the United States filed its Notice of Substitution and pursuant to § 2679(d)(1). *See* Doc. 17.

The certification is not absolute and is subject to judicial review. *See Osborn v. Haley*, 549 U.S. 225, --- , 127 S.Ct. 881, 888, 166 L.Ed.2d 819 (2007); *Gutierrez de Martinez v.*

---

[4]    Though the statute refers to the Attorney General's certification, the United States Attorney is authorized to make the certification. *See* 28 C.F.R. § 15.4.

*Lamagno*, 515 U.S. 417, 420, 115 S.Ct. 2227, 132 L.Ed.2d 375 (1995). The certification is "'the first, but not the final word' on whether the federal officer is immune from suit and, correlatively, whether the United States is properly substituted as defendant." *Osborn*, 549 U.S. at --- , 127 S.Ct. at 897 (quoting *Lamagno*, 515 U.S. at 432, 115 S.Ct. 2227). Therefore, this Court reviews the certification to determine whether substitution of the United States as a party is proper.

In this case, the Court determines it is proper and the United States shall be substituted as the proper party for Valencia's tort and state claim claims since Light and Brandyburg were acting within the scope of their employment at the time of the incidents which form the basis of Valencia's allegations. *See* Doc. 17; Doc. 19 at p. 5. As such, these claims[5] can no longer be asserted against the DOI, Light, and Brandyburg and the claims are now deemed a tort action against the United States. "The remedy afforded by the Federal Tort Claims Act is exclusive of any other proceeding against the employee, 28 U.S.C. § 2679(b), and the United States should be substituted as the real party in interest. Fed. R. Civ. P. 17(a)." *Fuller v. Daniel*, 438 F.Supp. 928, 929 (D.C. Ala. 1977); *accord Matsushita Elec. Co. v. Zeigler*, 158 F.3d 1167, 1168-71 (11th Cir. 1998).

**B.    Dismissal of FTCA Claims**

Upon substitution of the United States as the defendant for the tort and negligence claims, such claims may only be brought under the Federal Tort Claims Act ("FTCA"). 28

---

[5]    The constitutional and federal statutory claims shall be addressed later in Sections E, F, and H.

U.S.C. §§ 1346(b), 2672. The doctrine of sovereign immunity bars suit against the United States without its consent and waiver of sovereign immunity cannot be implied, but must be unequivocally expressed. *United States v. Testan*, 424 U.S. 392, 399, 96 S.Ct. 948, 953-54, 47 L.Ed.2d 114 (1976) (citations and quotations omitted). Congress expressed a limited waiver of sovereign immunity in the FTCA. 28 U.S.C. § 1346(b). Since the claims are brought against the United States under the FTCA, Valencia may only proceed on these claims by complying with the requirements of the FTCA.

The FTCA sets forth explicit requirements prior to a plaintiff being able to bring suit. *See* 28 U.S.C. § 2675(a). Specifically, a claimant must first present the claim in writing to the appropriate federal agency and wait for dispensation from that agency. 28 U.S.C. § 2401(a). Therefore, "[a] district court only has jurisdiction over a FTCA action if the plaintiff has met section 2675(a)'s requirements." *Burchfield v. United States*, 168 F.3d 1252, 1253 (11th Cir. 1999) (citing *Bush v. United States*, 703 F.2d 491, 494 (11th Cir. 1983)). To satisfy the requirements of § 2675(a), a plaintiff must (1) provide the appropriate agency with written notice of his claim sufficient to enable the agency to investigate and (2) place a value on his claim. *Id*. (citations omitted). In other words, "[t]he FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies." *McNeil v. United States*, 508 U.S. 106, 113, 113 S.Ct. 1980, 1984, 124 L.Ed.2d 21 (1993). Failure to comply with the administrative requirements mandates dismissal. 28 U.S.C. § 2679(d)(5).

No evidence is in the record that Valencia filed a claim with the appropriate agency.

Despite her claims to the contrary in subsequent pleadings,[6] there is no evidence of an administrative claim which satisfies the requirements of the FTCA.  The United States has also submitted evidence that no such administrative claim was filed.  *See* Doc. 19-2, "Declaration of Marcella Gibson."  Ms. Gibson is the Regional Tort Claims Officer for the National Park Service which is part of the DOI.  *Id*. at ¶ 1.  She states Valencia did not file an administrative claim as required by the FTCA.  *Id*. at ¶ 3.  Consequently, the Court lacks of jurisdiction and must dismiss the tort claims against the United States.  *See Knight v. United States*, 50 F.Supp.2d 1204, 1207-08 (M.D. Ala. 1999) ("The requirement of filing an administrative claim is a jurisdictional prerequisite to suit and cannot be waived."  Also, "because of the proper substitution of the United States as Defendant in this action, Plaintiff must comply with the provisions of the FTCA in his suit against the United States."); *see also Flohr v. Mackovjak*, 84 F.3d 386, 390 (11th Cir. 1996) (citing *Mitchell v. Carlson*, 896 F.2d 128, 133 (5th Cir. 1990)) (After United States substituted as appropriate party, the claim may be precluded by the FTCA).

## C.    Federal Employees Compensation Act

Valencia asserts claims of negligence and hazardous work conditions related to her alleged exposure to lead, arsenic, and mold spores.  *See* Doc. 6 at ¶¶ 5-11.  She assert claims

---

[6]    In the most recent "Motion for Judgment as a Matter of Law," Valencia states she exhausted her administrative remedies by filing a complaint with OSHA and other agencies.  *See* Doc. 37 at p. 3, filed July 28, 2008. However, the statute is explicit in that the administrative claim must be filed with the *appropriate agency*, in this case the Department of Interior. Defendants have submitted evidence that no such claim was filed and beyond her conclusory statements, Valencia has not presented any evidence to the contrary.

her job resulted in the development of carpel tunnel syndrome. *Id*. at ¶¶ 17-18. According to Valencia, all these injuries developed while she was working as a Museum Specialist for the DOI. As a matter of law the claims fail because the Federal Employees Compensation Act ("FECA") is the exclusive remedy for a federal employee who suffers on-the-job injuries in the course of his employment. *See* 5 U.S.C. § 8101, *et seq*.; *Noble v. United States*, 216 F.3d 1229, 1234 (11th Cir. 2000) ("FECA is the federal employee's exclusive remedy against the federal government for on-the-job injuries."). Specifically, the statute provides:

> [t]he liability of the United States ... under this subchapter ... with respect to the injury ... of an employee is exclusive and instead of all other liability of the United States ... to the employee ... [or] any other person otherwise entitled to recover damages from the United States ... because of the injury ... in a direct judicial proceeding, in a civil action, or in admiralty, or by an administrative or judicial proceeding under a workmen's compensation statute or under a Federal tort liability statute.

5 U.S.C. § 8116(c); *see also Noble*, 216 F.3d at 1234 (quoting statute).

FECA was "designed to protect the Government from suits under statutes, such as the Federal Tort Claims Act, that had been enacted to waive the Government's sovereign immunity." *Lockheed Aircraft Corp. v. United States*, 460 U.S. 190, 193-94, 103 S.Ct. 1033, 1036, 74 L.Ed.2d 911 (1983); *Noble*, 216 F.3d at 1234. Under the statute, "employees are guaranteed the right to receive immediate, fixed benefits, regardless of fault and without need for litigation, but in return they lose the right to sue the Government." *Lockheed Aircraft*, 460 U.S. at 194, 103 S.Ct. at 1036. Further, the Secretary of Labor is "authorized to administer and decide all questions arising under FECA." *See* 5 U.S.C. §§ 8145, 8149. Once a determination is made that an injury is work-related as defined by FECA, the claimant is

limited to the remedies authorized by FECA even if it is not compensable under FECA. *Noble*, 216 F.3d at 1234 (citations omitted). Thus, "[a]n injured employee may not bring an action against the United States under FTCA when there is 'a substantial question as to whether or not the injury occurred in the performance of the employee's duty' so as to bring it within the coverage of FECA." *Noble*, 216 F.3d at 1235 (quoting *Avasthi v. United States*, 608 F.2d 1059, 1060 (5th Cir. 1979)). "A substantial question of coverage exists unless the court determines 'as a matter of law that, viewing all of the circumstances, the Secretary could not find FECA coverage of' the alleged injury." *Id.* (quoting *Concordia v. United States Postal Serv.*, 581 F.2d 439, 442-44 (5th Cir. 1978)).

In the instant suit, Valencia claims she developed carpal tunnel syndrome and suffers from exposure to lead, arsenic, and mold spores as a result of her employment. No evidence is before this Court that Valencia has submitted her claims under FECA. The Court therefore determines there is a substantial question as to whether or not the injury occurred in the performance Valencia's duty which would bring it within the coverage of FECA. Despite the Government's assertion that this would prompt dismissal, the normal course of action is to hold the claims in abeyance pending the coverage determination under FECA by the Secretary. *See Noble*, 216 F.3d at 1235. If the Secretary determines the injury falls within FECA's coverage, the federal courts lack jurisdiction to review the decision. But if the Secretary finds no FECA coverage of the alleged injury, Valencia would then be entitled to bring her claims under the FTCA. *Id.* For that reason, the claims would normally be held in abeyance pending the FECA determination since she would then be able to proceed under the

FTCA. As previously discussed, Valencia did not exhaust her administrative requirements under the FTCA, therefore the claims still must be dismissed.

**D.    FMLA Claims**

Next, Defendants assert Valencia's FMLA claims should be dismissed because she does not have a private right of action to enforce the statute in federal court. Again, the sovereign immunity bars suit against the United States unless a waiver has been unequivocally expressed. *Testan*, 424 U.S. at 399, 96 S.Ct. at 953-54.

The FMLA provides that federal and private employees may take leave for family or medical reasons as permitted in the statute. 5 U.S.C. § 6382(a)(1). Employees are covered under either Title I or Title II of the FMLA. *See* 29 U.S.C. §§ 2601 *et seq.* (Title I) and 5 U.S.C. §§ 6381 *et seq.* (Title II). Title I applies to private employees and federal employees with less than twelve months of service. 29 U.S.C. § 2611. Title II applies federal employees with more than twelve months of service - i.e. the majority of federal employees. 5 U.S.C. §§ 2105(a)(1)(A), (a)(1)(D), and 6301(2) (providing a series of definition for the term "employee" as used in Title II of the FMLA); *see also Mann v. Haigh*, 120 F.3d 34, 36 (4th Cir. 1997) ("most employees of the federal government to whom the FMLA applies, ... are governed by Title II of the FMLA."). Title I expressly creates a right of action for covered employees. *See* 29 U.S.C. § 2617(a)(2). However, Title II does not have an analogous provision. *See* 5 U.S.C. §§ 6381-6387. Consequently, while private employees and federal employees with less than twelve month of employment do have a private cause of action to enforce the FMLA in federal court, federal employees with more than twelve months of

employment <u>do not</u> have that right.  *See Russell v. United States Dep't of the Army*, 191 F.3d 1016, 1019 (9th Cir. 1999); *Mann*, 120 F.3d at 37; *see also Cavicchi v. Sec'y of Treasury*, 2004 WL 4917357, *6 (11th Cir. 2004) (unpublished) ("[T]here is no right of private action under 5 U.S.C. § 6385 of Title II of the FMLA."  Eleventh Circuit states it agrees with the analysis of *Russell* and *Mann*.); *Carlson v. White*, 133 Fed. Appx. 144, 144-45 (5th Cir. 2005) (unpublished) ("Federal employees with more than twelve months of service do not have a private right of action for FMLA violations.").

Valencia asserts her FMLA claims against the DOI as well as Brandyburg and Light in both their official and individual capacities.  Suits against federal employees in their official capacities are essentially suits against the United States.  "The general rule is that a suit is against the sovereign if the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting, or to compel it to act." *Dugan v. Rank*, 372 U.S. 609, 620, 83 S.Ct. 999, 1006, 10 L.Ed.2d 15 (1962) (citations and quotation omitted); *see also Stafford v. Briggs*, 444 U.S. 527, 542 n.10, 100 S.Ct. 774, 784 n.10, 63 L.Ed.2d 1 (1980) ("In deciding whether an action is in reality one against the Government, the identity of the named parties defendant is not controlling; the dispositive inquiry is 'who will pay the judgment?'").  Therefore, the claims against Light and Brandyburg in their official capacities are analyzed in the same context as the suit against the DOI/United States.

It is undisputed that Valencia has more than twelve months of employment with the DOI as she has been there since October 2002.  *See* Doc. 6 at ¶ 13.  Accordingly, Valencia

is covered under Title II of the FMLA and has no private right of action for enforcement. Additionally, the law in this circuit is clear that "a public official sued in his or her individual capacity is not an "employer" under the FMLA, and therefore there is no federal subject matter jurisdiction over such a claim." *Wascura v. Carver*, 169 F.3d 683, 687 (11th Cir. 1999). Thus, Light and Brandyburg cannot be sued under the FMLA in their individual capacities. Consequently, Valencia's FMLA claims against the United States, DOI, and her supervisors - both official and individual capacities - are due dismissal.

**E.    Employment Discrimination Claims**

Valencia appears to assert a claim disparate treatment - though she does not specify what type - as well as a claim for hostile work environment relating to rumors about her sexual orientation/assumed orientation. *See* Doc. 6 at ¶¶ 18-19. These claims are also due dismissal.

**i.    Title VII Claims Against Light and Brandyburg**

In the Eleventh Circuit, a plaintiff may not bring a Title VII claim against an employer's agent in his individual capacity. *See Mason v. Stallings*, 82 F.3d 1007, 1009 (11th Cir. 1996) (no individual responsibility under Title VII); *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991) ("The relief granted under Title VII is against the *employer*, not the individual employees whose actions would constitute a violation of the Act.") (emphasis in original); *see also Cross v. Alabama Dep't of Mental Health & Mental Retardation*, 49 F.3d 1490, 1504 (11th Cir. 1995) (affirming the *Busby* holding after the 1991 amendments to Title VII and holding liability under Title VII is limited to official-capacity actions). Therefore,

Valencia's claims against the Light and Brandyburg in their individual capacities warrant dismissal as a matter of law.

A plaintiff may bring a Title VII suit against an individual in his official capacity. *See Cross*, 49 F.3d at 1504. However, when a plaintiff names both the employer and the individual supervisor in his official capacity, the supervisor may be dismissed from the action. *See Taylor v. Alabama*, 95 F.Supp.2d 1297, 1309 (M.D. Ala. 2000) (citing *Cross*, 49 F.3d at 1504) (where a Title VII plaintiff names the employer as a defendant, any of the employer's supervisory officials also named in the complaint may be dismissed from the action); *see also Moss v. W & A Cleaners*, 111 F.Supp.2d 1181, 1187 (M.D. Ala. 2000) ("If a Title VII plaintiff names his or her employer as a defendant, any of the employer's agents also named in the complaint may be dismissed from the action."). As Valencia brings her Title VII claim against the DOI, the Title VII complaints against Light and Brandyburg in their official capacities are redundant and therefore due dismissal.

### ii.    Title VII claim for discrimination and hostile work environment related to sexual orientation or perceived sexual orientation

Under Title VII, it is "an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The term "sex" as used in Title VII clearly refers to the biological makeup of men and women, while "sexual orientation" refers to mating preferences. In other words, "[t]he

proscribed differentiation under Title VII, therefore, must be a distinction based on a person's sex, not on his or her sexual affiliations." *Simonton v. Runyon*, 232 F.3d 33, 36 (2d Cir. 2000). The statute does not explicitly prohibit discrimination against an individual based on that individual's sexual orientation.[7][8] Thus, this Court concludes that Title VII, at least in its current form, permits no cause of action when the alleged harassment is based solely on one's sexual orientation or perceived sexual orientation. As such, Valencia's claims for a hostile

---

[7]    The Court notes that same-sex harassment is actionable under Title VII under certain circumstances. *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 82, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998); *see also Fredette v. BVP Mgmt. Assocs.*, 112 F.3d 1503, 1510 (11th Cir. 1997) ("We do not hold that discrimination because of sexual orientation is actionable. Rather, we hold today that when a homosexual male supervisor solicits sexual favors from a male subordinate and conditions work benefits or detriment on receiving such favors, the male subordinate can state a viable Title VII claim for gender discrimination."); *Rene v. MGM Grand Hotel, Inc.*, 305 F.3d 1061, 1063 (9th Cir.2002) (en banc) ("[S]exual orientation is irrelevant for purposes of Title VII. It neither provides nor precludes a cause of action for sexual harassment.").

[8]    While this Court has not found any Eleventh Circuit cases directly stating the proposition that Title VII prohibits claims for discrimination and/or hostile work environment related to sexual orientation, there is sufficient case law among the various circuits to show there is no confusion as to Valencia's lack of a viable claim. *See Vickers v. Fairfield Med. Ctr.*, 453 F.3d 757, 762 (6th Cir. 2006) ("[S]exual orientation is not a prohibited basis for discriminatory acts under Title VII."); *Medina v. Income Support Div., New Mexico*, 413 F.3d 1131, 1135 (10th Cir. 2005); *Bibby v. Philadelphia Coca Cola Bottling Co.*, 260 F.3d 257, 265 (3d Cir. 2001) ("Harassment on the basis of sexual orientation has no place in our society." However, the District Court properly determined that there was no cause of action under Title VII as Plaintiff's claim indicated only that he was being harassed on the basis of his sexual orientation, rather than because of his sex.); *Simonton v. Runyon*, 232 F.3d 33, 35 (2d Cir. 2000) (harassment on the basis of sexual orientation "is morally reprehensible whenever and in whatever context it occurs, particularly in the modern workplace." However, discrimination based on "sex" does not include discrimination based on sexual orientation.); *Higgins v. New Balance Athletic Shoe, Inc.*, 194 F.3d 252, 259 (1st Cir. 1999) ("We hold no brief for harassment because of sexual orientation; it is a noxious practice, deserving of censure and opprobrium. But we are called upon here to construe a statute as glossed by the Supreme Court, not to make a moral judgment-and we regard it as settled law that, as drafted and authoritatively construed, Title VII does not proscribe harassment simply because of sexual orientation.").

work environment due to rumors about her sexual orientation/assumed orientation must be dismissed.

### iii.    Failure to Exhaust Administrative Remedies under Title VII

To the extent Valencia seeks to pursue a gender/sex based hostile work environment claim, the court must also dismiss the claim because Valencia did not exhaust her administrative remedies. *See Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1317 (11th Cir. 2001) (Before a plaintiff may pursue a Title VII discrimination claim he must exhaust his administrative remedies.). Thus, the plaintiff must file a timely charge of discrimination with the EEOC. *Id*. (citing 42 U.S.C. § 2000e-5(b)). Absolutely no evidence is before the Court that Valencia received a right-to-sue letter from the EEOC nor is there evidence she even filed a claim with the EEOC. Therefore, the Court dismisses her Title VII claim for disparate treatment or hostile work environment.

### F.    Constitutional Claims

Valencia specifically states claims under 42 U.S.C. § 1983, 42 U.S.C. § 1986, the Fourth Amendment, the Sixth Amendment, and the Fourteenth Amendment (Due Process and Equal Protection clauses). *See* Doc. 6. The Court will address each claim and in the interest of justice, the Court shall construe Valencia's complaint as one seeking relief under both 42 U.S.C § 1983 and *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Moreover, because claims under 42 U.S.C. § 1983 and *Bivens* are so similar, courts generally apply § 1983 law to *Bivens* cases. *See Smith ex rel. Smith v. Siegelman*, 322 F.3d 1290, 1297 n.15 (11th Cir. 2003) ("[A] *Bivens* action is analogous to §

1983 suits against state and local officers."); *Morast v. Lance*, 807 F.2d 926, 931 (11th Cir. 1987); *Campbell v. Civil Air Patrol*, 131 F.Supp.2d 1303, 1310 n. 8 (M.D. Ala. 2001) (citations omitted); *O'Brien v. United States*, 137 Fed. Appx. 295, 299 (11th Cir. 2005) (unpublished opinion) (citing *Abella v. Rubino*, 63 F.3d 1063, 1065 (11th Cir. 1995)).   As a result, the Court shall refer interchangeably to cases decided under both § 1983 and *Bivens*.

      **i.**        **Claims under 42 U.S.C. § 1986 against the Department of Interior and the Individual Defendants in their Official and Individual Capacities pursuant the Fourteenth Amendment**

Section 1986 provides a cause of action against anyone who has "knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having the power to prevent or aid in preventing the commission of the same, neglects or refuses so to do."  *Park v. City of Atlanta*, 120 F.3d.1157, 1159 (11th Cir. 1997) (citing 42 U.S.C. § 1986).[9]  The text of § 1986 explicitly requires the existence of a § 1985 conspiracy and a plaintiff cannot establish a violation of § 1986 without establishing a

---

[9]         The full text of the statute is as follows: "Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; and such damages may be recovered in an action on the case; and any number of persons guilty of such wrongful neglect or refusal may be joined as defendants in the action; and if the death of any party be caused by any such wrongful act and neglect, the legal representatives of the deceased shall have such action therefor, and may recover not exceeding five thousand dollars damages therein, for the benefit of the widow of the deceased, if there be one, and if there be no widow, then for the benefit of the next of kin of the deceased. But no action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has accrued."  42 U.S.C. § 1986.

violation of § 1985. *Id.* at 1160. Valencia does not state a claim under 42 U.S.C. § 1985 and

the Court declines to rifle through her pleadings to seek one. Thus the Court dismisses her

§ 1986 claim.

### ii. Claims for Monetary Damages against the Department of Interior and the Individual Defendants in their Official Capacities pursuant to 42 U.S.C. §§ 1983 and *Bivens*

To obtain relief under § 1983, Valencia must show she was deprived of a federal right

by a person acting under color of state law. *Patrick v. Floyd Medical Center*, 201 F.3d 1313,

1315 (11th Cir. 2000). The Supreme Court has reiterated this requires "*both* an alleged

constitutional deprivation 'caused by the exercise of some right or privilege created by the

State or by a rule of conduct imposed by the State or by a person for whom the State is

responsible,' *and* that 'the party charged with the deprivation must be a person who may fairly

be said to be a state actor.'" *Id.* (quoting *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S.

40, 119 S.Ct. 977, 985, 143 L.Ed.2d 130 (1999)) (emphasis in original); *see also West v.*

*Atkins*, 487 U.S. 42, 48-49, 108 S.Ct. 2250, 2255, 101 L.Ed.2d 40 (1988) (United States

Supreme Court reiterates two prong requirement). The same is true to claim relief under

*Bivens*. Under *Bivens*, a "plaintiff must show that he or she was deprived of a federal right

by a person acting under color of federal law." *O'Brien*, 137 Fed. Appx. 295 (citations

omitted).

Valencia names as a defendant the DOI.[10] The DOI is an agency of the United States

---

[10]    This portion is only applicable to the Department of Interior and not the individually named supervisors. Analysis pertaining to the individual supervisors shall be

and thus the real party in interest is the United States.  *State of Florida, Dept. Of Bus. Regulation v. United States Dept. of Interior*, 768 F.2d 1248, 1251-53 (11th Cir. 1985).  The United States, including its agencies, are absolutely immune from suit unless the United States consents to waive the immunity.  *F.D.I.C. v. Meyer*, 510 U.S. 471, 475, 114 S.Ct. 996, 1000, 127 L.Ed.2d 308 (1994).  "It is well established in this circuit that the United States has not waived its immunity to suit under the provisions of the civil rights statutes."  *United States v. Timmons*, 672 F.2d 1373, 1380 (11th Cir. 1982) (considering §§ 1981 and 1982).  Further, "[w]ith respect to § 1983, the statute has no application to the actions of the federal government or its officers acting under color of federal law, but is instead confined to deprivations under color of state law."  *Nicholson v. Johanns*, 511 F.Supp.2d 1193, 1195 (S.D. Ala. 2007) (citations omitted).  Therefore, the federal government has not waived sovereign immunity since "§ 1983 on its face does not and cannot apply to the actions of the federal government."  *Id*.  To the extent Valencia attempts to assert claims for monetary damages under *Bivens*, "the United States is immune to suit for damages based on the Constitution under a *Bivens'* theory."  *Manstream v. United States Dept. of Agriculture*, 649 F.Supp. 874, 883 (M.D. Ala. 1986) (citations omitted); *see also Mack v. United States*, 814 F.2d 120, 123 (2d Cir. 1987) ("*Bivens* actions against the United States are routinely dismissed.").  Hence, the claims against the DOI (i.e. the United States) for money damages pursuant to § 1983 and *Bivens* are barred by sovereign immunity and warrant dismissal.

---

addressed later in this section and other sections.

Any claims against Light and Brandyburg in their official capacities are, in actuality, claims against the United States/DOI, and thus the same analysis applies. *See, e.g., Leonard v. Rumsfeld*, 146 F.Supp.2d 1227, 1230-31 (M.D. Ala. 2001) (cannot maintain *Bivens* claims against federal employees in their official capacity); *Daniel v. United States*, 891 F.Supp. 600, 603 (N.D. Ga. 1995) (citations omitted) (plaintiff's claims against individual defendants in their official capacities are really against the United States). The United States is immune to suit for damages based on the Constitution under a *Bivens* theory. *Manstream*, 649 F.Supp. at 883. As a corollary, Light and Brandyburg are also immune from suit in their official capacities. *Simons v. Vinson*, 394 F.2d 732, 736 (5th Cir. 1968); *see also Ishler v. Internal Revenue*, 237 Fed. Appx. 394 (11th Cir. 2007) (unpublished) ("[T]he protection of sovereign immunity also generally extends to the employees of those agencies sued in their official capacities."). As set forth above, the United States cannot be held liable under § 1983, thus Light and Brandyburg cannot be held liable in their official capacities. Consequently, Valencia's *Bivens* claims for monetary damages against Light and Brandyburg in their official capacities also fail as a matter of law.

### iii.    Claims against the Individual Defendants in their Individual Capacities pursuant to 42 U.S.C. § 1983

To the extent Valencia asserts a § 1983 claim against Light and Brandyburg in their individual capacities, the claim fails. Light and Brandyburg are federal officers not state government officials as required under § 1983. *See Nicholson*, 511 F.Supp.2d at 1195. Additionally, the law is clear that "the under-color-of-state-law element of § 1983 excludes

from its reach merely private conduct, no matter how discriminatory or wrongful." *Focus on the Family v. Pinellas Suncoast Transit Authority*, 344 F.3d 1263, 1277 (11th Cir. 2003); *see also Weaver v. James Bonding Co., Inc.*, 442 F.Supp.2d 1219, 1223 (S.D. Ala. 2006) (citing *Pinellas*). "Only in rare circumstances can a private party be viewed as a 'state actor' for § 1983 purposes." *Weaver*, 442 F.Supp.2d at 1223 (citations omitted).

For individuals such as Light and Brandyburg to qualify as "state actors" under § 1983, one of the following three tests must be satisfied:

(1)     "State Compulsion Test" wherein the state has coerced or significantly encouraged the violative conduct;

(2)     "Public Function Test" wherein private parties perform a public function that is traditionally the exclusive prerogative of the state; and

(3)     "Nexus/Joint Action Test" wherein the state has insinuated itself into a position of interdependence with the private party, such that the state and private party are essentially joint participants in an enterprise.

*Weaver*, 442 F.Supp.2d at 1223 (citing *Rayburn*, 241 F.3d at 1347 and *Green v. Abony Bail Bond*, 316 F.Supp.2d 1254, 1259-60 (M.D. Fla. 2004)); *Campbell*, 131 F.Supp.2d at 1310-11 (applying 3 tests for § 1983 claims). The application of the three tests patently establish these individuals were not <u>state</u> actors.

Under the "State Compulsion Test," there is absolutely no evidence any state government official did anything to coerce or encourage Light or Brandyburg to act against Valencia. The "public function analysis is a stringent test requiring a showing that private

actors have been given powers or are performing functions that are 'traditionally the exclusive prerogative of the State." *Weaver*, 442 F.Supp.2d at 1224 (quoting *Harvey v. Harvey*, 949 F.2d 1127, 1131 (11th Cir. 1992)); *see also Campbell*, 131 F.Supp.2d at 1311 (same). Nothing indicates Light or Brandyburg have been given powers or are performing functions that generally belong to the state government.  As such, the Public Function Test is not met. Finally, to satisfy the Nexus/Joint Action Test, "the governmental body and private party must be intertwined in a 'symbiotic relationship.'" *Rayburn*, 241 F.3d at 1348 (citations omitted). Valencia has not established any kind of symbiotic relationship between the State and Light and/or Brandyburg.  Consequently, Valencia fails to meet the Nexus/Joint Action Test.  As Valencia did not satisfy any of the three tests, she has not established former Light or Brandyburg were state actors.  Thus, she has no claim under § 1983 against Light and Brandyburg in their individual capacities.

### iv.     Claims against the Department of Interior and the Individual Defendants in their Official and Individual Capacities pursuant the Fourteenth Amendment

Valencia asserts violations of the Fourteenth Amendment Due Process Clause and Equal Protection Clause.  *See* Doc. 6 at p. 1 and Count IV, ¶¶ 23-24.  The Fourteenth Amendment is only directed at the states and "can be violated only by conduct that may be fairly characterized as state action." *Lugar v. Edmonson Oil Co., Inc.*, 457 U.S. 922, 924, 102 S.Ct. 2744, 2747, L.Ed.2d (1982); *see also District of Columbia v. Carter*, 409 U.S. 418, 423, 93 S.Ct. 602, 605-06, 34 L.Ed.2d 613 (1973) ("[T]he commands of the Fourteenth Amendment are addressed only to the State or to those acting [under] color of its authority.").

As previously discussed pursuant to § 1983, Valencia cannot establish that there was any state action by the United States, DOI, Light, or Brandyburg. Thus, the Fourteenth Amendment claims fail.

### v. Constitutional Claims Pursuant to *Bivens* are Precluded by the Civil Service Reform Act

Valencia appears to assert a *Bivens* claim for violations of the Fourth and Eighth Amendments[11] of the United States Constitution wherein she seeks both monetary and injunctive relief. Defendants assert these claims must be dismissed as her alleged constitutional claims are precluded by the Civil Service Reform Act ("CSRA"). *See* 5 U.S.C. § 1101, *et seq.*

In *Bivens*, the Supreme Court created a limited right to a cause of action against a federal employee, who while acting under the color of federal law, has violated the constitutional rights of an individual. *Bivens*, 403 U.S. at 397, 91 S.Ct. at 2005. "Damages can be obtained in a *Bivens* action when (1) the plaintiff has no alternative means of obtaining redress and (2) no "special factors counseling hesitation" are present." *Hardison v. Cohen*, 375 F.3d 1262, 1264 (11th Cir. 2004). Essentially, the question before this Court is whether Valencia has an alternative means of obtaining relief.

The United States Supreme Court and the Eleventh Circuit have squarely addressed the issue of whether the CSRA provides the exclusive remedy for a federal employee who was

---

[11]    As the Court has already addressed the dismissal of Valencia's claims for violations of the Fourteenth Amendment and 42 U.S.C. § 1986, it will not discuss them further. However, the analysis of this section could also be applied to preclude those claims.

challenging alleged prohibited personnel practices through a *Bivens* action. *See United States v. Fausto*, 484 U.S. 439, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988); *Bush v. Lucas*, 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983); *Stephens v. Dep't of Health and Human Servs.*, 901 F.2d 1571 (11th Cir. 1990); *see also Hendrix v. Snow*, 170 Fed. Appx. 68 (11th Cir. 2006) (unpublished) (upholding determination from *Stephens*). Specifically, the courts rejected the creation of a *Bivens* remedy in relation to employment-related claims asserted by federal employees as the CSRA provides the exclusive remedy. *Fausto*, 484 U.S. at 454-55, 108 S.Ct. at 680-81; *Bush*, 462 U.S. at 388-90, 103 S.Ct. at 2416-17; *Hardison*, 375 F.3d at 1265-66; *Stephens*, 901 F.2d at 1575-76; *Hendrix*, 170 Fed. Appx. at 80.

Valencia's constitutional claims arise out of actions taken by her supervisors during the course of her employment. As a result, the CSRA is Valencia's exclusive remedy and she cannot assert an action under *Bivens*. Regardless of the relief sought, Valencia's constitutional claims against all parties merit dismissal.

## G.    Breach of Implied Contract

Other than a single reference on the first page of her Amended Complaint, there is no mention of any breach of implied contract of employment. *See* Doc. 6. Valencia presents no evidence of any implied contract of employment. Further, "[a]bsent specific legislation, it is well-established that federal employees do not have contract or quasi-contractual relationships with the Government." *Hauschild v. United States*, 53 Fed. Cl. 134 (Fed. Cl. 2002) (citing *Chu v. United States*, 773 F.2d 1226, 1229 (Fed. Cir. 1985)). Valencia cannot establish a claim for breach of implied contract of employment against the United States or the individual

supervisors.[12]  As such, the Court dismisses the claim.

**H.    Injunctive Relief Under 22 U.S.C. § 2283**

In the section on "Relief Sought," Valencia states she seeks injunctive relief pursuant to 28 U.S.C. § 2283 ("Anti-Injunction Act" or "the Act").  The statute states "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."  28 U.S.C. § 2283; *see also Bayshore Ford Truck Sales, Inc. v. Ford Motor Co.*, 471 F.3d 1233, 1249 (11th Cir. 2006) (citing statute).  In other words, "The Act functions as an absolute prohibition against federal court enjoinment of state court proceedings, unless the injunction falls within one of the specifically defined exceptions and thereby prevents needless friction between state and federal courts."  *Bayshore Ford Truck Sales*, 471 F.3d at 1249-50 (citations and internal quotations omitted).  No evidence is before this Court of any related state court proceedings, thus there is nothing to enjoin.  Without a proceeding to enjoin, Valencia's claim fails under the Act.

---

[12]    Defendants also assert the Court lacks jurisdiction over the claim as under 28 U.S.C. § 1491(a)(1) (the "Tucker Act"), "claims against the United States for amounts in excess of $10,000 founded on contracts with the United States must be brought in the Court of Claims." *Friedman v. United States*, 391 F.3d 1313, 1315 (11th Cir. 2004) (citations omitted).  However, since Valencia asserted multiple claims over which the Court might have jurisdiction, the Court would need to review whether those tort claims ultimately arose from the "contract." Regardless, Valencia's claims for an implied breach of contract of employment claim are not permitted and any tort claims are also jurisdictionally barred as previously discussed.  Thus, the Court need not address this particular jurisdictional argument under the Tucker Act.

## V. CONCLUSION

Accordingly, it is the **RECOMMENDATION** of the Magistrate Judge that *Defendants' Motion to Dismiss* (Doc. 18) be **GRANTED**. The Magistrate Judge further recommends:

(1)     The United States be substituted as the defendant for Plaintiff's tort claims and those claims against the DOI and the individual defendants be dismissed with prejudice.

(2)     Plaintiff's claims against the United States under the Federal Tort Claims Act be dismissed without prejudice.

(3)     Plaintiff's claims for negligence, hazardous work conditions, and exposure to lead, arsenic, and mold spores be dismissed without prejudice as to all parties as being precluded by the Federal Employees Compensation Act.

(4)     Plaintiff's claims under the Family Medical Leave Act including her assertions of "negligence estoppels" and "deliberate indifference to medical well being" be dismissed with prejudice as to all parties.

(5)     Plaintiff's Title VII claims against Light and Brandyburg in their individual and official capacities be dismissed with prejudice.

(6)     Plaintiff's Title VII claims for discrimination and hostile work environment related to sexual orientation and/or perceived sexual orientation be dismissed with prejudice.

(7)     Plaintiff's remaining Title VII claims be dismissed without prejudice.

(8)     Plaintiff's claims under 42 U.S.C. § 1986 be dismissed without prejudice as to all parties.

(9)     Plaintiff's claims for monetary damages under 42 U.S.C. § 1983 and *Bivens* be dismissed with prejudice as to the Department of Interior and Defendants Light and Brandyburg in their official capacities.

(10)    Plaintiff's claims under 42 U.S.C. § 1983 against Defendants Light and Brandyburg be dismissed with prejudice.

(11)    Plaintiff's Fourteenth Amendment claims be dismissed with prejudice as to all parties.

(12)    Plaintiff's remaining constitutional claims brought pursuant to *Bivens* be dismissed with prejudice as to all parties as precluded by the Civil Service Reform Act.

(13)    Plaintiff's claim of breach of implied contract be dismissed without prejudice as to all parties.

(14)    Plaintiff's request for injunctive relief under 22 U.S.C. § 2283 be dismissed with prejudice.

(15)    The *Motion for Leave to File Evidentiary Submission in Support of Ammended [sic] Complaint* (Doc. 22), the *Motion for Judgement on the Pleadings Pursuant to Fed. Rules Of Civil Procedure; Rule 11(C)* (Doc. 30), the *Ammended [sic] complaint Motion for Judgement on the Pleadings Pursuant*

*to Fed. Rules of Civil Procedure Rule 12(c) not Rule 11(c)* (Doc. 36), and the
*Motion for Judgment as a Matter of Law, pursuant to Fed Rules of Civil
Procedure, Rule 50(a)(2)* (Doc. 37) be **DENIED as moot**.

(16)    All other outstanding motions be **DENIED as moot**.

**IT IS FURTHER ORDERED** that the parties file any objections to the this
Recommendation on or before **August 18, 2008.** Any objections filed must specifically
identify the findings in the Magistrate Judge's Recommendation to which the party is
objecting. Frivolous, conclusive or general objections will not be considered by the District
Court. The parties are advised that this Recommendation is not a final order of the court and,
therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the
Magistrate Judge's report shall bar the party from a *de novo* determination by the District
Court of issues covered in the report and shall bar the party from attacking on appeal factual
findings in the report accepted or adopted by the District Court except upon grounds of plain
error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *see Stein v.
Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*,
661 F.2d 1206 (11th Cir. 1981, *en banc*) (adopting as binding precedent all of the decisions
of the former Fifth Circuit handed down prior to the close of business on September 30,
1981).

DONE this 5th day of August, 2008.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE