IN THE DISTRICT COURT OF THE
UNITED STATES FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

TERESA VALENCIA (Pro Se)           )
                                   )
            Plaintiff,             )  2008 SEP -2  A 10: 48
                                   )
v.                                 )  DEBRA P. HACKETT
                                   )  U.S. DISTRICT COURT
                                   )  MIDDLE DISTRICT AL
                                   )  3:08-cv-069WKW-TFM
                                   )
DEPARTMENT OF INTERIOR,            )
WASHINGTON, D.C.;                  )
CATHERINE FARMER LIGHT,            )
SUPERINTENDENT, IN HER             )
INDIVIDUAL CAPACITY                )
AND OFFICIAL CAPACITY,             )
REQUESTING INJUCTIVE RELIEF;       )
AND  HERBERT TYRONE                )
BRANDYBURG, SUPERINTENDENT,        )
IN HIS INDIVIDUAL CAPACITY         )
AND OFFICIAL CAPACITY,             )
REQUESTING INJUCTIVE RELIEF        )

            Defendants,

Motion in Response to Magistrate Judge's Recommendations appealing paragraph 2, 3, 7,
8, and 13.

COMES NOW, Teresa Valencia, in want of counsel and submits the Motion in
Response to Magistrate Judge's Recommendations appealing paragraph 2, 3, 7, 8, and 13.
The Plaintiff ("Teresa") states the court has jurisdiction over the subject matter, due to the
"federal forum" has jurisdiction over the "Persons" who are named in the 42 U.S.C.
§1983. Chavez vs Illinois State Police, 251 F.3d 612, 648 (7th Cir. 2001), 194 F. 3d 850,
854 (7th Cir. 1999).

Title 42 U.S.C. §1983 investes jurisdiction to the "federal forum" when any persons rights
have been violated by federal statute or state statute, or an individuals rights have been
violated under the United States Constitution. See: Alexander vs City of South Bend, 256
F. Supp.2d 865, Heard vs Sheahan, 253 F. 3d 316, 317-318 (7th Cir. 2001). A §1983
claim accrues when a "plaintiff" knows or has reason to know of injury which is the basis
of the plaintiff's action. Honda, inc vs Sterling, 21 F. 3d 775, 778 (7th Cir. 1994).

The plaintiff ("Teresa") brought forth the Title 42 U.S.C. §1983, §1986 claims against the
two defendants in their individual capacity for violating her Constitutional Rights, and for

violating color of Federal law, the §1983 statute grant citizens and non-citizens the Right to Sue any person for violating a citizen (persons) Constitutional Rights the United States Constitution, this was pleaded in the Plaintiff's ("Teresa") complaint, and raises federally pursuant to §1983, §1986.

Section §1983 creates a cause of action based upon personal liability and predicated upon fault. An individual cannot be held liable in a §1983 action unless he caused or participated in an alleged constitution deprivation. Plaintiff ("Teresa") brought her claims against the two superintendents, so the "Respondent Superior" claims is pleaded in the 42 U.S.C. §1983 Civil Right Suit automatically; see: Rizzo vs Goode, 424 U.S. 363, 371, 96 s.ct. 598, 604, 46 L. Ed.2d 561 (1976).

Due to the Defendants acting in their individual capacity & violating the Plaintiff's ("Teresa") Federal Constitutional Rights under the 8th & 14th amendments and for violating color of Federal law, the Plaintiff ("Teresa") has met the standard requirements of clearly established law, and due to the official capacity being raised, the suit is against the United States, due to the Defendants acting as agents, because of their status as employers of the "Department of Interior", the Plaintiff ("Teresa") states the Defendants violated the Plaintiff's Constitutional Rights & violated color of Federal law, and due to these requirements, the Plaintiff ("Teresa") suffered injuries, because of the Defendants neglecting of their duties to seriously pay attention to the plaintiff's ("Teresa") administrative complaints to ("Department of Interior"). See: Exhibits attached to the Motion.

Plaintiff ("Teresa") states the §1983 creates a remedy for damages against the Defendants in both capacities, individual & official pursuant to Monell, Supra, 436 U.S. 658, 690 N. 55 s. ct. 2018, 2035 N. 55, 56 L.ed.2d 611 (1978); Familias Unidas vs Brisoe, 619 F2d 391, 403 (5th Cir. 1980); damages may be awarded against a defendant in his/her official capacity only if they would be recoverable against the government entity, such as the "Department of Interior", will be liable when through the execution of a Government's policy or custom, whether made by its law-makers or by those whose edicts or acts may fairly be said to represent official policy, which when Defendants were sent the administrative complaint, which the Superintendents; Catherine Farmer Light, Herbert Tyrone Brandyburg were negligent in their duties as ("Superintendents") of the "Department of Interior."

Plaintiff states the Certification of Scope of Employment acted contrary to the custom, policies, and regulations, which the institution "Department of Interior" regulates, and the United States Attorney for the Middle District of Alabama, United States Department of Justice acting pursuant to the provision of 28 U.S.C. §2679 and by virtue of the authority vested in him by 28 U.S.T.R. §15.3, but nowhere is there anything where Leura G. Canary swears under the Penalty of Perjury Attested to, for the purpose of perjury on his/her signature. See exhibit 1.

As a preliminary matter, this court should review Plaintiff's Tort and other State-law

claims against Defendants Light and Brandybury and the Department of Interior. The Defendants Light and Brandyburg absolute immunity fails as a matter under the Westfall Act, 28 U.S.C. §2679, because the Defendants Light and Brandyburg violated Plaintiff's ("Teresa") Federal Constitutional Rights and violated the color of Federal Law, and the Plaintiff ("Teresa") was injured by the negligence of the Defendants, Light and Brandyburg's conduct.

Plaintiff ("Teresa") stated the purpose of the Westfall Act is "to protect federal employees from personal liability for common law torts committed within the scope of their employment," while also providing and appropriate remedy against the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§1346 (b) & 2671-2680 see Behtinen, 913 F. 2d at 1540. Pursuant to the Westfall Act, the United States Attorney has certified that Defendants Light and Brandyburg were acting within the scope of their federal employment at the time of the incidents given the Plaintiff's claim, (see Scope of Employment Certification, Exhibit 1 to Notice of Substitution).

Plaintiff ("Teresa") states the Attorney General's scope-of-employment certification has only been certified after the fact, and the "retroactive clause" shouldn't be granted, because of the Defendants knowingly violated the Plaintiff's ("Teresa") Federal Constitutional Rights, and violated the color of Federal Law, and the plaintiff was injured by the Defendants actions.

The Plaintiff states "absolute immunity" can-not stand, but "qualified immunity," the test of qualified immunity for Federal Employees sued under 42 U.S.C. §1983 is whether in performing discretionary functions, they have engaged in conduct that violates clearly established Constitutional Rights of which reasonable person would have known; immunity may thus be established either on basis that right allegedly (or actually) violated was not at time one "clearly established" or that , though "clearly established" (and violated), it was one that "reasonable" person in officer's position could have failed to appreciate would be violated by his conduct 42 U.S.C. §1983, see: Pritchett vs Alford, 973 F. 2d 307, see: Carlos Manuel Vazquez Night & Day; Coeur d'Alene, Beeard on the unraveling of the propective – retrospective distinction in Eleventh Amendment Doctrine 87 Geo L.J. 1(1998); professor Barry Friedman of N.Y.U. Law Schools (Note Admitted) see: complaint 42 U.S.C. §1983, §1986, Notice of Unsafe or Unhealthful Working Conditions-Occupational Safety and Health Administration cited with 6 serious violations.

Plaintiff cites though Tuskegee Institute National Historic Site was cited with 6 serious violations park management still showed a lack of concern for employee safety. On August 15, 2007, the facility manager Andrew Callens contracted the stripping/sealing of the floor tiles in the Carver Museum bathrooms. The park did not assign a properly trained contracting officer (COTR) to ensure that the contractors were in compliance with federal material safety data sheets (MSDS) for the chemicals (muriactic acid) being used were not posted, and the ventilation was inadequate causing both breathing and eye irritation to both visitors and staff. Because I was running late for a doctors appointment I asked Interpretive Park Ranger Shirley Baxter to notify Administrative Officer, Shirley Streeter

about the safety issues, since Shirley Streeter was currently Acting Superintendent. Upon notification of the safety concern Mr. Herbert Tyrone Brandyburg confiscated the (Muriactic Acid) and posted Material Safety Data Sheets for Mex Seal Topical Sealer and Stone Glamor Penetrant/Topical Sealer. Park Gardener, Edward Wilson pointed out the container of Muriatic Acid.

August 17, 2007, I was verbally reprimanded by Facility Manager, Andrew Callens for having pointed out several safety and health issues (i.e., mold spores growing on vents, water leaks from ceiling, lack of suitable screening for vermin prevention on exterior of Carver Museum) that the maintenance crew had overlooked when inspectors from Carter/Burgess out of Denver, Colorado were conducting a building inspection.

Plaintiff states she went through Administrative Program Officer to "her", and attached to this "Motion" is the exhibits which are numerous in the amount, which show that Plaintiff claims have grounds and merits to stand, and Plaintiff ("Teresa") states Defendants Attorney should be sanctioned in pursuant to Rule 11 ( c ) for submitting a motion which was filed in bad-faith and for the purpose to waste the courts time. See: U.S. Department of Labor 5/04/2007 – 5/07/2007 (inspection date(s); inspection number – 310772330, Issuance Date – 7/20/2007; the proper documents were filed to the Administrative Department, and the materials, which caused the Plaintiff's ("Teresa") medical conditions were found in the work site.

The Plaintiff ("Teresa") states her 14th Amendment Right to procedure to due process" compensatory damages" and "loss of enjoyment of life and suffering of mental anguish," appear to provide more factual allegations relating to Plaintiff's alleged exposure to hazardous working conditions and her request to take sick leave. (Amended Comp., Counts III-VI) As a Matter of Law and facts the Plaintiff seeks to be awarded damages as the court seeks they could be granted by the counts III – VI).

The Plaintiff ("Teresa") states due to the numerous complaints, the Defendants had knowledge of the conditions of the workplace, and the (muriactic acid) and other materials being in the environment, but placed the Plaintiff in another environment which had more dangerous materials, which caused the Plaintiff ("Teresa") to suffer continuous harm.

Plaintiff states Federal Tort Claims Act ("FTCA") 28 U.S.C. §1346 (b) & 2671-2680 Plaintiff did exhaustion requirement, see: Wendell J. Echols sworn affidavit he swears under penalty of perjury the Ms. Valencia filed a complaint with OSHA and other agencies, which investigated the matter, and found the Department of Interior facility weren't kept up in accordance with Federal mandates. The United States has waived such immunity when representing the Defendants in their individual capacity, and due to this, the Government has taken up the (count III-VI), and the damages are on the government, see Common Law Torts, 28 U.S.C. §1346 (b).

Plaintiff states Federal Employees Compensation Act, 5 U.S.C. §8101 et.seq. is true, but Plaintiff went through procedures to request for compensation and nothing was happening

and this caused the Plaintiff ("Teresa") to go into debt so, due to this Plaintiff ("Teresa") was left with no other remedy but §1983, which gives standing (for any person who has been injured by and individual to bring an action, whether it be a statutory violation or Federal Constitutional violation, this gives the Federal court jurisdiction over the subject matter and jurisdiction over the person).

Plaintiff ("Teresa") states FTCA Requirements were met by the inquiry sent to the Department of Interior: OSHA; The FTCA provides, in pertinent part, that:

An action shall not be instituted upon a claim against the United States for money damages or lost property...caused by the negligent or wrongful act...of an employee of the government while acting within the scope of his...employment unless the claimant shall have first presented the claim to the appropriate federal agency in writing...

Plaintiff submits the inquiries to the court in full and in part, which shows the court she submitted administrative complaints to the agency, see: Notice of Alleged Safety or Health Hazards U.S. Department of Labor; 4-24-07.

Plaintiff ("Teresa") states due to the fact that the Defendants were given notice by the investigator that the site was hazardous, and contained lead exposure, arsenic, and mold spores, and this caused the plaintiff to suffer syncope, carpal tunnel syndrome, yes they are on the job injuries, but the Plaintiff went through the administrative grievance procedure, and the Defendants turned their heads away from the Plaintiff ("Teresa") going to Washington, D.C. offices, and reporting Defendants they became mad, and layed the Plaintiff ("Teresa") off without pay, and this was done in bad-faith for the purpose to harass the Plaintiff.

## **Plaintiff Exhausted Federal Remedies**

The Plaintiff ("Teresa) states Title 42 U.S.C. 1983, Plaintiff don't have to exhaust their remedies, because Congress didn't intend for the statute to have an Exhaust Standard, but in Federal Tort Claim Act ("F.T.C.A."), 28 U.S.C. § § 1346(b) & 2671-2680, see Behtinen, 913 F. 2d at 1540, Pursuant to the Westfall Act, the United States Attorney has certified that Defendants Light and Brandyburg were acting within the scope of their federal employment at the time of the incidents given the plaintiff's claim (see. Scope of Employment Certification, Exhibit 1 to Notice of Substitution)....

Plaintiff ("Teresa") states the Defendants were sued in their official capacity due to the standard prones of the statute § 1983, the Plaintiff ("Teresa") has only to show (1) the Defendants violated her 14th Amendment Right, (2) Defendants were Acting under Color of Federal Law, and (3) the Defendants injured the Plaintiff ("Teresa")...

Plaintiff states Federal Tort Claim Act ("F.T.C.A.) 28 U.S.C. § 1346(b) & 2671-2680, Plaintiff did exhaust her Federal remedies: See: Wendell J. Echols sworn affidavit, he swears under the penalty of perjury that Ms. Valencia filed a complaint with "OSHA'" and

other agencies, which investigated the matter, and found the Department of Interior facility wasn't kept up in accordance with Federal mandates. The United States has waived such immunity when representing the Defendants in their individual capacity, and due to this, the Government has taken up (count III-VI) and the damages are on the government, see Common Law Tort, 28 U.S.C. § 1346(b).....

Plaintiff states she went through administrative program officer to "her", and attached to this "Motion" is the exhibits, which is the "Motion for Judgement on the Pleadings, pursuant to Rule 12(b), such motion shows that Plaintiff claims have grounds, and merits to stand, and Plaintiff ("Teresa") states Defendants Attorney should be sanctioned in pursuant to Rule 11(c), for submitting a motion which was brought in bad-faith and for the purpose to waste the courts time. See: U.S. Department of Labor 5/04/2007-5/07/2007 (inspection date(s); inspection number) 310772330, (Issuance Date) 07/20/2007; the proper documents were filed to the Administrative Department, and the material, which caused the Plaintiff ("Teresa") medical condition were found in the work site.

The Defendants Attorney admitted such wrong; stated the Plaintiff ("Teresa") states her 14th Amendment Right to Procedural Due Process, "compensatory damages", and "loss of enjoyment of life, and suffering of mental anguish," appears to provide more factual allegations relating of Plaintiff's alleged exposure to hazardous working conditions and her requests to take sick leave (amended comp., counts II-VI) as a Matter of Law and facts the Plaintiff seeks to be awarded damages as the court seeks they could be granted pursuant to counts II-IV...

### Conspiracy to interfere with Civil Rights pursuant to 28 U.S.C. § 1985 (3) 1986 Negligence to stop a conspiracy...

The Plaintiff ("Teresa") pleads 1986 Negligence to Stop a Conspiracy, due to this the plaintiff pleas, "Conspiracy to Interfere with Civil Rights". The two issue(s) a raised when Supervisor Mr. Herbert Tyrone Brandyburg and Catherine Farmer Light was fully aware of the contaminated museum collection, bud did absolutely nothing to inform ("Teresa") of this fact prior to nor after my acceptance of the Museum Specialist position at Tuskegee Institute National Historic Site and had direct knowledge about the contaminated collection.

The Plaintiff ("Teresa") stated upon notification from the Field Museum in Chicago, Illinios, I ("Teresa") requested from both Superintendent Catherine Farmer Light and former Supervisor, Herbert Tyrone Brandyburg to be tested for "occupational exposure" to lead and arsenic. Both Superintendent Catherine Farmer Light and former Supervisor, Mr. Herbert Tyrone Brandyburg were unwilling to assist me. Assistance was only made available after I ("Teresa") made contact with Washington, D.C. office and informed Mr. Louis Rowe and Mr. Edward Perez about my safety concerns. Both of these gentlemen work safety positions with the National Park Service...

Eventually I was sent to the Richard B. Russell Building Health Unit located at 75 Spring

Street, S.W. in Atlanta, Georgia on April 3, 2007. On April 13, 2007, I received a call from the Health Unit stating that a portion of my specimens were missing and I would need to be retested. (Note: wrote several letters to the Health Unit requesting the chain of custody for my specimens, but never received any response). On April 16, 2007, the contaminated museum collection at the park had disappeared. See: Complaint prg. 7 and 8.....

Plaintiff ("Teresa") states: To establish a claim for civil conspiracy under 1985 (3) and neglect to stop a conspiracy, a plaintiff must demonstrate has the plaintiff has established, (1) the existence of a conspiracy, (2) a purpose of depriving a person or class of equal protection of the law, (3) an act in furtherance of a conspiracy, and (4) on injury to person, property, or a deprivation of a right or privilege granted to U.S. Citizen or Citizens. See: Hernandez vs. Joliet Police Dep't, 197 F. 3d  256, 263 (7th cir. 1999).

The Plaintiff states more suffered on a class based invidiously discriminatory animus behind the conspirators' actions, and that the conspirator ("Defendants") aimed at interfering with the Plaintiff's right to procedural due-process which are protected against private, as well as official encroachment, see: Majeske vs. Fraternal Order of Police, Local Lodge No. 7, 94 F. 3d 307, 311 (7th cir. 1996).

The Plaintiff ("Teresa") states the Defendants were trying to hide information from Washington, and this established existence of a conspiracy. The Plaintiff ("Teresa") states the Defendants ("conspirators ") were in agreement, to hide such information, and the Defendants inflicted harm, which caused injuries on the Plaintiff, in other words, the Defendants acted in one sinlge plan, the general nature and scope of which was known to each conspirator. See: Hernandez 197 F 3d at 263.

The Plaintiff ("Teresa") states the Defendants Conspirator Agreement "may" be inferred from circumstantial evidence, but only if it is sufficient to permit a reasonable injury to conclude that a meeting of the minds had occurred. In this case, Plaintiff has shown the prones in "her" argument is clear in the language, Hernandez, 197 F. 3d at 263.

Such argument should be judged on the merit and controlling case law......

## Conclusion

Plaintiff ("Teresa") states she's not an attorney and is in want of counsel, due to her status as being a I.F.P. and Pro'Se Litigent, and invokes the Lenient Pleading Standards under Haines vs. Kerner, 404 U.S. 519, 521 (1972); Plaintiff ("Teresa") respectfully requests the court not to hold against her any perceived under developed argument as indicative of paucity of argument so as to ignore or summarily dismiss plaintiff and argument…

## Relief Sought

Plaintiff ("Teresa") states she would like to be rewarded the fee's which the court see fit on the merit, laws, and facts, pursuant to 42 U.S.C. § 1983, from the named Defendants in their individual capacity and official capacity for amongst other things Federal Statutory Violations and Constitutional Violations.

Date

August 30, 2008

Respectfully submitted

Teresa L. Valencia, Pro'Se
Teresa Valencia, ProSe

**IN THE DISTRICT COURT OF THE
UNITED STATES FOR THE MIDDLE DISTRICT
OF ALABAMA
EASTERN DIVISION**

Teresa Valencia vs. Department of Interior, Washington, D.C.

Civil No:

3:08-cv-069-WKW

**Certificate of Service**

Please Take Notice, Teresa Valencia, in want of counsel, and cause the following to be served on the clerk and Defendants Attorney.

Leura G. Canary
United States Attorney
James J. DuBois
Assistant U.S. Attorney
Georgia Bar No. 281445
U.S. Attorney's Office
P.O. Box 197
Montgomery, AL 36101-0197

Date

*August 30, 2008*

Respectfully submitted

*Teresa L. Valencia, Pro Se*

Case 3:08-cv-00069-WKW-TFM    Document 43-2    Filed 02/30/2008    Page 2 of 2

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| TERESA VALENCIA | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | NO. 1:01-CV-0600 |
| | : | |
| U.S. DEPARTMENT OF THE INTERIOR, | : | |
| | : | |
| Defendant. | : | |

### DECLARATION OF MARCELLA GIBSON

I, Marcella Gibson, state as follows:

1.    I am the Regional Tort Claims Officer for the National Park Service, a bureau within the Department of the Interior, duty stationed in Atlanta, Georgia.  The National Park Service includes the Southeastern United States.

2.    As a part of my duties as the Regional Tort Claims Officer for the National Park Service, I am responsible for the processing of all administrative tort claims arising out of the National Park Service activities within the Southeast.

3.    As of the date of this Declaration, Teresa Valencia has not filed an administrative claim in accordance with the Federal Tort Claims Act, with the National Park Service.

I declare under penalty of perjury pursuant to 28 U.S.C. section 1746, that the foregoing is true and correct.  Executed this 22 day of April, 2008.

Marcella Gibson

U. S. Department of Labor
Occupational Safety and Health Administration

## Notice of Alleged Safety or Health Hazards

| | | Complaint Number | |
|---|---|---|---|
| Establishment Name | Tuskegee Institute NHS | | |
| Site Address | 1600 Boy Scout Circle | | |
| | Site Phone | (334)727-9721 | Site FAX | |
| Mailing Address | 1212 W. Montgomery Rd., Tuskegee, AL 36088 | | |
| | Mail Phone | | Mail FAX | |
| Management Official | Superintendent Catherine Light | Telephone | (334)727-6390 |
| Type of Business | Department of Interior - National Park Service | | |

HAZARD DESCRIPTION/LOCATION. Describe briefly the hazard(s) which you believe exist. Include the approximate number of employees exposed to or threatened by each hazard. Specify the particular building or worksite where the alleged violation exists.

Physical exposure to one employee and assistants to hazardous chemicals including strontium Sulfate and Barium Carbonate and other geologial specimens at the curatorial storage facility at Tuskegee Institute NHS. Also, major off-gassing of Specimens.

Please view attached documentation.

| Has this condition been brought to the attention of: | ☒Employer    ☐ Other Government Agency(specify) |
|---|---|
| Please Indicate Your Desire: | ☐ Do NOT reveal my name to my Employer ☒My name may be revealed to the Employer |
| The Undersigned believes that a violation of an Occupational Safety or Health standard exists which is a job safety or health hazard at the establishment named on this form | (Mark "X" in ONE box) ☒ Employee          ☐ Federal Safety and Health Committee ☐ Representative of Employees  ☐ Other (specify) |

| Complainant Name | Teresa Valencia | Telephone | 334-868-0961 |
|---|---|---|---|
| Address(Street,City,State,Zip) | 6730 Pamela Court Montgomery, AL 36116 | | |
| Signature | *Teresa L Valencia* | Date | 4-24-07 |

If you are an authorized representative of employees affected by this complaint, please state the name of the organization that you represent and your title.

| Organization Name | Your Title | Museum Specialist |
|---|---|---|

OSHA-7(Rev. 3/96)

that she said that the only way I could get contaminated with arsenic was if I was shaking the birds up and down or mishandling the object. I told Mr. Brandyburg that I handled the birds correctly and that I wasn't shaking them up and down. From that point Superintendent Light reverted back to the letter that I sent to Mr. Allen Bohnert. She said that by no means did I secure the taxidermy specimens since they were not placed in plastic bags as was suggested in the conserve-o-gram. I told her they were secure, because I am the only one that has access to the storage unit besides her and Tyrone. I also told her that I did not have the proper PPE to handle those types of items. Mr. Wendell Echols, my Union Representative then asked who is responsible for purchasing PPE. Superintendent Light then stated that she has always allowed me the opportunity to purchase whatever I need. Then Mr. Brandyburg stated that he had authorized me to purchase whatever equipment was necessary. I told him that I gave him a list last year of supplies that I needed in order for me to do my job, but he said we ran out of funds and that I would have to wait until the following year. He then mentioned that he just wanted the list and that I should have purchased whatever items I deemed necessary to do my job. The only problem with that is that at that time I was not able to use my Government Credit Card, because we were at the end of the Fiscal Year and the only ones that could make purchases were management. Also, Catherine Light questioned me about the geological specimens and other toxic specimens in the collection and placed the blame on me for not securing them. I told her that they were secure, but the building that I am currently in is inadequate and needs a better ventilation system. I told her I had made an earlier complaint about this with Tyrone Brandyburg and the former Facility Manager, Juan Gomez. Before I completed my statement Ms. Light interrupted and stated that I didn't need to complain, but to take action. Mr. Juan Gomez and I worked jointly, and he immediately notified the Safety Officer at the Southeast Regional Office and listed my concerns. The Regional Office responded promptly and when I told him about some of the toxic items within the collection.

At that point Superintendent Light said that I called her authority into question and that neither she nor Mr. Brandyburg had to tell me anything about the location of the museum collection. She said that this was her park and that the museum collection was her collection. I told her that this park belonged to the American people and that the museum collection belonged to them as well and that I was just trying to keep the park in compliance with the National Park Service's Museum Standards.

Both Catherine Light and Tyrone Brandyburg accused me of being inpatient where it came to getting tested for Occupational Exposure for arsenic. I told her I wasn't being inpatient but trying to stay in the loop to make sure that I would get tested. She told me that Washington, D.C. should have never been brought into this and that Mr. Brandyburg was working on getting me medical attention. I told her according to the email he sent dated March 21, 2007 he pretty much told me that I was on my own in this matter. Superintendent Light and Brandyburg tried to insinuate that I was being impatient, but that Tyrone Brandyburg was working with Linda Giles to get me to a physician. Mr. Brandyburg also stated that he wasn't the one that wrote the letter dated March 21, 2007, but that Mr. Anthony Stennis in the Human Resources Department at the Southeast Regional Office had written it. Truth be known, it wasn't until Washington, D.C.

May 7, 2007

OSHA
Attn. Tuxberry Suber II
1141 Montlimar Drive, Suite 1006
Mobile, Alabama 36609

Dear Mr. Tuxberry Suber II:

I would like to thank you for responding to my complaint in such a prompt manner. As
per our conversation, I would like to request a copy of your report in total upon
completion. I would also like to request that several copies of your report be sent to the
Secretary of the Interior, the Director of the National Park Service, and the Southeast
Regional Director.

I believe it is imperative that safety and health issues be brought to the attention of
individuals that can enforce issues of compliance. As you have stated all individuals have
the right to a safe workplace.

Again, thank you for your prompt response and I look forward to hearing from you in the
near future.

Sincerely,

Teresa Valencia
Museum Specialist

cc: addresses of officials

Department of Interior
Dirk Kempthorne, Secretary of the Interior
1849 C Street N.W.
Washington, D.C. 20240

Department of Interior
Mary Bomar, Director of the National Park Service
1849 C Street N.W.
Washington, D.C. 20240

National Park Service
Patricia Hooks, Regional Director
100 Alabama Street S.W.
1924 Building
Atlanta, G.A. 30303

May 10, 2007

National Park Service
U. S. Department of the Interior
1212 West Montgomery Road
Tuskegee, Alabama 36088

Dear Superintendent Light,

I have enclosed copies of my business card for documenting my OSHA inspection.
Please distribute a card to Ms. Teresa Valencia and Mr. Wendell Echols, respectively.

I will hold a final closing conference via telephone when the sampling results are
received and calculated.

If you have any questions or concerns, please contact me.

Sincerely,

Tuxberry Suber II

Tuxberry Suber II
Industrial Hygienist
U. S. Department of Labor / OSHA
Mobile Area Office
1141 Montlimar Drive, Suite 1006
Mobile, Alabama 36609

Cc:
File



**U.S. DEPARTMENT OF LABOR**
OCCUPATIONAL SAFETY AND HEALTH ADMINISTRATION

**Tuxberry Suber II**
Industrial Hygienist
Mobile Area Office

1141 Montlimar Drive
Suite 1006
Mobile, AL  36609

Telephone:    (251) 441-6131
              1 (800) 321-OSHA
Fax           (251) 441-6396
Website       www.osha.gov

US Department of Labor    **Occupational Safety and Health Administration**
**1141 Montlimar Drive, Suite 1006**
**Mobile, Alabama 36609**
**(251) 441-6131   FAX (251)**



January 2, 2008

Teresa Valencia
6730 Pamela Court
Montgomery, AL 36116

Re: Freedom of Information Act Request #2008 – 31 Department of Interior National Historic Site

Ms. Valencia:

Enclosed is the above referenced investigative file(s) you requested under the Freedom of Information Act.

Occupational Safety and Health files contain records compiled for law enforcement purposes and information contained in such records may be withheld in accordance with exemption 7 of the Freedom of Information Act (5 U.S.C. 552(b)(7)) and the Department of Labor regulation. Specifically 29 CFR 70. I have determined, however, that some information can be released to you in the public interest that would not impede the discharge of any of the department's functions. Please note that the following processing fees may be charged for requests under the Freedom of Information Act:

1. Search Time $2.50 - $5.00 per quarter hour  - $10.00
2. Review Time $5.00-$10.00 per quarter hour- $ 20.00
3. Copies-$0.15 per page (no charge for the first 100 pages) **- $ 9.90**
4. Computer Disc- $10.00 per disk- $0.00
5. Postage- Any cost in excess of $2.50 – $10.00 - **$4.60**

**Per 29 CFR 70.62 the total processing fee for the Freedom of Information Act Request is $44.50 Please include your FOIA  number with your payment to this office.**

Certain information contained in the investigative file has been deleted. The deletions and the reasons therefore are as follows:

A. The following items have been deleted because they involve either/or trade secrets, financial information and are privileged and confidential. Disclosure of these documents would impede the discharge of Department of Labor functions and would not serve the public interest. (Exemption 4 of the Freedom of Information Act. *Exemption 4 – where indicated*



B. The following items have been deleted because they contain opinions contained in intra or interagency memoranda and letters. Matters that are opinions, evaluative, or subjective in nature or exempted from disclosure by (Exemption 5 of the Freedom of Information Act. Exemption 5 – where indicated

C. The following items have been deleted because they are personnel, medical and/or similar files. Disclosure of these documents would constitute a clearly unwarranted invasion of privacy and are exempt from disclosure by (Exemption 6 of the Freedom of Information Act. Exemption 6 – where indicated

D. The following items have been deleted because they are contained in the investigative file compiled for law enforcement proceedings and/or disclose the identities of confidential sources. These items are exempt from disclosure by (Exemption 7(a), 7(b), 7(c), 7(d), 7(e) and 7(f) of the Freedom of Information Act). *Exemption 7 – where indicated*

You may file an appeal of this decision with the Solicitor of Labor within 90 days from the date of this letter. The appeal must state, in writing, the grounds for the appeal, including any supporting statement or arguments. To facilitate processing, you may wish to fax your appeal to: (202) 693-5538. The appeal should include a copy of your initial request and a copy of this letter. The appeal must be addressed to: Solicitor of Labor, U.S. Department of Labor, Rm. N-2428, 200 Constitution Avenue, N.W., Washington, D.C. 20210. If mailed, both the envelope, and the letter of appeal itself should be clearly marked: "Freedom of Information Act Appeal."

If I may be of further assistance in this matter, please contact me.

Sincerely,

Ken Nishiyama-Atha
Area Director



**Continuation
Case File Diary Sheet**



Case File Number:

| DATE | SIGNIFICANT EVENT or ACTION | INITIALS |
|------|------------------------------|----------|
| 7/03/07 | Mailed Notice of Unsafe or Unhealthful Working Conditions | TC |
| 07.25.07 | Spoke w/ Linda Giles concerning an overview of funding — gave phone classing, she is the Safety coordinator | TC |
| 8/1/07 | Red Request from Union requesting copy of Citation. Sent via fax | TC |
| 8/7/07 | Recd abate info | TC |
| 08.08.07 | Spoke with Linda Giles regarding electronic copies of citations, I informed her we don't have those capabilities. Ms. Giles stated they will not protest citation. | TC |
| 8/8/07 | Abatement info reviewed Satisfactory (Close file) | JF |
| 8/6/07 | Recd FOIA request - sent ltr open file (after 8/16/07) | TC |
| 8/7/07 | Recd FOIA request - sent ltr open file | TC |

**Case File Diary Sheet**
**Mobile Area Office**


OSHA Occupational Safety and Health Administration

| | |
|---|---|
| Establishment Name: Department of Interior - NHS | Inspection Date: 05.03.07 |
| Case File Number: 310 772330 | Phone #: | Contest Date: 8/14/07 |
| History check completed; qualified for 10% reduction: ☐ Yes ☐ No | CSHO ID # : ▓▓ |
| EISA Qualified: ☐ Yes ☐ No | Establishment Information Verified: ☐ Yes |
| Type Inspection: *Fatality* (*Complaint*) *Referral   LEP   NEP   SST   U-Tenn   Other :* |

| DATE | SIGNIFICANT EVENT or ACTION | INITIAL |
|---|---|---|
| | Case Assigned by: AD   AAD   Self Referral | |
| 4/26/07 | Received, evaluated : processed Forum complaint | ▓ |
| 4/30/07 | Assigned to CSHO ▓▓▓▓ | JF |
| 05.03.07 | Opened inspection 07-002 @ ▓▓ 9:00 am Work wipe samples | ▓ |
| 05.03.07 | Held opening conf @ 9:17 am | ▓ |
| 05.07.07 | Sampled on site & wipe sampled | ▓ |
| 05.08.07 | Shipped samples to lab | ▓ |
| 05.10.07 | Talked w/ complainant @ 1:30 pm | ▓ |
| 05.31.07 | Talked w/ complainant · several occasions | ▓ |
| 05.31.07 | File given to team leader | ▓ |
| 5/31/07 | Reviewed file assessed IBS | JF |
| 6/4/07 | Reviewed File + issued violation | JF |
| ▓▓▓▓ | Reviewed file + turned to | |
| 06.05.07 | IH made revisions and given to team leader | ▓ |
| 6/6/07 | Call from Complainant as to has request of medical reports. | ▓ |
| 6/20/07 | Checked LISA sampling ▓▓ (SLTC) samples assigned | |
| | to lab tech on 6/15/07 working for results to | |
| | issue | JF |
| 07.06.07 | Called Christine @ NPS re setting up conf - C. Light returned call re confirmed | ▓ |
| | held closing conf (phone) w/ C. Light, union Reps, B. Anderson, G. Jones | |
| 7/18/07 | Returned to CSHO for changes | ▓ |
| 07.18.07 | Corrections Made | ▓ |
| 07/19/07 | Case file reviewed ▓▓▓ | ▓ |
| 07.19.07 | Corrections made, given to Team Leader | ▓ |
| ▓▓▓ | ▓▓▓ OK to issue - File back to CSHO to | ▓ |

**US Department of Labor**    Occupational Safety and Health Administration
1141 Montlimar Drive Suite 1006
Mobile, Alabama 36609
(251) 441-6131   FAX (251) 441-6396



August 6, 2007

Linda Giles, Safety Manager
United States Department of the Interior
National Park Service
Southeast Regional Office
Atlanta Federal Center – 1924 Building
100 Alabama St., SW
Atlanta, Ga 30303

RE: Tuskegee Institute National Historic Site
Inspection Number 310772330



Dear Ms. Giles,

This letter acknowledges your request for release
Information Act.

This is an open file and this information cannot be released until the file is closed or until all
abatements have been completed.

You may check with our office from time to time to determine the status of the file and to
invoke your request when it has been determined that the file has been closed. If you have
Internet capabilities you can conduct an establishment search for this information. The
address is www.osha.gov. On the right side of the web page, select **Statistics**, then
**Inspections**. You can type in the company name and you should be able to see when
citations are issued, when the case is closed, etc.

FOIA requestors may be charged for the information requested. If you are not willing to incur
such charges, please notify this office.

Sincerely,

Kenneth Nishiyama-Atha
Area Director

## FOIA NOTICE

**Exemptions:** Portions of requested records may be exempt from disclosure pursuant to 5 U.S.C. 552. Department of Labor regulations provide that when a request for records has been denied in whole or in part, the requester may appeal the denial of the request to the Solicitor of Labor within 90 days of the denial. The appeal must be in writing and must state the grounds for appeal, including any supporting statements or arguments. Appeals should be addressed to the Solicitor of Labor, Department of Labor, 200 Constitution Ave., N. W., Washington D.C. 20210. The envelope and the appeal should be clearly labeled: "FOIA Appeal".

**Charges:** You may incur monetary charges for reproduction of the case file you have requested. The following is a list of charges that may be assessed:

Copies:
$0.15 per page – Commercial requesters
Media, Educational, and all other requesters – 100 pages free - $0.15 per page after 100 pages.

Search and Review time:
Commercial requesters -$5.00 - $10.00 per quarter hours
Media, Educational requesters - $0.00
All other requesters - First two hours free – 2.50 to $5.00 per quarter hour thereafter

Videotapes / Computer disks or CD's - Requester provides videotape, $10.00 per hour copying fee (minimum fee of $10.00 per tape) plus postage. – To be paid by all requesters.

Photo Processing – This service is performed by contract and must be paid for by the requester. You will be notified of the cost once we have processed the film. – To be paid by all requesters.

Computer print out - $12.00 to $35.00 – To be paid by all requesters.



*Due Aug. 29,*   91/07



# United States Department of the Interior

NATIONAL PARK SERVICE
Southeast Regional Office
Atlanta Federal Center
1924 Building
100 Alabama St., S.W.
Atlanta, Georgia 30303

IN REPLY REFER TO:





AUG 2007
Received
MOBILE AREA OFFICE

JUL 3 0 2007

DOL – OSHA
Mobile Area Office
1141 Montlimar Dr.
Suite 1006
Mobile, AL 36609

Dear ▓▓▓▓

On May 5-7, 2007 a formal inspection was conducted at the Tuskegee Institute National Historic Site, Inspection # 310772330.

I am submitting this written request for copies of the formal complaint, citations/violations, air sampling and lab test results documents related to this inspection.

Please forward the information to:

       Linda Giles
       Regional Safety Manager
       National Park Service
       SNAFC, 1924 Bldg.
       100 Alabama St. S.W.
       Atlanta, GA 30303

Sincerely,

*Linda Giles*

Linda Giles
Safety Manager
Southeast Region

**TAKE PRIDE IN AMERICA**



**US Department of Labor**    Occupational Safety and Health Administration
1141 Montlimar Drive Suite 1006
Mobile, Alabama 36609
(251) 441-6131    FAX (251) 441-6396



August 7, 2007



RE: Tuskegee Institute National Historic Site
Inspection Number 310772330

Dear 

This letter acknowledges your request for release of information under the Freedom of Information Act.

This is an open file and this information cannot be released until the file is closed or until all abatements have been completed.

You may check with our office from time to time to determine the status of the file and to invoke your request when it has been determined that the file has been closed. If you have Internet capabilities you can conduct an establishment search for this information. The address is www.osha.gov. On the right side of the web page, select **Statistics**, then **Inspections**. You can type in the company name and you should be able to see when citations are issued, when the case is closed, etc.

FOIA requestors may be charged for the information requested. If you are not willing to incur such charges, please notify this office.

Sincerely,

Kenneth Nishiyama-Atha
Area Director



# FOIA NOTICE

**Exemptions:** Portions of requested records may be exempt from disclosure pursuant to 5 U.S.C. 552. Department of Labor regulations provide that when a request for records has been denied in whole or in part, the requester may appeal the denial of the request to the Solicitor of Labor within 90 days of the denial. The appeal must be in writing and must state the grounds for appeal, including any supporting statements or arguments. Appeals should be addressed to the Solicitor of Labor, Department of Labor, 200 Constitution Ave., N. W., Washington D.C. 20210. The envelope and the appeal should be clearly labeled: "FOIA Appeal".

**Charges:** You may incur monetary charges for reproduction of the case file you have requested. The following is a list of charges that may be assessed:

Copies:
$0.15 per page – Commercial requesters
Media, Educational, and all other requesters – 100 pages free - $0.15 per page after 100 pages.

Search and Review time:
Commercial requesters -$5.00 - $10.00 per quarter hours
Media, Educational requesters - $0.00
All other requesters - First two hours free – 2.50 to $5.00 per quarter hour thereafter

Videotapes / Computer disks or CD's - Requester provides videotape, $10.00 per hour copying fee (minimum fee of $10.00 per tape) plus postage. – To be paid by all requesters.

Photo Processing – This service is performed by contract and must be paid for by the requester. You will be notified of the cost once we have processed the film. – To be paid by all requesters.

Computer print out - $12.00 to $35.00 – To be paid by all requesters.





*Due Aug. 29, [illegible]*



Date: July 31, 2007
From: ███████████████████████████
Subj: Findings
To: OSHA Inspector

████████████ is requesting a copy of the **Findings** from the OSHA Inspection dated May 4th. – May 7th. File # 310772330, this inspection was conducted at the Tuskegee National Park Site.

Thanks for your cooperation in this matter.

Sincerely yours,





# United States Department of the Interior

### National Park Service
Tuskegee Institute
National Historic Site
1212 West Montgomery Road
Tuskegee Institute, Alabama 36088



IN REPLY REFER TO.

A7615 (TUIN)



AUG 2007
Received
USDOL-OSHA
MOBILE AREA OFFICE

August 6, 2007

Memorandum

To:          Area Director, Ken Nishiyama-Atha, U.S.Department of Labor

From:        Acting Superintendent, Tuskegee Institute National Historic Site, Selma to Montgomery
             National Historic Trail, Tuskegee Airmen National Historic Site

Subject:     Inspection Number 310772330, Notice of Unsafe or Unhealthful Working Conditions

Subject notice was received on July 26, 2007. Corrective actions have been completed. Some are
continuing actions, such as updated annual trainings. We are submitting:

- Notices of Corrective Actions for each Citation
- Abatement Certification
- Supporting Documentation, photos, letters, certificates

If you should have any question, you may contact me at 334-727-6390.

# PAGE(s)

10

# is withheld

# because of duplicate page(s)

## OSHA's Form 300A
# *Summary of Work-Related Injuries and Illnesses*

All establishments covered by part 1904 must complete this summary page, even if no work related injuries or illnesses occurred during the year. Remember to review the log to verify that the entries are complete and accurate before completing the summary.

Using the log, count the individual entries you made for each category. Then write the totals below, making sure you've added the entries from every page of the log. If you've had no cases write "0."

Employees, former employees and their representatives have the right to review the OSHA Form 300 in its entirety. They also have limited access to the OSHA Form 301 or its equivalent. See 29 CFR Part 1904.35, in OSHA's recordkeeping rule, for further details on access provisions of these forms.

### Establishment Information

**Establishment Name:** tuin

**Street** 1212 Old Montgomery Rd

**City** Tuskegee  **State** al  **Zip** 36088

Industry Description (e.g. manufacture of motor truck trailers)

Government

Standard Industrial Classification

___  ___  ___  ___

OR

North American Industrial Classification

___  ___  ___  ___  ___

### Number of Cases

| Total number of deaths | Total number of cases with days away from work | Total number of cases with job transfer or restr | Total number of other recordable cases |
|---|---|---|---|
| 0 | 1 | 0 | 1 |
| (G) | (H) | (I) | (J) |

### Number of Days

| Total number of days away from work | Total number of days of job transfer or restriction |
|---|---|
| _____ | _____ |
| (K) | (L) |

### Injury and Illness Types

Total Number of...
(M)

| | | | |
|---|---|---|---|
| (1) Injuries | 2 | (4) Poisonings | 0 |
| (2) Skin Disorders | 0 | (5) Hearing Loss | 0 |
| (3) Respiratory Condition | 0 | (6) All Other Illnesses | 0 |

### Employment Information

Annual Average Number of Employees  20

Total Hours Worked by all employees last year 35579

**Sign Here** *(signature)*
Knowingly falsifying this document may result in a fine.

I certify that I have examined this document and that to the best of my knowledge the entries are true accurate and complete.

*Acting Superintendent*
Company Executive  Title

334-727-6390
Phone
Date  7-26-2007

Post this Summary page from February 1 to April 30 of the year following the year covered by the form.

CITATION 2 ITEM 1

YEAR 2003 OSHA FORM 300A
CERTIFICATION

ABATEMENT CERTIFICATION
Page 1

Ken Nishiyama-Atha, Area Director
U.S. Department of Labor – OSHA
1141 Montlimar Drive, Suite 1006

Mobile, AL  36609
Phone:  (251)441-6131

Department of the Interior-National Park Service
Tuskegee Instiute1600 Boy Scout Circle
Tuskegee, AL  36088

The hazard referenced in Inspection Number  __310772330__ for the violation identified as
Citation ____1_____ and Item____1_____ was corrected on ___6/7/2007_____
by_____ _____ .

The hazard referenced in Inspection Number  __310772330__ for the violation identified as
Citation ____1_____ and Item_____2_____ was corrected on ___5/4/2007_____
by_____ _____ .

The hazard referenced in Inspection Number  __310772330__ for the violation identified as
Citation ____1_____and Item ____3_____ was corrected on ___5/4-7/2007_____
by_____ _____ .

The hazard referenced in Inspection Number  __310772330__ for the violation identified as
Citation ____1_____ and Item_____4_____ was corrected on ___5/4-7/2007_____
by_____ _____ .

The hazard referenced in Inspection Number  __310772330__ for the violation identified as
Citation ____1_____ and Item_____5a_____ was corrected on ___4/23 -- 7/28 & ongoing___
by___Catherine Light _____ .

I attest that the information contained in this document is accurate and that the affected employees and their representatives have
been informed o the abatement activities described in this certification.


_Shirley T. Streeter_
Signature

_Shirley T. Streeter_
Typed or Printed Name

---



ABATEMENT CERTIFICATION
Page 2

Ken Nishiyama-Atha, Area Director
U.S. Department of Labor – OSHA
1141 Montlımar Drive, Suite 1006

Mobile, AL  36609
Phone:  (251)441-6131


Department of the Interior-National Park Service
Tuskegee Instiute1600 Boy Scout Circle
Tuskegee, AL  36088


The hazard referenced in Inspection Number   __310772330__ for the violation identified as
Citation ____ 1          and Item___5b_____was corrected on_____
by_____          _____

 The hazard referenced in Inspection Number   __310772330__ for the violation identified as
Citation ____1_____and Item____6_____was corrected on____7/26/2007_____
by___          _____

The hazard referenced in Inspection Number   __310772330__ for the violation identified as
Citation ____2_____and Item____1_____was corrected on____7/26/2007_____
by _____          _____





I attest that the information contained in this document is accurate and that the affected employees and their representatives have
been informed o the abatement activities described in this certification.

_Shirley T. Otrett_____
Signature

_Shirley T. Streeter_
Typed or Printed Name

---



**U.S. Department of Labor**
Occupational Safety and Health Administration

Company Name: **Department of the Interior-National Park Service**
Inspection #: 310772330

## NOTICE OF CORRECTIVE ACTION

CORRECTIVE ACTION TAKEN FOR EACH STANDARD VIOLATED SHOULD BE SUBMITTED TO THIS OFFICE ON OR BEFORE THE DATE BY WHICH VIOLATION(S) MUST BE ABATED AS INDICATED IN THE "CITATION AND NOTIFICATION OF PENALTY".

THIS INFORMATION MAY BE WRITTEN BELOW, ON THE REVERSE SIDE OR ON ATTACHED PAGES IF NECESSARY.

| CITATION NO. | ITEM NO. | CORRECTIVE ACTION TAKEN | DATE COMPLETED |
|---|---|---|---|
| Citation 1 | 1 | Drinking water fountain was installed in the Maintenance Facility. Employees are aware of the fountain. Copy of this action is posted. (Photo attached). | June 7, 2007 |
| Citation 1 | 2 | Hand soap was available but had been depleted. This was rectified while inspector was on site. A new soap dish was installed in the G.W. Carver Museum. Copy of this action is posted. (Photo attached0> | May 4, 2007 |
| Citation 1 | 3 | Air monitoring was performed on May 4-7, 2007 by Inspector ██████ at the George Washington Carver Museum. Southeast Regional Office Safety Officer has requested a copy of Inspector ██████'s test results taken while he was here. Per SER Safety Officer Linda Giles' conversation with ██████ on July 25, 2007, the test results showed no airborne concentration. | July 25, 2007 |

**NAME OF COMPANY OFFICIAL**
**Shirley T. Streeter** *(signature)*
 (Acting) Superintendent
**TITLE**

**DATE:  August 3, 2007**

NOTE: 29 USC 666.(g): Whoever knowingly makes any false statements, representation or certification in any application, record, plan or other documents filed or required to be maintained pursuant to the Act shall, upon conviction, be punished by a fine of not more than $10,000, or by imprisonment for not more than six months or both.
POSTING: A copy of the completed Corrective Action Worksheet should be posted for employee review.



WATER FOUNTAIN
INSTALLED AT THE MAINT.
FACILITY JUNE 7, 2007
By:



SOAP DISPENSERS W/SOAP
G.W. CARVER MUSEUM
INSTALLED: 5-14-2007
SOAP PLACED IN AT SAME TIME.
By: ███████████

# PAGE(s)

## is withheld

## because of duplicate page(s)



SOAP DISPENSERS W/SOAP
G.W. CARVER MUSEUM
INSTALLED: 5-14-2007
SOAP PLACED IN AT SAME TIME.
By: ANDREW CALLENS



**U.S. Department of Labor**
Occupational Safety and Health Administration

Company Name:  **Department of the Interior-National Park Service**
Inspection #:  **310772330**

## NOTICE OF CORRECTIVE ACTION

CORRECTIVE ACTION TAKEN FOR EACH STANDARD VIOLATED SHOULD BE SUBMITTED
TO THIS OFFICE ON OR BEFORE THE DATE BY WHICH VIOLATION(S)
MUST BE ABATED AS INDICATED IN THE "CITATION AND NOTIFICATION OF PENALTY".

THIS INFORMATION MAY BE WRITTEN BELOW, ON THE REVERSE SIDE OR ON ATTACHED
PAGES IF NECESSARY.

| CITATION NO. | ITEM NO. | CORRECTIVE ACTION TAKEN | DATE COMPLETED |
|---|---|---|---|
| Citation 1 | 4 | NOTE:  Citation does not list violations for (B) and (C).  OSHA Inspector performed wipe samples to determine the presence of lead May 4-7, 2007. Per Safety Officer Linda Giles' conversation with Inspector ▆▆▆ on July 25, 2007, test results showed no airborne concentrations.  A copy of these test results have been requested by the SER Safety Officer. All Park employees have been notified of the presence of lead containing materials at the George Washington Carver Museum via posting of Citations. | July 25, 2007 |

NAME OF COMPANY OFFICIAL                    **DATE:  August 3, 2007**
**Shirley T. Streeter** *(signature)*
 **(Acting) Superintendent**
**TITLE**

NOTE:  **29 USC 666.(g)**:  Whoever knowingly makes any false statements, representation or certification in any application,
record, plan or other documents filed or required to be maintained pursuant to the Act shall, upon conviction, be punished by a
fine of not more than $10,000, or by imprisonment for not more than six months or both.
**POSTING:**  A copy of the completed Corrective Action Worksheet should be posted for employee review.



**U.S. Department of Labor**
Occupational Safety and Health Administration

Company Name:  **Department of the Interior-National Park Service**
Inspection #:  **310772330**

## NOTICE OF CORRECTIVE ACTION

CORRECTIVE ACTION TAKEN FOR EACH STANDARD VIOLATED SHOULD BE SUBMITTED TO THIS OFFICE ON OR BEFORE THE DATE BY WHICH VIOLATION(S) MUST BE ABATED AS INDICATED IN THE "CITATION AND NOTIFICATION OF PENALTY".

THIS INFORMATION MAY BE WRITTEN BELOW, ON THE REVERSE SIDE OR ON ATTACHED PAGES IF NECESSARY.

| CITATION NO. | ITEM NO. | CORRECTIVE ACTION TAKEN | DATE COMPLETED |
|---|---|---|---|
| Citation 1 | 5a | April 19, 2007. Museum Specialist was Instructed to complete Safety Trainings: | |
| | | Safety:  Personal Protective Equipment | 4/23/07 |
| | | Safety: Authorities, Roles & Responsibilities | 4/20/07 |
| | | Safety:  USGS Industrial Hygiene Prog. | 4/23/03 |
| | | In addition, all employees were instructed to complete 2 mandatory trainings, managers were instructed to complete five mandatory safety trainings, and maintenance employees were instructed to take 4 mandatory safety trainings, all on-line | 5/3-6/30, 2007 |
| | | Courses included in addition to the above: Office Safety, DOI Safety and Occupational Health, Safety: Exit Routes, Emer. Exit Plans, Structural Fire Training for Mngrs., Hand & Portable Powered Tools | |
| | | PPE and other safety items have been acquired to assist in Safety of employees. | 5/1/2007 |
| | | A Safety Training Program Library (OSHA) has been acquired and training is being offered. | |
| | | Current affected taxidermic artifact(s) have been | 7/9/2007 |
| | | removed from the visitor display area of the Museum. | 7/28/2007 |
| | | (Copies of certificates, logs, attached) | |

**NAME OF COMPANY OFFICIAL**                                      **DATE:  August 3, 2007**
Shirley T. Steeter
   **(Acting) Superintendent**
**TITLE**

NOTE:  29 USC 666.(g):  Whoever knowingly makes any false statements, representation or certification in any application, record, plan or other documents filed or required to be maintained pursuant to the Act shall, upon conviction, be punished by a fine of not more than $10,000, or by imprisonment for not more than six months or both.
POSTING:  A copy of the completed Corrective Action Worksheet should be posted for employee review.

DOI-National Park Service
Tuskegee Institute NHS, Selma to
Montgomery NHT, Tuskegee Airmen NHS
1212 W. Montgomery Road
Tuskegee Institute, AL  36088
Inspection No. 310772330
**Citation 1 Item 5a**

# MEMOS

# REGARDING

# SAFETY

-------------------- page(s)

Were withheld

EXEMPTION 5

LSI Lab Safety Supply Inc ®

## PACKING LIST

| Order # | SC01394279 | Page: | 1 |
| Pick Batch # | 0000187784 | | |

**Shipped To**

AL    USA    36088 – 1923          AL    USA    36088 – 1923

| ATE | SHIPPED VIA | FREIGHT TERMS | CUSTOMER P.O. |
|---|---|---|---|
| I/07 | UPS Ground | FREIGHT PREPAID | |

| r Ship Qty | B.O. Qty | Product Number | MSDS Number | Stock Number | Description |
|---|---|---|---|---|---|
| 6 | | 16558 | | 16558 | RESP ALLEGRO STGE BG LDPE 14 I |
| 1 | | 24340 | | 24340 | GEN REF OFFICIAL OSHA SFTY HND |
| 2 | | 596 – 13 | | 596 – 13 | SIGN TOXIC CHEM 4X2 7/8 SADHV S25 |
| 1 | | 94425 | MSDS6251 | 94425 | EYEWASH SGL STA NORTH 16 OZ |
| 1 | | 94429 | MSDS6251 | 94429 | REPL EYEWASH BTL NORTH SAFETY |
| 0 | 1 | 129769F | | 129769F | INFO SIGN FA STA 14X10 FBRGL |
| 2 | | 128934F | | 128934F | CAUT SIGN RADIOACTIVE 7X10 FBR |
| 1 | | 122852 | MSDS6074 | 122852 | FA KT 4 SHELF FILLED FAST FILL |

Order weight is:        24.350 lbs

## Thank You for Your Business!

These Commodities, Technology or Software were exported from the United States in accordance with the Export Administration Regulations. Diversion contrary to U.S. Law is Prohibited.
CLAIMS: If cartons are found to be damaged or missing, it should be noted on delivery receipt before signing. Report any concealed damages or loss to the carrier and Lab Safety Supply. Report any losses or damages directly to Customer Service. PLEASE ADVISE WITHIN 15 DAYS OF ANY DISCREPANCY.

1 – 2 – 4 – 6



Questions? Call **1-800-356-0783** | Fax: **1-800-54   910** | Order Online: **www.LSS.com**

Lab Safety Supply Inc. | PO Box 1368 | Janesville WI U.S.A. 53547-1368

## PACKING LIST

| | |
|---|---|
| **Order #** | SC01387477 |
| **Pick Batch #** | 0000187613 |

**Page: 1**

**Shipped To**

AL    USA    36088 – 1923          AL    USA    36088 – 1923

| ATE | SHIPPED VIA | FREIGHT TERMS | CUSTOMER P.O. |
|---|---|---|---|
| 27/07 | UPS Ground | FREIGHT PREPAID | |

| Ship Qty | B.O. Qty | Product Number | MSDS Number | Stock Number | Description |
|---|---|---|---|---|---|
| 3 | | 14147 | | 14147 | APRON WH 30 IN WX33 IN L PLYST |
| 6 | | 38021 | | 38021 | RESP N100 DISPBL 3M NIOSH |
| 2 | | 4077L | | 4077L | LAB COAT MENS PLAS BTTN LRG WH |
| 2 | | 4077M | | 4077M | LAB COAT MENS PLAS BTTN MED WH |
| 1 | | 4077S | | 4077S | LAB COAT MENS PLAS BTTN SM WH |
| 1 | | 4077XL | | 4077XL | LAB COAT MENS PLAS BTTN XLRG |
| 6 | | 54877 | | 54877 | NV GOG GRN FRAME CL LENS AF AN |
| 1 | | 138480 – 6 | | 138480 – 6 | GLV CLN PRCS HALOGNTD TRI – LITE |
| 1 | | 138480 – 7 | | 138480 – 7 | GLV CLN PRCS HALOGNTD TRI – LITE |
| 3 | | 138480 – 8 | | 138480 – 8 | GLV CLN PRCS HALOGNTD TRI – LITE |
| 3 | | 138480 – 9 | | 138480 – 9 | GLV CLN PRCS HALOGNTD TRI – LITE |

Order weight is:    28.530 lbs

These Commodities, Technology or Software were exported from the United States in accordance with the Export Administration Regulations. Diversion contrary to U.S. Law is Prohibited.
**CLAIMS:** If cartons are found to be damaged or missing, it should be noted on delivery receipt before signing. Report any concealed damages or loss to the carrier and Lab Safety Supply. Report any losses or damages directly to Customer Service. **PLEASE ADVISE WITHIN 15 DAYS OF ANY DISCREPANCY.**

## Thank You for Your Business!

1 – 2 – 4

**LSS** ®
Lab Safety Supply Inc. | PO Box 1368 | Janesville WI U.S.A. 53547-1368

## PACKING LIST

| | | | | | Page: | 1 |
|---|---|---|---|---|---|---|

Order #    SC01394279
Pick Batch #    0000187954

Shipped
To

AL    USA    36088-1923                    AL    USA    36088-1923

| TE | SHIPPED VIA | FREIGHT TERMS | CUSTOMER P.O. |
|---|---|---|---|
| /07 | UPS Ground | FREIGHT PREPAID | |

| r | Ship Qty | B.O. Qty | Product Number | MSDS Number | Stock Number | Description |
|---|---|---|---|---|---|---|
| | 1 | | 129769F | | 129769F | INFO SIGN FA STA 14X10 FBRGL |

Order weight is:        0.630 lbs

These Commodities, Technology or Software were exported from the United States in accordance with the Export Administration Regulations. Diversion contrary to U.S. Law is Prohibited.
CLAIMS: If cartons are found to be damaged or missing, it should be noted on delivery receipt before signing. Report any concealed damages or loss to the carrier and Lab Safety Supply. Report any losses or damages directly to Customer Service.  PLEASE ADVISE WITHIN 15 DAYS OF ANY DISCREPANCY.

## Thank You for Your Business!

1 — 4 — 6



52

---------------- **page(s)**

# Were withheld

# EXEMPTION 5



TORAGE FOR TOXIC ARTIFACTS
URATORIAL STORAGE
IRD REMOVED FROM MUSEUM
/28/2007
DOI-National Park Service
Tuskegee Institute NHS, Selma to
Montgomery NHT, Tuskegee Airmen NHS
1212 W. Montgomery Road
Tuskegee Institute, AL 36088
Inspection No. 310772330
Citation 1 Item 5a
TOXIC CHEMICALS
TOXIC CHEMICALS

# TUSKEGEE INSTITUTE NATIONAL HISTORIC SITE
## PREVENTIVE CONSERVATION AND MUSEUM HOUSEKEEPING PLAN

Of National Park Service
uskegee Institute NHS, Selma to
lontgomery NHT, Tuskegee Airmen NHS
212 W. Montgomery Road
uskegee Institute, AL 36088
inspection No. 310772330
'itation 1 Item 5a



Prepared by: _____     Date: _____ 2005
                  Museum Specialist

Recommended by: _____     Date: _____ 2005
                  Chief of Interpretation

Approved by: _Catherine Light_____     Date: _____ 2005
                  Superintendent

## MUSEUM AND HISTORIC STRUCTURES
## TUSKEGEE INSTITUTE NATIONAL HISTORIC SITE

### TABLE OF CONTENTS

|       |                                                   | Page |
|-------|---------------------------------------------------|------|
| I.    | Housekeeping Policies                             |      |
|       | A. General Comments                               | 1    |
|       | B. Environmental Standards                        | 1    |
|       | C. Installation Standards                         | 2    |
|       | D. Handling Procedures                            | 3    |
|       | E. Cleaning – General comments                    | 4    |
|       | F. List of Housekeeping Responsibilities          | 4    |
|       |                                                   |      |
| II.   | Housekeeping Procedures                           |      |
|       | A. General Comments                               | 5    |
|       | B. Dusting                                        |      |
|       |   1. General Comments                   | 5    |
|       |   2. Dusting and Vacuuming Exposed Surfaces | 5 |
|       |   3. Hand dusting with a Soft-Bristle Brush | 6 |
|       | C. Cleaning Glass and Plexiglass                  |      |
|       |   1. Plexiglass and Lexan               | 6    |
|       |   2. Glass Cleaning                     | 6    |
|       | D. Cleaning Floors                                |      |
|       |   1. Porches                            | 7    |
|       |   2. Rough Wood Floors                  | 7    |
|       |   3. Smooth Wood or Painted Floors      | 7    |
|       |   4. Linoleum Floors                    | 7    |
|       | E. Vacuuming                                      |      |
|       |   1. General Comments                   | 7    |
|       |   2. Vacuuming Historic Textiles        | 7    |
|       | F. Cleaning Metal Objects                         | 8    |
|       |                                                   |      |
| III.  | Housekeeping Schedule and Log (Attachment)        |      |
|       |                                                   |      |
| IV.   | Housekeeping Supplies (Attachment)                |      |
|       |                                                   |      |
| V.    | Reference Materials (Attachment)                  |      |

# MUSEUM AND HISTORIC STRUCTURES
## TUSKEGEE INSTITUTE NATIONAL HISTORIC SITE

I. GENERAL COMMENTS

  A.  Historic Houses
      1.  The most numerous kind of museum in the United States – about 6,000 historic properties have been preserved.
      2.  Visitors hope to capture some of the essence of American's past – therefore the sites are symbolic of who we are and where we came from.
      3.  Through the museum experience, people's lives can be explored by learning what they thought, believed, and how they felt about the world.
  B.  Conservation, in the historic house context, means the preservation and maintenance of cultural materials as well as the house itself.

II. Environmental Standards
  A.  Many conditions contribute to the deterioration and premature aging of historic artifacts.
  B.  Light
      1.  The primary adversary of organic historic materials (sunlight is harmful because it generates heat and transmits ultraviolet rays) and can be the most difficult to control.
      2.  Recommendations for mitigating light damage at Tuskegee Institute National Historic Site (TUIN).
         a.  Apply ultraviolet-inhibiting film to windows.
         b.  Place sensitive materials away from windows and in dark parts of the room. (Highly sensitive materials are textiles, costumes, works of art on paper, documents and photographs, wallpaper, dyed leather, basketry, most ethnographic objects, pigmented fur and feathers, marquetry and wood with significant surface color.)
         c.  Do not allow flash attachments for photography in house.
         d.  Keep lights off in buildings when no visitors are present.
         e.  Use a UV meter to monitor light sources for UV emmitance. Standard not to exceed 5-8 footcandles.
  C.  Temperature and Relative Humidity
      1.  Furnishings are best maintained within a moderate range of temperature and relative humidity.
         a.  The preservation of furnishings depends a great deal on the environment to which they are exposed.
         b.  Low relative humidity can cause desiccation and embrittlement of paper, leather and textiles, and the splitting and cracking of wood and other dense organic materials.
         c.  High relative humidity promotes corrosion of metal, mold growth, and insect activity.
         d.  The most harmful situation is fluctuating conditions, which can cause structural damage such as cracking and warping as each material absorbs and releases moisture to maintain equilibrium.
      2.  Temperature
         a.  Maintain a stable point above 50 and below 75 degrees, ideally between 61 and 68 degrees.
         b.  Transition between summer and winter temperatures should be as gradual as possible.
      3.  Relative Humidity
         a.  Relative Humidity
            (1)  The relationship between the absolute humidity (the amount of water vapor in a given volume of air and the maximum amount of water vapor that a specific volume of air, at the same temperature and air pressure, is able to hold).
            (2)  The ability of the air to support and contain water vapor varies with the temperature. Hot air has a greater capacity for holding water than cold air.
         b.  A stable point (ideally between 35% and 55%) should be achieved with a fluctuation of no more than 3% per day.

    4. Recommendations for temperature and humidity control at TUIN.
       a. Install a hygrothermograph or data logger in the Carver Museum, the Oak's, and curatorial building, as this is where most of the sensitive materials are displayed/stored.
       b. Keep accurate records of temperature, humidity levels and fluctuations for an entire year.
       c. Consult with curator to develop plan for maintaining environmental standards.
  D. Controlling insects and rodents
    1. Keep all food and plants away from historic houses and restrict food consumption to an area away from artifacts.
    2. Keep storage and work areas uncluttered and free of dust and dirt. Clean weekly.
    3. Schedule regular checks of exhibit and storage areas and keep detailed records of any evidence of pests.
    4. Set out sticky glue boards in storage areas to see if there are any signs of pest activity. Pests can then be identified and appropriate measures taken to eliminate them.
    5. Work closely with park maintenance staff to ensure that rodent access sites to structures are blocked and rodent wastes removed from structures.
  E. Dust
    1. Dust particles are abrasive and are a primary cause of damage to fabrics, historic rugs, textiles, works of art, furniture etc.
    2. Recommendations for mitigating dust damage at TUIN:
       a. Large, oversize mat placed outside front and back house doors. Encourage all visitors and staff to remove dirt from shoes.
       b. Use of carpet runners through house. Visitors will be asked to stay on runners.
       c. Stanchions situated to guide visitors along the runner and away from unprotected floors.
       **d. Follow carefully all instructions for dusting in the Procedures section of The Housekeeping Notebook.**

  III. Installation Standards
    A. Barricades (Lexan shields, ropes, or railings) intended to keep people out of sensitive areas should be clearly visible and readily apparent to visitors.
    B. Installation barriers are needed.
       1. between dissimilar materials to prevent the transfer of potentially harmful products such as acids in wood, oils in leather, sulfur in wool, etc.;
       2. to prevent damage such as scratches and abrasions;
       3. to prevent sticking of painted or varnished surfaces over time;
       4. to allow for air circulation between objects.
    C. Exhibit Techniques
       1. Adequate support should be given to all objects on display.
       2. Pad folds of any folded textile with rolls of crumpled acid free unbuffered tissue paper or with muslin "snakes" filled with 100% polyester fiberfill.
       3. Books displayed vertically should never slant. Large books should be displayed horizontally.
    D. Installation Recommendations for TUIN sites.
       1. Place polyethylene fabric between metal objects and wood surfaces.
       2. Place polyethylene fabric between paper and wood surfaces.
       3. Place polyethylene fabric between leather and any other material.
       4. Place polyethylene fabric and / or foam sheets between any materials and painted or varnished surfaces.
       5. Place muslin liner between resting textiles and wood or upholstered surfaces (such as table clothes, runners, dresser scarves, etc.).
       6. Place thick polyethylene foam (1/4") between all heavy objects and wood or other resilient surfaces.
       7. Place thin polyethylene foam (1/8") between objects nestled together (such as stacks of dinner plates or water basin and pitcher).

IV. Handling Procedures for Artifacts
   A. Before moving an object
      1. Determine if it is necessary to move object.
      2. Evaluate the areas of strength and potential weakness in the structure. Examine for loose elements or evidence of damage such as cracks, breaks, tears, or old repairs. These will need to be fully supported.
      3. Know exactly where it will go and have the space cleared and prepared to receive it.
      4. Clear the path.
      5. Make sure everyone involved knows their role.
      6. Remove jewelry, prominent belt buckles or any other accessory, which may scratch or snag with lifting and moving objects.
      7. Have any necessary tools and equipment ready.
      8. If a ladder is needed, make sure it is the correct size for the job and that additional people are available for stabilization or handling of items or to assist person on ladder.
   B. General Guidelines
      1. Never smoke, eat, or drink when moving objects. (This includes chewing gum or using breath mints.)
      2. When lifting heavy objects, always have an adequate number of people.
      3. Wear hand coverings whenever possible. Otherwise, wash hands frequently.
         a. White cotton gloves for most objects.
         b. Latex or grip-type gloves for slick-surfaced objects.
         c. Latex for objects with a flaking or easily snagged surface.
      4. Use two hands.
         a. With small 3-dimensional objects – place one hand underneath the item and one underneath for support.
         b. With medium 3-dimensional objects – firmly hold the item with both hands around the heaviest part and move composite pieces, such as lids, separately.
      5. Never pick up an object at a stress point such as the spout or handle of a teapot.
      6. Move one object at a time and do not stack items.
      7. Do not lean objects against the wall – creates stress on object and may mar wall.
   C. Moving textiles
      1. Handle textiles as little as possible.
      2. Do not bend or allow to sag – causes stress on fibers.
      3. Use as many people as necessary to adequately support item.
   D. Moving furniture
      1. Tie down with cotton cording all loose parts such as drawers or leaves. Remove other loose sections such as marble or glass tops.
      2. Never push or pull furniture; always lift and carry even if relocating only a few inches.
      3. Do not lift by delicate parts such as legs, arms, edging, or ornaments. These are normally attached by glue.
      4. Lift from bottom and keep in upright position.
   E. Framed or two dimensional objects
      1. Never carry framed objects with one hand or under the arm.
      2. Never lift by top of frame or painting stretcher.
      3. Keep one hand on the bottom for support and the other on the side for even distribution of support.
      4. Always carry vertically.
F. If pieces become detached, either in the moving process or in the event of accidental breakage, do not attempt to repair. Save all pieces, no matter how small, for Museum Specialist and record the event in the Logbook section of **The Housekeeping Notebook.**



V. Cleaning – General Comments
A. Each type of object in a historic setting requires a specialized cleaning technique. These are specified in Procedures section of **The Housekeeping Notebook.**
B. All TUIN staff will familiarize themselves with the cleaning specifications and procedures.
C. All TUIN staff will fill out the records for any cleaning activities performed by them. Find these forms in the Logbook section of **The Housekeeping Notebook.**
D. Periodic inspection of the objects on display are necessary both to ensure their safety and to record their condition.
   1. General inspection will be performed daily before closing.
   2. Detailed inspection will be performed weekly.
   3. Forms are in the Logbook section of **The Housekeeping Notebook.**
   4. All TUIN staff will familiarize themselves with these procedures and forms.

VI. The TUIN staff is responsible for the following housekeeping activities:
A. Cleaning the interiors of all buildings except restrooms and office space.
B. Maintaining all housekeeping records.
C. Inspecting the grounds and trails for trash and cleaning up.
D. Emptying trash except for restrooms and office space.
E. Each individual is responsible for recording his/her volunteer hours or time conducting activities.
F. Preparing for summer visitation.

**VI.** References – much of the material in this section was taken from the following sources:
A. *Historic House Museums, A Practical Handbook for Their Care, Preservation, & Management,* Butcher-Younghans, 1993.
B. *Guidelines For Furnishings Maintenance and Protection:* William Howard Taft National Historic Site, Sullivan, 1991.

# HOUSEKEEPING PROCEDURES
## Museum and Historic Structures
### TUSKEGEE INSTITUTE NATIONAL HISTORIC SITE

I. General Comments

The cleaning techniques in a historic house will depend on the object cleaned, what it is made of, how it was made, and its condition.

    A. Follow directions closely for each individual object to be cleaned.

    B. If you do not know how to properly clean the item, *do nothing at all* and consult with a curator.

    C. Notify curator immediately if you notice any damage or have problems cleaning an object.

    D. If an object must be moved for cleaning purposes, follow instructions provided in Policies section of **The Housekeeping Notebook.**

    E. Record all housekeeping activities on the appropriate form in the Logbook section of **The Housekeeping Notebook.**

    F. Record all housekeeping activities on the appropriate form in the Logbook section of **The Housekeeping Notebook.**

II. Dusting

    A. General Comments

        1. Dust cloths, as well as dust mops, should not be treated with oils or sprays. Although a treated cloth tends to pick up more dust easily, it leaves an emulsion on the surface that will attract dust.

        2. Dampen a cloth with a small amount of water.

            a. Use spray bottle filled with distilled water, set on fine mist.

            b. Spray only once lightly, outside. Do not dampen cloth inside as the mist will fall on furniture and floors.

        3. Use soft, clean white cloths (suggested materials are diapers, t-shirts, and flannel cloth)

            a. Reason for white cloth is so dirt, pests and loosened pieces of objects are visible.

            b. Wash many times before use to remove sizing.

            c. Wash frequently with mild soap and rinse several times to insure no soap residue remains.

            d. Do not use chlorine bleach as chlorine is very caustic and the residue left in the cloth may damage sensitive materials.

            e. The same use and washing instructions apply to white gloves.

    B. Dusting exposed surfaces

        1. Wear white gloves when picking up objects for dusting the underlying surface.

        2. Use cloth large enough to cover a substantial surface, but small enough to be easily managed.

        3. When a cloth's surface is soiled, fold cloth to a clean side and continue dusting until all sides are soiled.

        4. Do not rub hard as grit picked up by cloth can cause damage by abraiding surfaces.

        5. If a large amount of dust is present, use small soft brush attachment of canister vacuum cleaner to remove majority before dusting.

        6. Stable vertical surfaces such as lamp bases, chair legs and backs, cupboards, etc. may be dusted using same method as for horizontal surfaces. A small soft-bristle brush may be used to clean when it is difficult to get cloth onto surface.

        7. Unstable vertical surfaces such as gilded picture and mirror frames, historic wall paper or decorative plasterwork should not be cleaned except under the direction of a Museum Curator.

C. Hand dusting with a small bristle brush
   1. Certain objects require use of a soft-bristle brush in their cleaning.
   2. Delicate porcelain objects, china, glass, inlaid furniture, paintings and books will require such care.
   3. Be sure brush is clean before use.
   4. Paintings should be dusted with horizontal strokes beginning at the top of the painting and working downward.
   5. Porcelain and glass objects
      a. Dusting these can be precarious.
      b. Use latex or grip gloves when handling to avoid slipping.
      c. Take precautions to stabilize the pieces or hold it with one hand, brushing the dust off with the other.
      d. If unsure how to proceed, do nothing and consult with a Museum Curator.
   6. Books
      a. Do not touch book covers with bare hands, as the hand's oil will discolor the surface.
      b. Inspect for disintegrating surfaces before dusting and avoid these areas.
   7. Inlaid or damaged furniture
      a. Dust carefully and check floor for any fragments which may have come loose.
      b. Loose pieces should be saved, recorded in the Logbook section of **The Housekeeping Notebook**, and reported to the Museum Curator immediately.

III. Cleaning glass and plexiglass
  A. Plexiglass or lexan
   1. Should be cleaned with an antistatic solution specifically made for the material.
   2. Apply solution to soft, clean cloth and gently rub using circular motion on an area, which can be comfortably managed.
   3. Wipe immediately with another soft clean cloth using the same motion until area is without smears.
   4. Do not clean with any other solution such as window cleaners as they contain ammonia, which will cause plexiglass to become cloudy.
   5. Plexiglass scratches very easily and care should be taken when cleaning.
  B. Glass Cleaning
   1. Untreated windows – can be cleaned with an ammonia solution or commercial cleaner which does not contain silicone or detergent and wipe either with paper towels or lint-free cloths.
      a. Prepare ammonia solution by mixing warm water in large plastic bucket with a small amount of ammonia (work with solution to find desired proportions depending on degree of grime).
      b. Do not use bottle sprayer on anything but outside windows and then be careful not to drip on sills and ledges.
        (1) Instead, firmly dampen cloth and apply to inside windows and objects with circular motion. Wipe dry with soft lint-free cloth.
        (2) On large surfaces, begin at top and work down.
   2. Windows with applied UV film
   a. Do not polish and avoid excess rubbing.
   b. Use only distilled water and a clean, soft cloth to clean.
   c. Follow manufacturer's suggestions for further cleaning.
   3. Mirrors and picture glass – clean as recommended for windows, taking care not to let any moisture beneath the frames.
   4. Washing small objects
      a. Fill two plastic buckets with warm water. Add mild soap to one to create washing solution.
      b. Using bare hands, wash item gently in soapy solution and then rinse thoroughly in water.
      c. Dry carefully with soft, clean cloth over padded surface to protect object if it should slip from hands.
      d. Wear gloves when replacing item either in storage or on display.

      e.  Change rinse water often if washing multiple items.

      f.  For heavily soiled items, add small amount of ammonia to washing solution.

IV. Cleaning floors
- A.  Porches
  1. Porches should be swept daily.
  2. Use a stiff-bristle broom and always sweep away from open doors or windows.
  3. Doormat should be shaken each time porch is swept.
  4. Sweep stairs after porch and in descending order.
  5. Make notation in Logbook section of **The Housekeeping Notebook** if stair or porch are in need of repair.
- B.  Rough wood floors
  1. Sweep with stiff-bristle broom daily.
  2. Periodically, vacuum with floor attachment of canister vacuum.
  3. When heavily soiled or when large particles are present, sweep before vacuuming.
- C.  Smooth wood floors
  1. Vacuum with floor attachment of canister vacuum.
  2. Dry mop after vacuuming so that large particles do not mar the surface.
  3. Damp mop using string or cotton mop
     - a. Wet mop only after vacuuming and dry mopping.
     - c. If floor is not heavily soiled, wet mop with clear water and wring mop until only damp.
     - d. Use back and forth motion to clean floor, making sure mop does not strike baseboards.
     - e. Areas that are difficult to reach such as corners and areas close to walls, clean by hand with damp clothe.
     - f. If floor is heavily soiled, use same technique as cleaning linoleum floors after consulting with curator for specific instructions.
- D.  Linoleum floors
  1. Vacuum with floor of canister vacuum and then dry mop.
  2. If soiled, wet mop floor.
     - a. Technique is similar to damp mopping, except less pressure is used when wringing out the mop.
     - b. Ideally, use three buckets:
        - (1) A bucket with warm water with a non-ionic soap.
        - (2) An empty bucket with a wringer.
        - (3) A bucket with clean warm water.
     - c. Dip clean mop into soapy water and gently squeeze out excess water. Mop a small area of floor and place mop in wringer and squeeze out dirty water. Go over area again and squeeze out excess and rinse area.

V. Vacuuming
- A.  General comments
  1. Vacuuming must be performed with special care in a historic setting.
  2. Vacuuming is the safest way to remove dust and dirt from historic surfaces with a dust cloth or dry mop.
  3. Use a vacuum that is easy to manipulate and will not damage historic furniture or walls.
  4. Take precautions to ensure that vacuum hoses do not scratch furniture or knock over objects. It may be necessary to pad hoses for protection of objects.
  5. To protect walls and baseboards, use the hose with small brush attachment to clean corners.
- B.  Vacuuming historic textiles
  1. Periodic cleaning will remove dust and grit that abrades fibers and may seriously damage textiles.
  2. A delicate balance must be achieved to vacuum then often enough to keep them clean, but not so often that they are damaged by over cleaning.
  3. Always be certain that the historic textile is in stable condition before attempting cleaning.
  4. A small, slow-action vacuum used with monofilament screen is best for removing dirt (At no time should a large, powerful machine be used on historic fabrics.)

    a. Lay screening on top of textile and hold down while lightly vacuuming across the screening. This will prevent threads or applique from being pulled from the object.
    b. Prepare screen by cutting to desired size and sewing cotton strips around the edges to give it support and cover loose filaments, which may snag textile.
    c. Several different sizes of screening are available. Chose the size which best suits the area you can vacuum without changing position.

5. All historic fabrics such as upholstery, rugs, draperies, decorative throws, table clothes on exhibit, etc. should be vacuumed using this method.
6. Non-historic fabrics may be shaken to remove dust or vacuumed without screening. They may also be washed when soiled.

VI. Cleaning metal objects
  A. Metal objects may be dusted with soft, clean cloth or soft clean brush if simply dusty and not heavily soiled or tarnished.
  B. If soiled, wash with the permission of a Museum Curator.
    1. Prepare two small plastic tubs – one with distilled water for rinsing and one with mild, warm, washing solution made using non-ionic soap.
    2. Use base hands to wash and rinse objects and put on clean cloth to drain. Put on clean, white gloves for handling object when drying and preparing for storage or display.
  C. Waxing
    1. Metal objects can be waxed after cleaning or polishing. This supplies a barrier to the pollutants and humidity in the air, which causes soiling and tarnishing.
    2. Consult with Museum Curator before waxing metal objects.
    3. Wear white gloves when handling metal objects.
    4. Being sure object is very clean, cover everything and apply a thin layer of microcrystalline wax. It may be necessary to use a cotton swab in small areas.
    5. Polish with a soft, clean cloth to remove excess wax.
  D. Polishing
    1. Should only be done as needed. Over polishing will strip metal layer by layer, particularly silver. Also, if polish is not removed completely this can harm an object.



To insure the protection of the museum collection it is imperative that a record be kept of all housckeeping activity so that a proactive approach is accomplished instead of a reactive approach.

| Daily maintenance and closing activities at Tuskegee Institute National Historic Site (Initial the box next to activity on appropriate day when completed) Week of: | | | | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| Daily Cleaning Activities | Date | Sun | Mon | Tues | Wed | Thurs | Fri | Sat |
| CM-Dust exhibit area in V.C. | | | | | | | | |
| CM-Diaper clean exhibit walls | | | | | | | | |
| CM-Vacuum exhibit area | | | | | | | | |
| CM-Clean lexan cases and barrier | | | | | | | | |
| CM-Inspect IPM traps | | | | | | | | |
| CM-Sweep Walkway | | | | | | | | |
| CM-Empty Humidifiers (4) | | | | | | | | |
| Oak's-Feather dust walls/ceilings | | | | | | | | |
| Oak's-Clean lexan cases | | | | | | | | |
| Oak's-Wash windows | | | | | | | | |
| Oak's-Vacuum exhibit area | | | | | | | | |
| Oak's-Inspect IPM traps | | | | | | | | |
| Oak's-Clean outdoor exhibits | | | | | | | | |
| Oak's-Sweep walkway | | | | | | | | |
| Oak's-Empty Humidifiers (3) | | | | | | | | |
| Storage-Dust work space | | | | | | | | |
| Storage-Empty trash | | | | | | | | |
| Storage-Sweep floors | | | | | | | | |
| Storage-Mop floors as needed | | | | | | | | |

Note: When cleaning at the Carver Museum, the Oak's and Museum Storage make sure you do a complete walk around of each facility. Check windows, door handles, ceiling (leak), wood furniture (saw dust piles), etc... It is imperative that you have a trained eye and become accustomed to noticing differences. Notify the Museum Specialist as quickly as possible if you notice something unusual.

| Monthly maintenance at Tuskegee Institute National Historic Site | | | | | | | | |
| (Initial the box next to activity on appropriate day when completed) | | | | | | | | |
| Week of: | | | | | | | | |
| **Cleaning Activities** | **Date** | **Sun** | **Mon** | **Tues** | **Wed** | **Thurs** | **Fri** | **Sat** |
|---|---|---|---|---|---|---|---|---|
| CM-Environmental Monitoring | | | | | | | | |
| Oak's-Environmental Monitoring | | | | | | | | |
| Storage-Environmental Monitoring | | | | | | | | |

| Yearly maintenance at Tuskegee Institute National Historic Site | | | | | | | | |
| (Initial the box next to activity on appropriate day when completed) | | | | | | | | |
| Week of: | | | | | | | | |
| **Spring Cleaning Activities** | **Date** | **Sun** | **Mon** | **Tues** | **Wed** | **Thurs** | **Fri** | **Sat** |
|---|---|---|---|---|---|---|---|---|
| CM-Thoroughly dust exhibit space | | | | | | | | |
| CM-Vacuum all exhibit areas | | | | | | | | |
| CM-Check wet specimens and replace liquids as needed | | | | | | | | |
| CM-Wash windows and lexan panels | | | | | | | | |
| CM-Conduct Inventory | | | | | | | | |
| Oak's-Remove and wash curtains | | | | | | | | |
| Oak's-wash interior and exterior windows | | | | | | | | |
| Oak's-thoroughly dust and vacuum all items | | | | | | | | |
| Oak's-Conduct Inventory | | | | | | | | |
| Storage-Thoroughly dust and vacuum work areas | | | | | | | | |
| Storage-Wash windows | | | | | | | | |
| Storage-conduct inventory | | | | | | | | |

## BUILDING CODE LIST

**HS01 – CARVER MUSEUM**

**HS02 – THE OAK'S**

**HS03 – CURATORIAL BUILDING**

## TUSKEGEE INSTITUTE NATIONAL HISTORIC SITE
## LIGHT MEASUREMENT RECORD

| Location: The Oak's | Footcandles (fc) Maximum | Footcandles (fc) Actual | MicroW/Lumen (UV) Maximum | MicroW/Lumen (UV) Actual |
|---|---|---|---|---|
| RM #101 | 20 | | 75 | |
| RM #102 | 20 | | 75 | |
| RM #102 | 20 | | 75 | |
| RM #103 | 5 | | 75 | |
| RM #104 | 20 | | 75 | |
| RM #105 | 5 | | 75 | |
| RM #106 | 20 | | 75 | |
| RM #107 | 20 | | 75 | |
| RM #107 | 20 | | 75 | |
| RM #108 | 5 | | 75 | |
| RM #109 | 20 | | 75 | |
| RM #110 | 20 | | 75 | |
| RM #111 | 20 | | 75 | |
| RM #112 | 20 | | 75 | |
| RM#113 | 5 | | 75 | |
| RM #215 | 5 | | 75 | |

# Searching for a specific item or supplier



# Supplies and Supplies



## HOUSEKEEPING SUPPLIES AND SUPPLIERS

| Materials | Suppliers |
|---|---|
| Ethyl alcohol (ethanol, grain alcohol, denatured alcohol) | Local Drug Store |
| Health and safety supplies (disposable gloves, masks, etc.) | Lab Safety Supply<br>PO Box 1368<br>Jamesville, WI 53547-1368<br>(800)356-0783<br><br>Industrial Safety and Security<br>1390 Nevbretch Road<br>Lima, Ohio 45801<br>(800)537-9721 |
| Cotton gloves, acid-free storage boxes, papers, mounting materials, UV filtering sleeves, etc.<br><br>*(Call for free catalogs)* | University Products, Inc.<br>PO Box 101<br>South Canal Street<br>Holyoke, MA 01041<br>(800)628-1912<br><br>The Hollinger Corporation<br>3810 S. 4-Mile Run Drive<br>PO Box 6185<br>Arlington, Virginia 22206<br>(703)671-6600<br><br>Conservation Materials, Ltd.<br>1275 Kleppe Lane, #10<br>Sparks, Nevada 89431<br>(702)331-0582<br><br>Gaylord Bros.<br>PO Box 4901<br>Syracuse, New York 13221-4901<br>(800)448-6160<br><br>Light Impressions<br>439 Monroe Avenue<br>PO Box 940<br>Rochester, New York 14603-0940<br>(800)828-6216 |
| Hard plastic (polystyrene) boxes | Gary Plastic Packaging Corporation<br>3629 W. MacArthur Boulevard<br>Suite 214<br>Santa Ana, California 92704-6894<br>(800)222-GARY |
| Polyethelyne foam (Ethafoam for example. Avoid any with fire retardent, antistatic or other additives) | Shippers Supply-Custom Pack<br>1660 C N. 4th Street<br>Laramie, Wyoming 82070<br>(307)742-0459 |
| UV Filtering sleeves and films | Verilux Corporation<br>626 York Street<br>Vallejo, California 94590<br>(800)786-6850<br><br>Solar Screen<br>53-11 105th Street<br>Corona, New York 11368<br>(718)592-8223<br><br>Madico, Incorporated<br>64 Industrial Parkway<br>Woburn, MA 01888<br>(800)225-1926 |
| Moisture curing polyurethane sealer (Sherwin Williams Rexthane Heavy Duty Polyurethane varnish, for example) | Local Paint Store |



**U.S. Department of Labor**
·cupational Safety and Health Administration

Company Name: Department of the Interior-National Park Service
Inspection #: 310772330

## NOTICE OF CORRECTIVE ACTION

CORRECTIVE ACTION TAKEN FOR EACH STANDARD VIOLATED SHOULD BE SUBMITTED
TO THIS OFFICE ON OR BEFORE THE DATE BY WHICH VIOLATION(S)
MUST BE ABATED AS INDICATED IN THE "CITATION AND NOTIFICATION OF PENALTY".

THIS INFORMATION MAY BE WRITTEN BELOW, ON THE REVERSE SIDE OR ON ATTACHED
PAGES IF NECESSARY.

| CITATION NO. | ITEM NO. | CORRECTIVE ACTION TAKEN | DATE COMPLETED |
|---|---|---|---|
| 1 | 5b | A training program was developed and implemented to provide proper under-standing and use of the Material Safety Data Sheet. This comprehensive program consisted of a ninety minute lecture incorporating power-point, visual-aids, discussion, and relevance to each work site. Following each lecture, a written test was administered to each employee. Employees were also required to acknowledge the training and were provided opportunities to inquire about information that was unclear. | 19 July 2007 ongoing |

**NAME OF COMPANY OFFICIAL**          **DATE: August 6, 2007**
Shirley T. Streeter
**TITLE**
**Acting Superintendent**

NOTE: **29 USC 666.(g):** Whoever knowingly makes any false statements, representation or certification in any application,
·ecord, plan or other documents filed or required to be maintained pursuant to the Act shall, upon conviction, be punished by a
fine of not more than $10,000, or by imprisonment for not more than six months or both.
**POSTING:** A copy of the completed Corrective Action Worksheet should be posted for employee review.

# OSHA MANDATOK TRAINING
## Conducted by Law Enforcement Officer ▮▮▮▮▮
### Thursday, July 19, 2007
### TN5680H047

| OHSA TRAINING (OCCUPATIONAL SAFETY & HEALTH ADMINISTRATION) | | |
|---|---|---|
| | **Completion Date** | |
| **TUSKEGEE INSTITUTE NHS** | **Date Completed** | **Signature** |
| | | |
| | | |
| | 7/31/07 | |
| | 7/19/2007 | DOR |
| | | |
| | 7/19/2007 | |
| | 7/19/07 | |
| | 7-19-07 | |
| Light, Catherine | | |
| | 7/31/07 | |
| Streeter, Shirley | 7/31/2007 | *Shirley T. Street* |
| | | |
| | 7/19/07 | |
| | 7/19/07 | |
| | 7/31/07 | |

# OSHA MANDATORY TRAINING
## Conducted by Law Enforcement Officer Kevin Colley
### Thursday, July 19, 2007
#### TN5680H047

| TUSKEGEE AIRMEN NHS | Date Completed | Signature |
|---|---|---|
| 7C | 7/19/07 | 7C |
| | 19 JULY 07 | |
| 7C | 7/19/07 | 7C |

| SELMA TO MONTGOMERY NHT | Date Completed | Signature |
|---|---|---|
| 7C | 8/1/07 | 7C |
| | 8/1/07 | |
| | 8-1-07 | |
| | 8/1/07 | |

8/1/07       7C

15

--------------- page(s)

Were withheld

EXEMPTION 5



**U.S. Department of Labor**
Occupational Safety and Health Administration

Company Name: **Department of the Interior-National Park Service**
Inspection #: **310772330**

## NOTICE OF CORRECTIVE ACTION

CORRECTIVE ACTION TAKEN FOR EACH STANDARD VIOLATED SHOULD BE SUBMITTED
TO THIS OFFICE ON OR BEFORE THE DATE BY WHICH VIOLATION(S)
MUST BE ABATED AS INDICATED IN THE "CITATION AND NOTIFICATION OF PENALTY".

THIS INFORMATION MAY BE WRITTEN BELOW, ON THE REVERSE SIDE OR ON ATTACHED
PAGES IF NECESSARY.

| **CITATION NO.** | **ITEM NO.** | **CORRECTIVE ACTION TAKEN** | **DATE COMPLETED** |
|---|---|---|---|
| Citation 1 | 6 | MSDS have been provided and properly placed in Curatorial Storage area. | July 26, 2007 |

**NAME OF COMPANY OFFICIAL**                    **DATE: August 3, 2007**
**Shirley T. Streeter** *(Shirley T. Streeter)*
**(Acting Superintendent**
**TITLE**

NOTE: **29 USC 666.(g):** Whoever knowingly makes any false statements, representation or certification in any application, record, plan or other documents filed or required to be maintained pursuant to the Act shall, upon conviction, be punished by a fine of not more than $10,000, or by imprisonment for not more than six months or both.
POSTING: A copy of the completed Corrective Action Worksheet should be posted for employee review.

---------------- page(s)

Were withheld

EXEMPTION 5



**US Department of Labor**   **Occupational Safety and Health Administration**
1141 Montlimar Drive, Suite 1006
Mobile, Alabama 36609
(251) 441-6131   FAX (251) 441-6396

July 12, 2007



Re: Tuskegee Institute National Historic Site

Dear ▓▓▓▓▓▓▓▓

This letter acknowledges your request for release of information under the Freedom of Information Act (FOIA).

The information you have requested is still under investigation or has not been closed. At this time the information you requested cannot be released. It is this departments policy that nothing from the case file be disclosed prior to issuing the Citation and Notification of Penalty or until the file is closed. This policy is also supported by the Freedom of Information Act, specifically 5 USC 522(b)(7)(A), which exempts from disclosure, information that would interfere with enforcement proceedings.

You may check with our office from time to time to determine the status of the file and to invoke your request when it has been determined that the file has been closed. If you have Internet capabilities you can conduct an establishment search for information that may be of immediate assistance. The address is www.osha.gov.

FOIA requestors may be charged for the information requested. If you are not willing to incur such charges, please notify this office.

Sincerely,

Ken Nishiyama-Atha
Area Director





## FOIA NOTICE

**Exemptions:** Portions of requested records may be exempt from disclosure pursuant to 5 U.S.C. 552. Department of Labor regulations provide that when a request for records has been denied in whole or in part, the requester may appeal the denial of the request to the Solicitor of Labor within 90 days of the denial. The appeal must be in writing and must state the grounds for appeal, including any supporting statements or arguments. Appeals should be addressed to the Solicitor of Labor, Department of Labor, 200 Constitution Ave., N. W., Washington D.C. 20210. The envelope and the appeal should be clearly labeled: "FOIA Appeal."

You need to be aware that you may incur monetary charges for reproduction of the case file you have requested. The following is a list of charges that may be assessed:

**Copies:**
Commercial requesters – $0.15 per page
Media, Educational, and all other requesters – First 100 pages free; $0.15 per page thereafter

**Search and Review time:**
Commercial requesters – $5.00 to $10.00 per quarter hours
Educational requesters/Media – No Charge
All other requesters – First two hours free, $2.50 to $5.00 per quarter hour thereafter

**Additional Costs:** (Applies to all requestors)
Videotapes, Computer disks, or CD's – Minimum fee of $10.00 per tape, plus postage; if requester provides videotape, $10.00 per hour copying fee

Computer printouts – $12.00 to $35.00

Photo Processing – This service is performed by contract and the cost is dependant on the number and type of photographs. You will be notified of the cost once we have processed the film.



July 8, 2007



JUL 2007
Received
USDOL-OSHA
MOBILE AREA OFFICE

OSHA
1141 Montlimar Drive, Suite 1006
Mobile, Alabama 36609

To Whom It May Concern:

I am writing this letter to request a copy of the complete investigative report conducted by ███████████████pertaining to allegations of Occupational Exposure to lead and arsenic at Tuskegee Institute National Historic Site during the month of April, 2007.

My mailing address is: ████████████
████████████████

If further information is needed, please feel free to contact me at: ████████████ or by email at: ██████████████. Thank you for your time and assistance in this matter.

Respectfully yours,

████████████

████████████




**U.S. Department of Labor**   Occupational Safety and Health Administration
Mobile Area OSHA Office
1141 Montlimar Dr., Suite 1006
Mobile, AL 36609
Ph. (251) 441-6131 Fax (251) 441-6396

July 5, 2007

Department of Interior-National Historic Site
Tuskegee Institute-1600 Boy Scout Circle
Tuskegee, Alabama 36088
Attn: Ms. Catherine Light - Superintendent

Dear Ms. Light,

Attached are the sample results for the monitoring conducted at Department of Interior-National Historic Site, Tuskegee Institute on May 3 and May 7, 2007. Please share these results with the employees currently working in the job positions that were sampled. You may contact me at (251) 441-6131 if you have any questions regarding these findings. In accordance with 29CFR1910.1020 you should retain/maintain these records as employee exposure records.

Yours Truly,



**U.S. DEPARTMENT OF LABOR**
**OCCUPATIONAL SAFETY AND HEALTH ADMINISTRATION**
**1141 Montlimar Dr., SUITE 1006**
**MOBILE, AL 36609**
**PHONE: (251) 441- 6131    FAX: (251) 441-6396**



Department of Interior
National Historic Site
Tuskegee Institute-1600 Boy Scout Circle
Tuskegee, Alabama

The table below shows the results of our analyses for the sampling conducted by OSHA at your facility on (Date):

| Date | Job Title | Time Sampled | Agent sampled for: | Time Weighted Average | OSHA Permissible Exposure Limit |
|------|-----------|--------------|--------------------|-----------------------|--------------------------------|
| 05.03.07 | Park Guide | Wipe Sample/GW Carver Museum | Arsenic/Lead | 19.9/32.3 micrograms | Not Applicable (NA) |
| 05/03/07 | Park Guide | Wipe Sample Museum Storage #5 | Arsenic/Lead | Non-Detectable (N/D) | (NA) |
| 05/07/07 | Park Guide | 417 | Arsenic/Lead | N/D | 0.01/0.05 Milligrams/cubic meter |
| 05/07/07 | Park Guide | Area Sample Museum Storage Holding | Arsenic/Lead | N/D | 0.01/0.05 Milligrams/ cubic meter |
| 05/07/07 | Park Guide | Area Sample Muséum Storage Vault | Arsenic/Lead | N/D | 0.01/0.05 Milligrams/cube meter |
| | | | | | |

# LISA SAMPLE STATUS REPORT

**Inspection Number:** 310772330           **Sampling Number:** 434859906

| REPORTING_ID | CSHO_NAME | COMPANY_NAME |
| --- | --- | --- |
| 418600 |  | DEPARTMENT OF INTERIOR-NATIONAL HISTORIC SITE |

**U.S. Department of Labor**    Occupational Safety and Health Administration
Mobile Area OSHA Office
1141 Montlimar Dr. Suite 1006
Mobile, AL 36609





Dear ▓▓▓▓▓▓

In response to your report of alleged hazardous working conditions and/or violations of 29 CFR Part 1960 citable program elements at Department of Interior-National Historic Site, Tuskegee Institute-1600 Boy Scout Circle, Tuskegee, AL 36088, the Occupational Safety and Health Administration (OSHA) has conducted a workplace inspection. The inspection was completed on 05/07/07

We found that employees were not provided with adequate personal protective equipment for the level of exposure this did not violate OSHA standards and/or citable program elements

We also found that the employer failed to conduct employee exposure monitoring for lead and arsenic, failed to provide employees with material safety data sheets, and adequate training on health hazards of working with lead and arsenic. This failure violated OSHA standards and /or citable program elements. Therefore, a Notice of Unsafe and Unhealthful Working Conditions (Notice) was sent to your establishment official stating that violations identified by OSHA must be corrected. The Notice (enclosed) reflects the dates by which the violations must be corrected. The contents of the Notice must be posted near the violations(s) for three working days or until the violation(s) are abated, whichever is later

If you do not agree that the conditions(s) your reported have been satisfactorily investigated or cited, please contact us within 10 calendar days and request a review of the complaint.

Thank you for your concern about workplace safety and health

Sincerely,

Ken Nishiyama-Atha
Area Director

Enclosure

**U.S. Department of Labor**
Occupational Safety and Health Administration
1141 Montlimar Drive, Suite 1006

Mobile, AL 36609
Phone: (251)441-6131  FAX: (251)441-6396



# Notice of Unsafe or Unhealthful Working Conditions

| | |
|---|---|
| | **Inspection Number:** 310772330 |
| **To:** | **Inspection Date(s):** 05/04/2007-05/07/2007 |
| Department of Interior-National Historic Site | **Issuance Date:** 07/20/2007 |
| Tuskegee Institute-1600 Boy Scout Circle | |
| Tuskegee, AL 36088 | *The violation(s) described in this Notice is (are) alleged to have occurred on or about the day(s) the inspection was made unless otherwise indicated within the description given below.* |
| **Inspection Site:** | |
| Tuskegee Institute-1600 Boy Scout Circle | |
| Tuskegee, AL   36088 | |

This Notice of Unsafe or Unhealthful Working Conditions (Notice) describes violations of the Occupational Safety and Health Act of 1970, the Executive Order 12196, and 29 CFR 1960, Basic Program Elements for Federal Employee Occupational Safety and Health Programs and Related Matters. You must abate the violations referred to in this Notice by the dates listed unless within 15 working days (excluding weekends and Federal holidays) from your receipt of this Notice you request an Informal Conference with the U.S. Department of Labor Area Office at the address shown above.

**Posting** - The law requires that a copy of this Notice be posted immediately in a prominent place at or near the location of the violation(s) cited herein, or, if it is not practicable because of the nature of the employer's operations, where it will be readily observable by all affected employees. This Notice must remain posted until the violation(s) cited herein has (have) been abated, or for 3 working days (excluding weekends and Federal holidays), whichever is longer.

**Notification of Corrective Action** - You should notify the U.S. Department of Labor Area Office promptly by letter that you have taken appropriate corrective action within the time frame set forth on this Notice. Please inform the Area Office in writing of the abatement steps you have taken and of their dates, together with adequate supporting documentation, e.g., drawings or photographs of corrected conditions, purchase/work orders related to abatement actions, air sampling results, etc.

**Employer Discrimination Unlawful** - The law prohibits discrimination by any person against an employee for filing a complaint or for exercising any rights under this Act. An employee who believes that he/she has been discriminated against may file a complaint with the U.S. Department of Labor Area Office at the address shown above.

**Informal Conference** - An informal conference is not required. However, if you wish to have such a conference you may request one with the Area Director within 15 working days after receipt of this Notice. As soon as the time, date, and place of the informal conference have been determined please complete the enclosed "Notice to Employees" and post it where the Notice is posted. During such an informal conference you may present any evidence or views which you believe would support an adjustment to the Notice. In addition, bring to the conference any and all supporting documentation of existing conditions as well as any abatement steps taken thus far.

**Notification of Corrective Action** - For <u>each</u> violation which you do not contest, you are required by 29 CFR 1903.19 to submit an Abatement Certification to the Area Director of the OSHA office issuing the citation and identified above. The certification **must** be sent by you within **10 calendar days** of the abatement date indicated on the citation. For **Willful** and **Repeat** violations, documents (examples: photos, copies of receipts, training records, etc.) demonstrating that abatement is complete must accompany the certification. Where the citation is classified as **Serious and the citations states that abatement documentation is required**, documents such as those described above are required to be submitted along with the abatement certificate. If the citation indicates that the violation was corrected during the inspection, no abatement certification is required for that item.

**All abatement verification documents must contain the following information: 1)** Your name and address; **2)** the inspection number (found on the front page); **3)** the citation and citation item number(s) to which the submission relates; **4)** a statement that the information is accurate; **5)** the signature of the employer or employer's authorized representative; **6)** the date the hazard was corrected; **7)** a brief statement of how the hazard was corrected; and **8)** a statement that affected employees and their representatives have been informed of the abatement.

The law also requires a copy of all abatement verification documents, required by 29 CFR 1903.19 to be sent to OSHA, also be posted at the location where the violation appeared and the corrective action took place.

**Inspection Activity Data** - You should be aware that OSHA publishes information on its inspection and citation activity on the Internet under the provisions of the Electronic Freedom of Information Act. The information related to your inspection will be available 30 calendar days after the Citation Issuance Date. You are encouraged to review the information concerning your establishment at WWW.OSHA.GOV. If you have any dispute with the accuracy of the information displayed, please contact this office.



**U.S. Department of Labor**
Occupational Safety and Health Administration

Company Name: Department of Interior-National Historic Site
Inspection #: 310772330

## NOTICE OF CORRECTIVE ACTION

CORRECTIVE ACTION TAKEN FOR EACH STANDARD VIOLATED SHOULD BE
SUBMITTED TO THIS OFFICE ON OR BEFORE THE DATE BY WHICH VIOLATION(S)
MUST BE ABATED AS INDICATED IN THE "CITATION AND NOTIFICATION OF
PENALTY".

THIS INFORMATION MAY BE WRITTEN BELOW, ON THE REVERSE SIDE OR ON
ATTACHED PAGES IF NECESSARY.

| CITATION NO. | ITEM NO. | CORRECTIVE ACTION TAKEN | DATE COMPLETED |
|---|---|---|---|
| | | | |

NAME OF COMPANY OFFICIAL                    DATE

TITLE

**NOTE: 29 USC 666.(g):** Whoever knowingly makes any false statements, representation or certification in any application, record, plan or other documents filed or required to be maintained pursuant to the Act shall, upon conviction, be punished by a fine of not more that $10,000, or by imprisonment for not more than six months or both.
**POSTING:** A copy of the completed Corrective Action Worksheet should be posted for employee review.

ABATEMENT CERTIFICATION

Ken Nishiyama-Atha, Area Director
U.S. Department of Labor - OSHA
1141 Montlimar Drive, Suite 1006

Mobile, AL   36609
Phone:  (251)441-6131

Department of Interior-National Historic Site
Tuskegee Institute-1600 Boy Scout Circle
Tuskegee, AL   36088

The hazard referenced in Inspection Number _____ for the violation identified as
Citation _____ and Item _____ was corrected on _____
by _____.

The hazard referenced in Inspection Number _____ for the violation identified as
Citation _____ and Item _____ was corrected on _____
by _____.

The hazard referenced in Inspection Number _____ for the violation identified as
Citation _____ and Item _____ was corrected on _____
by _____.

The hazard referenced in Inspection Number _____ for the violation identified as
Citation _____ and Item _____ was corrected on _____
by _____.

The hazard referenced in Inspection Number _____ for the violation identified as
Citation _____ and Item _____ was corrected on _____
by _____.

I attest that the information contained in this document is accurate and that the affected employees and their representatives have been
informed of the abatement activities described in this certification.

_____
Signature

_____
Typed or Printed Name

**U.S. Department of Labor**
Occupational Safety and Health Administration



# NOTICE TO EMPLOYEES

An informal conference has been scheduled with the Occupational Safety and Health Administration (OSHA) to discuss the Notice of Unsafe or Unhealthful Working Conditions (Notice) issued on 07/20/2007. The conference will be held at the OSHA office located at 1141 Montlimar Drive, Suite 1006, , Mobile, AL, 36609 on _____ at _____.

Employees and/or representatives of employees have a right to attend an informal conference.



**U.S. Department of Labor**
Occupational Safety and Health Administration

Inspection Number:  310772330
Inspection Dates: 05/04/2007 - 05/07/2007
Issuance Date:       07/20/2007

Notice of Unsafe or Unhealthful Working Conditions

**Company Name:**  Department of Interior-National Historic Site
**Inspection Site:**  Tuskegee Institute-1600 Boy Scout Circle, Tuskegee, AL  36088

---

Citation 1 Item 1 Type of Violation:  **Serious**

29 CFR 1910.141(b)(1)(i):  Potable water was not provided in all places of employment, for drinking, washing of the person, cooking, washing of foods, washing of cooking or eating utensils, washing of food preparation or processing premises, and personal service rooms:

   (a)     Maintenance Shed: Employees were not provided drinking water when mowing, trimming, cutting, cultivating, maintaining equipment and grounds.

   Date By Which Violation Must be Abated:                    08/02/2007

Citation 1 Item 2 Type of Violation:  **Serious**

29 CFR 1910.141(d)(2)(iii):  Lavatories were not provided with hand soap or similar cleansing agent:

   (a)     Basement of G.W. Carver Museum: Employer did not provide hand soap for employees performing maintenance of museum displays and keeping the museum clean.

   Date By Which Violation Must be Abated:                    08/01/2007

Citation 1 Item 3 Type of Violation:  **Serious**

29 CFR 1910.1018(e)(2):  Initial monitoring was not performed for each workplace, or work operation covered by this section to accurately determine the airborne concentration of inorganic arsenic to which employees may be exposed:

   (a)     G.W.Carver Museum: Employer failed to conduct exposure measurements to ascertain the levels of arsenic for employees arranging, disassembling, rearranging, shipping, and receiving taxidermed artifacts.

   Date By Which Violation Must be Abated:                    08/08/2007

---

See pages 1 through 5 of this Notice for information on employer and employee rights and responsibilities.

**U.S. Department of Labor**
Occupational Safety and Health Administration

Inspection Number: 310772330
Inspection Dates: 05/04/2007 - 05/07/2007
Issuance Date:      07/20/2007



Notice of Unsafe or Unhealthful Working Conditions

**Company Name:**   Department of Interior-National Historic Site
**Inspection Site:**   Tuskegee Institute-1600 Boy Scout Circle, Tuskegee, AL  36088

---

Citation 1 Item 4  Type of Violation:  **Serious**

29 CFR 1910.1025(d)(3)(i):  The initial determination for lead was not based on employee exposure monitoring results and other relevant considerations listed in (A), (B) and (C) of this paragraph:

(a)    G.W.Carver Museum: Employer failed to provide exposure measurements to ascertain the levels of lead for employees arranging, disassembling, rearranging, shipping, and receiving taxidermed artifacts.

Date By Which Violation Must be Abated:                              08/02/2007

The alleged violations below have been grouped because they involve similar or related hazards that may increase the potential for illness.

Citation 1 Item 5a  Type of Violation:  **Serious**

29 CFR 1910.1025(l)(1)(i):  Employee(s) working in an area where there was potential exposure to airborne lead at any level were not informed of the content of Appendices A and B of this regulation:

(a)    G.W. Carver Museum: Employees were not informed of the proper methods of personal protection, personal hygiene, and medical surveillance while arranging, disassembling, rearranging, shipping and receiving taxidermed artifacts in displays containing lead.

Date By Which Violation Must be Abated:                              08/08/2007

---

See pages 1 through 5 of this Notice for information on employer and employee rights and responsibilities.

Notice of Unsafe or Unhealthful Working Conditions          Page 7 of 9                              OSHA-2H (Rev. 9-...)

**U.S. Department of Labor**
Occupational Safety and Health Administration

Inspection Number:  310772330
Inspection Dates: 05/04/2007 - 05/07/2007
Issuance Date:        07/20/2007



Notice of Unsafe or Unhealthful Working Conditions

Company Name:    Department of Interior-National Historic Site
Inspection Site:    Tuskegee Institute-1600 Boy Scout Circle, Tuskegee, AL  36088

___

Citation 1 Item 5b Type of Violation:  **Serious**

___

29CFR 1910.1200(h)(1):Employer did not provide employees with effective information and training on hazardous chemicals in their work area at the time of their initial assignment, and whenever a new physical or health hazard the employees have not previously been trained about is introduced into their work area. Information and training may be designed to cover categories of hazards (e.g., flammability, carcinogenicity) or specific chemicals. Chemical-specific information must always be available through labels and material safety data sheets.

(a)      Artifact Storage Department: Employer failed to provide adequate training for employees handling taxidermed artifacts containing hazardous chemicals such as, but not limited to, arsenic, compounds, with health effects, such as, but not limited to, skin disorders, digestive and respiratory system disorders.

Date By Which Violation Must be Abated:                                08/02/2007

Citation 1 Item 6 Type of Violation:  **Serious**

29 CFR 1910.1200(g)(8):  The employer did not maintain copies of the required material safety data sheets for each hazardous chemical in the workplace:

(a)      Artifact Storage Department: Employer failed to provide material safety data sheets for employees handling taxidermed artifacts containing hazardous chemicals, such as, but not limited to, arsenic and lead, with health effects, such as, but not limited to, central nervous system, reproductive, and renal disorders.

Date By Which Violation Must be Abated:                                08/02/2007

___

See pages 1 through 5 of this Notice for information on employer and employee rights and responsibilities.

**U.S. Department of Labor**
Occupational Safety and Health Administration

Inspection Number:  310772330
Inspection Dates: 05/04/2007 - 05/07/2007
Issuance Date:      07/20/2007



Notice of Unsafe or Unhealthful Working Conditions

**Company Name:**    Department of Interior-National Historic Site
**Inspection Site:**    Tuskegee Institute-1600 Boy Scout Circle, Tuskegee, AL  36088

---

Citation 2 Item 1  Type of Violation:  **Other**

29 CFR 1904.32(b)(3): The Summary of Work-Related Injuries and Illnesses (OSHA Form 300A or equivalent) was not properly certified:

    (a)    The OSHA 300A for the year 2003 not certified by the highest officer at the establishment.

ABATEMENT NOTE:  The company executive that certifies the 300A must be one of the following:  owner of the company, officer of the corporation, or the highest ranking company official at the establishment.

      Date By Which Violation Must be Abated:        07/26/2007

Ken Nishiyama-Atha
Area Director

---

See pages 1 through 5 of this Notice for information on employer and employee rights and responsibilities.

Notice of Unsafe or Unhealthful Working Conditions          Page 9 of 9          OSHA-2H (Rev

 

**U.S. Department of Labor**
Occupational Safety and Health Administration

# Inspection Report

Wed Jul 18, 2007 3:40pm

| Rpt ID | Assignment Nr. | CSHO ID | Supervisor ID | Inspection Nr. | Opt. Insp. Nr. |
|---|---|---|---|---|---|
| 0418600 | 0 | TC | Y3069 | 310772330 | 07002 |

| Establishment Name | | Department of Interior-National Historic Site | | |
|---|---|---|---|---|
| Site Address | Tuskegee Institute-1600 Boy Scout Circle Tuskegee, AL 36088 | Site Phone | (334) 727-6390 | Site FAX | (334) 727-4597 |
| Mailing Address | Tuskegee Institute-1600 Boy Scout Circle Tuskegee, AL 36088 | Mail Phone | (334) 727-6390 | Mail FAX | (334) 727-4597 |
| Controlling Corp | | Employer ID | | 530197094 | |
| Ownership | D. Federal Agency: 7107 - NATL PARK SERVICE | City | 3070 | County | 087 |
| Legal Entity | | Previous Activity (State Only) | | | |

| Related Activity | | | | | |
|---|---|---|---|---|---|
| Type | Number | Satisfied | Type | Number | Satisfied |
| C. Complaint | 205251226 | Safety/Health | | | |

| Employed in Establishment | 35 | Advance Notice? | No | Category | H. Health |
|---|---|---|---|---|---|
| Covered By Inspection | 1 | Union? | Yes | Interviewed? | Yes |
| Controlled By Employer | 73000 | Walkaround? | Yes | | |
| Primary SIC | 9999 | Secondary SIC | | Inspected | |
| Primary NAICS | 712120 | Secondary NAICS | | NAICS Inspected | |

| Inspection Type | B. Complaint | Reason No Inspection | |
|---|---|---|---|
| Scope of Inspection | B. Partial Inspection | | |
| Classification | | | |
| Strategic Initiatives | | | |
| National Emphasis | | | |
| Local Emphasis | | | |

| Anticipatory Warrant Served? | No | Denial Date | Date ReEntered | Date ReDenied | ReEntered |
|---|---|---|---|---|---|
| Anticipatory Subpoena Served? | No | | | | |

| Entry | 05/03/07 | 08:00 | First Closing Conference | 05/07/07 | 14:00 |
|---|---|---|---|---|---|
| Opening Conference | 05/03/07 | 09:17 | Second Closing Conference | | |
| Walkaround | 05/03/07 | 08:00 | Exit | 05/07/07 | 16:40 |
| Days On Site | 3 | | Case Closed | | |
| | | | No Citations Issued | | |

| Type | ID | Optional Information |
|---|---|---|
| | | |

| CSHO Signature | TC | Date | 07.18.07 |
|---|---|---|---|



U.S. Department of Labor
Occupational Safety and Health Administration

# OSHA-300 Data/Safety and Health Program Evaluation

May 10, 2007 2:34pm

| Establishment Name | Department of Interior-National Historic Site | | | | | | Ownership | D. Federal Agency |
|---|---|---|---|---|---|---|---|---|
| Controlling Corp | | | | | | | Employer ID | 530197094 |

| SUMMARY OSHA-300 DATA | | Log Year | 2003 | Data Not Available | | Data Not Required | | Partial Log Year | No | # Of Weeks | 0 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| TRC RATE | 26.3 | DART RATE | 26.3 | Annual Average Number of Employees | | 35 | Total Hours Worked by All Employees | | 38000 | | |

| Number of Cases | | | | Number of Days * Columns may not appear in same order as on paper form. | | Injury and Illness Types * Columns may not appear in same order as on paper form. | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| (G) Deaths | (H) Days Away | (I) Job Xfer or Restrict | (J) Other Recordable | (*) Nbr Days Away from Work | (*) Nbr Days Job Xfer or Restrict | (M1) Injuries | (M2) Skin Disorders | (M3) Respiratory Conditions | (M4) Poisonings | (*) Hearing Losses | (*) All Other Illness |
| 0 | 2 | 3 | 0 | 48 | 120 | 4 | 0 | 0 | 0 | 0 | 1 |

# U. S. Department of Labor
Occupational Safety and Health Administration



## Notice of Alleged Safety or Health Hazards
Thu Apr 26, 2007 3:02pm

| | | | |
|---|---|---|---|
| | Complaint Number | | 205251226 |
| Establishment Name | Department of Interior-National Historic Site | | |
| Site Address | Tuskegee Institute-1600 Boy Scout Circle, Tuskegee, AL 36088 | | |
| | Site Phone | (334) 727-6390 | Site FAX | |
| Mailing Address | Tuskegee Institute-1600 Boy Scout Circle, Tuskegee, AL 36088 | | |
| | Mail Phone | (334) 727-6390 | Mail FAX | |
| Management Official | Catherine Light | Telephone | |
| Type of Business | Historic Preservation | Ownership | |
| Primary SIC | 8412 | Primary NAICS | 712120 |

**HAZARD DESCRIPTION/LOCATION.** Describe briefly the hazard(s) which you believe exist. Include the approximate number of employees exposed to or threatened by each hazard. Specify the particular building or worksite where the alleged violation exists.

**DESCRIPTION:**

1. Employees are exposed to hazards from chemicals such as, but not limited to, Lead Arsenic or Paris Green, Strontium Sulfate and Barium Carbonate.

2. Employees are not provided with proper personal protective equipment to protect themselves from chemicals such as the ones listed in complaint item 1.

3. No Material Safety Data Sheets are provided for chemicals such as the ones listed in complaint item 1.

4. Employees are not properly trained to recognize hazards associated with chemicals such as the ones listed in complaint item 1.

**LOCATION:**
Museum

## OCCUPATIONAL SAFETY AND HEALTH ADMINISTRATION OSHA 1A
### General Industry Narrative

**COMPANY NAME: Dept. of Interior- National Historic Site National Park Service**

**Type of Business:  Park Administration**

**Employer Representatives Contacted**
(I= Credentials Presented C= Closing Conference O= Opening Conference)

Name: Tyrone Brandyburg   I, O, & C (on-site)
Title: Chief of Interpretation
Function: Supervisor of Park Staff
WA: Yes

**Names and Addresses of All Organized Employee Groups**
Name:  American Federation of Governmental Employees
Local Number: #110
Phone: (334) 727-0550
Street Address:  2400 Hospital Rd.
City: Tuskegee
State: AL
Zip: 36803

**Authorized Representatives of Employees**
Name: ,
Phone:
Organization: AFGE #110
Title:
Street Address:  2400 Hospital Rd.
City: Tuskegee
State: AL
Zip: 36803
WA:  No

**Records ("X" if reviewed and entered into NCR)**
OSHA 300: X
OSHA 300A:
OSHA 301 or equivalent:

**Employee Information:**

**Name:**                                                    (EE#)
**Phone:** (
**Address:**

## NARRATIVE

**Nature/Scope Inspection:** Complaint/Partial Secured Area-Specimen Storage

## Opening Conference: 05.04.07 @ 9:17 am

### Workplace Observations:
The citations issued are: no drinking water for gardeners, no soap in the bathrooms at the GWC Museum, failing to conduct initial determinations for arsenic and lead, arsenic and lead training, no MSDS's for arsenic and lead, and the superintendent did not certify the 300A.
Thirty-five employees are at this site. This inspection covered 5 employees (Guides and Gardeners), and their duties are: Guides – maintain, clean, inspect, transport, and set-up museum displays and historic sites. Gardeners – maintain, cut, trim, water, cultivate the landscape and grounds of the historic sites.

Machine Guarding: NA

Hazard Communication Program: Yes Inadequate Training

Open-sided Floors: NA

Stairways and Ladders: NA

Lockout/Tagout Program: NA

Electrical: NA

Means of Egress: NA

PPE: Uniform, 3M 8710, cotton gloves

First Aid: All ee's trained in first-aid & CPR

Fire Protection: No

Hand Tools Yes:

Confined Space Program: NA

Bloodborne Pathogens Program: NA

**IH's Discuss**

Occupational Health Program: Yes

Monitoring Program: Yes

Medical Surveillance Program: Yes

Education and Training Program: Yes

Recordkeeping Program: Yes

Compliance Program: NA

Engineering Controls: NA

Regulated Areas: NA

Emergency Procedures: Yes

Written Compliance Plan: NA

Hygiene Facilities: Yes

**Closing Conference: On 07.06.07 at 1:00 pm by telephone (conference) attending: Catherine Light-Superintendent, James Lowe-President, Bobby Henderson-1st Vice President, and Wendell Echols-Shop Stewart. Air sampling results, citations, abatement days, methods of abatement, was discussed.**

**Possible Employer Defense: Ms. Catherine Light indicated non-agreement with violated standard 1910.1025(l)(1)(i) that PPE, personal hygiene, & medical surveillance were provided for ‾ IC The documentation was not provided to this IH. The fore-mentioned items were provided at previous work sites.**

## PENALTY REDUCTIONS

| SIZE | GOOD FAITH | HISTORY |
|---|---|---|
| 1-25   Employees =   60% | 25%-good programs | 10%-No serious, willful |
| 26-100 Employees = 40% | 15%-some deficiencies | or repeat in last 3 years |
| 101-250 Employees = 20% | 0% poor or no programs | |

SIZE REDUCTION (%): 0%

GOOD FAITH  REDUCTION  (%): 15%
JUSTIFICATION:

HISTORY  REDUCTION  (%): 10%
JUSTIFICATION:

TOTAL REDUCTION  (%): 25%
Follow-up Recommended Y/N: N
Reason: Employer demonstrated the importance of their agency's mission statement to serve the general public and their employees.


ACCOMPANIED BY: NA

U. S. Department of Labor
Occupational Safety and Health Administration

# Worksheet

Fri Jul 20, 2007 2:54pm

| | | |
|---|---|---|
| Inspection Number | 310772330 |
| Opt. Insp. Number | 07002 |

| Establishment Name | **Department of Interior-National Historic Site** | | | | |
|---|---|---|---|---|---|
| Type of Violation | S Serious | Citation Number | 01 | Item/Group | **001** |
| Number Exposed | 2 | No. Instances | 1 | REC | |
| Std. Alleged Vio. | **1910.0141( b)( 1)( i)** | | | | |

| Abatement Period | MultiStep Abatements | | | Final Abatement | Action Type/Dates |
|---|---|---|---|---|---|
| | PPE Period | Plan | Report | | |
| 10 | | | | | |
| Abatement Documentation Required | | | | Date Verified | |

| Substance Codes | **P445 - POTABLE WATER** |
|---|---|

| AVD/Variable Information: |
|---|

29 CFR 1910.141(b)(1)(i): Potable water was not provided in all places of employment, for drinking, washing of the person, cooking, washing of foods, washing of cooking or eating utensils, washing of food preparation or processing premises, and personal service rooms:

   (a)    Maintenance Shed: Employees were not provided drinking water when mowing, trimming, cutting, cultivating, maintaining equipment and grounds.

| Penalty Calculations | | | | Adjustment Factors | | | Proposed Adjusted Penalty |
|---|---|---|---|---|---|---|---|
| Severity | Probability | Gravity | GBP | Size | Good Faith | History | |
| L Low | L Lesser | 01 | 1500.00 | 0 | 15 | 10 | 1350.00 |
| Repeat Factor | | 0 | | | | | |

| Employee Exposure: | | | | | |
|---|---|---|---|---|---|
| Occupation | | Employer | Dept of Interior-NPS | | |
| Nr of Employees | | Duration | over 6 mos. | Frequency | 8hrs/da 5da/wk |
| Employee Name | | | | | |
| Address | | | Phone | ( | ) |
| Occupation | | Employer | Dept of Interior-NPS | | |
| Nr of Employees | | Duration | over 6 mos. | Frequency | 8hrs/da5da/wk |
| Employee Name | | | | | |
| Address | | | Phone | ( | ) |

| Instance Description: | A. Hazard | B. Equipment | C. Location | D. Injury/Illness | E. Measurements |
|---|---|---|---|---|---|

| 4. Date/Time |
|---|
| 05/03/07 11:00am |

20. Instance Description - Describe the following:

Page 2                                                                   Fri Jul 20, 2007 2:54pm
Department of Interior-National Historic Site            Inspection Nr. 310542330 Citation Nr. 01 Item/Group 001

a) Hazards-Operation/Condition-Accident

Three employees exposed to dehydration. The nearest potable water source is approximately 1 1/2 miles.

b) Equipment

A water hose used to refill motorized equipment and fertilizer / pesticide containers lying on the maintenance room floor exposed to unsanitary debris (dust-dead human skin cells, insects, spilled hydrocarbon lubricants.

c) Location

Maintenance Shed

d) Injury/Illness Severity Low due to electrolyte Loss, dehydration, and heat stress. Probability Greater due to high heat, high humidity, and the nearest water source is 1 1/2 miles away.

e) Measurements

| 21. Photo Number | Location on Video |
|---|---|
| | |

23. Employer Knowledge : The employer assigned employees to the Maintenance Shed and did not ensure potable water be supplied.

24. Comments (Employer, Employee, Closing Conference) :

25. Other Employer Information :  Water hoses were lying on the shop floor and/or ground.

| 26. Classification: | | | | |
|---|---|---|---|---|
| Serious | Knowledge | S or O | Repeat? | Willful? |
| Yes | Yes | S | No | No |

| First Repeat | Second Repeat | Repeat Penalty |
|---|---|---|
| | | |

| Event Date | Event Code | Action Code | Citation Type | Penalty | Abate Date | Final Order |
|---|---|---|---|---|---|---|
| | Z Add transaction | A Add | S Serious | 1350.00 | | |

U. S. Department of Labor 
Occupational Safety and Health Administration

# Worksheet

Fri Jul 20, 2007 3:04pm

| | | Inspection Number | 310772330 |
|---|---|---|---|
| | | Opt. Insp. Number | 07002 |

| Establishment Name | **Department of Interior-National Historic Site** | | | | |
|---|---|---|---|---|---|
| Type of Violation | S Serious | Citation Number | 01 | Item/Group | 002 |
| Number Exposed | 2 | No. Instances | 1 | REC | |
| Std. Alleged Vio. | 1910.0141( d)( 2)( iii) | | | | |

| Abatement Period | MultiStep Abatements | | | Final Abatement | Action Type/Dates |
|---|---|---|---|---|---|
| | PPE Period | Plan | Report | | |
| 5 | | | | | |
| Abatement Documentation Required | | | | Date Verified | |

| Substance Codes | **B418 - BACTERIA** |
|---|---|

| AVD/Variable Information: | |
|---|---|

29 CFR 1910.141(d)(2)(iii):  Lavatories were not provided with hand soap or similar cleansing agent:

    (a)    Basement of G.W. Carver Museum: Employer did not provide hand soap for employees performing maintenance of museum displays and keeping the museum clean.

| Penalty Calculations | | | | Adjustment Factors | | | Proposed Adjusted Penalty |
|---|---|---|---|---|---|---|---|
| Severity | Probability | Gravity | GBP | Size | Good Faith | History | |
| H High | L Lesser | 03 | 2500.00 | 0 | 0 | 10 | 0.00 |
| Repeat Factor | | 0 | | | | | |

| Employee Exposure: | | | | | |
|---|---|---|---|---|---|
| Occupation | | Employer | Dept of Interior-National Park | | |
| Nr of Employees | | Duration | over 6 mos. | Frequency | 5 day/wk, 40 hr |
| Employee Name | | | | | |
| Address | | Phone | | | |
| Occupation | | Employer | Dept of Interior-NPS | | |
| Nr of Employees | | Duration | over 6 mos. | Frequency | 8hrs/da5da/wk |
| Employee Name | | | | | |
| Address | | Phone | | | |

| Instance Description: | A. Hazard | B. Equipment | C. Location | D. Injury/Illness | E. Measurements |
|---|---|---|---|---|---|

| 4. Date/Time |
|---|
| 05/07/07 10:30 am |

20. Instance Description -  Describe the following:
        a) Hazards-Operation/Condition-Accident: No hand soap in women's restroom exposing employees to bacteria/viral infections
        b) Equipment: NA
        c) Location : Women's Restroom in basement of GW Carver Museum

d) Injury/Illness: Bacterial/Viral Infections
e) Measurements: NA

| 21. Photo Number | Location on Video |
|---|---|
|  |  |

23. Employer Knowledge : Chief of Interpretation stated "I have been trying to get soap for that restroom".

24. Comments (Employer, Employee, Closing Conference) :

25. Other Employer Information :
Severity: High, Infections such as, but not limited to, Hepatitis A, Stafflococcus & Streptococcus infections, tuberculosis, etc. are possible.
Probability: Lesser due to employees limited exposure.

| 26. Classification: | | | | |
|---|---|---|---|---|
| Serious | Knowledge | S or O | Repeat? | Willful? |
| Yes | Yes | S | NO | NO |

| First Repeat | Second Repeat | Repeat Penalty |
|---|---|---|
|  |  |  |

| Event Date | Event Code | Action Code | Citation Type | Penalty | Abate Date | Final Order |
|---|---|---|---|---|---|---|
|  | Z Add transaction | A Add | S Serious | 0.00 |  |  |

# U. S. Department of Labor
Occupational Safety and Health Administration



# Worksheet

Fri Jul 20, 2007 3:14pm

| | | |
|---|---|---|
| Inspection Number | | 310772330 |
| Opt. Insp. Number | | 07002 |

| Establishment Name | Department of Interior-National Historic Site | | | | | |
|---|---|---|---|---|---|---|
| Type of Violation | S Serious | Citation Number | 01 | Item/Group | | 003 |
| Number Exposed | 1 | No. Instances | 1 | REC | C Complaint | |
| Std. Alleged Vio. | 1910.1018( e)( 2) | | | | | |

| Abatement Period | MultiStep Abatements | | | Final Abatement | Action Type/Dates | | |
|---|---|---|---|---|---|---|---|
| | PPE Period | Plan | Report | | | | |
| 10 | | | | | | | |
| Abatement Documentation Required | | | | Date Verified | | | |

| Substance Codes | 0261 - ARSENIC & INORGANIC COMPOUNDS (ACTION LEVEL) |
|---|---|

| AVD/Variable Information: |
|---|

29 CFR 1910.1018(e)(2): Initial monitoring was not performed for each workplace, or work operation covered by this section to accurately determine the airborne concentration of inorganic arsenic to which employees may be exposed:

    (a)    G.W.Carver Museum: Employer failed to conduct exposure measurements to ascertain the levels of arsenic for employees arranging, disassembling, rearranging, shipping, and receiving taxidermed artifacts.

| Penalty Calculations | | | | Adjustment Factors | | | Proposed Adjusted Penalty |
|---|---|---|---|---|---|---|---|
| Severity | Probability | Gravity | GBP | Size | Good Faith | History | |
| H High | L Lesser | 03 | 2500.00 | 0 | 0 | 10 | 4500.00 |
| Repeat Factor | | 0 | | | | | |

| Employee Exposure: | | | | | | |
|---|---|---|---|---|---|---|
| Occupation | | | Employer | Dept of Interior-NPS | | |
| Nr of Employees | | | Duration | over 6 mos. | Frequency | 8hrs/da5da/wk |
| Employee Name | | | | | | |
| Address | | | Phone | | | |

| Instance Description: | A. Hazard | B. Equipment | C. Location | D. Injury/Illness | E. Measurements |
|---|---|---|---|---|---|

| 4. Date/Time |
|---|
| 05/07/07  7:35 am |

20. Instance Description -  Describe the following:
      a) Hazards-Operation/Condition-Accident
            Employee exposed to inorganic arsenic handling taxidermed artifacts, such as, but not limited to, unpacking, packing, and storing artifacts.
      b) Equipment
      c) Location
            Museum Storage Units
      d) Injury/Illness
            Severity High and Probability Greater due to possible permanent damage to renal, reproductive, and central nervous systems.

Page 2                                                                                    Fri Jul 20, 2007 3:14pm
Department of Interior-National Historic Site          Inspection Nr. 310772330 Citation Nr. 01 Item/Group 003

    e) Measurements
        The report from The Field Museum indicate the concentrations of arsenic contained on three
        taxidermed artifacts (chickens).

| 21. Photo Number | Location on Video |
|---|---|
|  |  |

23. Employer Knowledge :
        The Superintendent provided IH with a copy of a report from The Field Museum in Chicago, IL.,
stating that three taxidermided chickens tested contained arsenic compounds.
24. Comments (Employer, Employee, Closing Conference) :
        Superintendent and Chief of Interpretation indicated knowledge of The Field Museum report.
25. Other Employer Information :
        The findings (arsenic concentrations) within the report from The Field Museum given to this IH from
        the Chief of Interpretation.

| 26. Classification: | | | | |
|---|---|---|---|---|
| Serious | Knowledge | S or O | Repeat? | Willful? |
| Yes | Yes | S | No | No |

| First Repeat | Second Repeat | Repeat Penalty |
|---|---|---|
|  |  |  |

| Event Date | Event Code | Action Code | Citation Type | Penalty | Abate Date | Final Order |
|---|---|---|---|---|---|---|
|  | Z Add transaction | A Add | S Serious | 4500.00 |  |  |

US Department of Labor, Occupational Safety and Health Administration



**Photo Mounting Sheet**



**Photo Number:**
**Description:** 05/07/07  7:35 am ⌐C  cleaning display in GW Carver Museum
**Inspection # 310772330**
**Citation # 1, Instances 003, 004, 005, 006, & 007**
**Confidential - No**



# Air Sampling Worksheet ●    U.S. Department ● Labor
## Occupational Safety and Health Administration

Apr 30, 2007 2:46pm    07 - 002

| ..OD | Date 05.03.07 | Reporting ID | Inspection Number 310773330 | Sampling Number 434859914 |
|---|---|---|---|---|

| Establishment Name National Park Service | | Sampling Date 05.03.07 | Shipping Date 05.08.07 |
|---|---|---|---|

Person Performing Sampling (Signature)     JC     Print Last Name     JC     CSHO ID     JC

| Employee (Name, Address, Telephone Number) Area Samples | Exposure Information | a. Number 2 | b. Duration since 1000 |
|---|---|---|---|

TS1 & TS2   Museum Storage Units
TS3 →   BW Cave Museum

Frequency 10 min / day, 5 days / week

| Job Title Park Guide | Occupation Code | Weather Conditions temperature & humidity controlled | Photo(s) Y  # 1, 2, 3, & 4 |
|---|---|---|---|

| PPE (Type and Effectiveness) cotton gloves | Pump Checks and Adjustments NA |
|---|---|

Job Description, Operation, Work Location(s), Ventilation and Controls

Employee place and remove specimens in and out of these areas

ventilation - general                                          | Cont'd |

| Pump Number: | **Sampling Data** | | | | | |
|---|---|---|---|---|---|---|
| Lab Sample Number | | | | | | Blank |
| Sample Submission Number | TS1 | TS2 | TS03 | | | TS 101 |
| Sample Type | wipe | wipe | wipe | | | |
| Sample Media | | | | | | |



# Air Sampling Worksheet

## U.S. Department Labor
### Occupational Safety and Health Administration

on Apr 30, 2007 2:46pm   07-003

| IOD | Date 05.03.07 | Reporting ID | Inspection Number 310773330 | Sampling Number 434859914 |
|---|---|---|---|---|

s...lishment Name
National Park Service

| | Sampling Date 05.03.07 | Shipping Date 05.08.07 |

erson Performing Sampling (Signature)        TC

Print Last Name    TC

CSHO ID    TC

mployee (Name, Address, Telephone Number)
Area Samples

| Exposure Information | a. Number 2 | b. Duration |
|---|---|---|

TS1 & TS2   Museum Storage Units

TS3 → BW Course Museum

| Frequency | 10min/day, 5 days/week |
|---|---|

Job Title
Park Guide

Occupation Code

| Weather Conditions temperature & humidity controlled | Photo(s) Y #1,2,3,&4 |
|---|---|

PE (Type and Effectiveness)
cotton gloves

Pump Checks and Adjustments
NA

ob Description, Operation, Work Location(s), Ventilation and Controls

Employee place and remove specimens in and out of these areas

ventilation - general

Cont'd

Pump Number:

### Sampling Data

| | | | | | Blank |
|---|---|---|---|---|---|
| Lab Sample Number | | | | | |
| Sample Submission Number | TS1 | TS2 | TS03 | | TS101 |
| ...le Type | wipe | wipe | wipe | | |
| Sample Media | | | | | |
| Filter/Tube No. | | | | | |
| Time On/Off | | | | | |
| | | | | | |
| Total Time (in minutes) | | | | | |
| Flow Rate ☐ l/min  ☐ cc/min | | | | | |
| Volume (in liters) | | | | | |
| Net Sample Weight (in mg) | | | | | |
| Analyze Samples for | Indicate Which Samples to Include in TWA, Ceiling, etc. Calculations | | | | |
| arsenic, barium, lead, & strontium | As, Ba, Pb, Sr  → | → | → | | → |

| Interference and IH Comments to Lab ...one | Supporting Samples | Chain of Custody | Initials | Date |
|---|---|---|---|---|
| | a. Blanks      TS101 | Seals Intact | Y    N | |
| | | Received in Lab | | |
| | b. Bulks | Received by Analyst | | |
| | | Analysis Complete | | |
| | | Calculation Checked | | |
| | | Supervisor OK'd | | |
| | | Case File Page | of | |

Air Sampling Report    U.S. Department of Labor    Occupational Safety and Health Administration.

Page 1 of 2

| Reporting ID 418600 | 2. Inspection Number 310772330 | 3. Sampling TEST | 434859914 |
|---|---|---|---|

. Establishment Name

DEPARTMENT OF INTERIOR-NATIONAL HISTORIC SITE

| . CSHO ID 7C | 6. Sampling Date 03 MAY 2007 | 7. Shipping Date 08 MAY 2007 | 8.Date Result Received 07.02.07 |
|---|---|---|---|

| . Job Title aborers, except construction (8769) | 10.Occupational Code | 11. Number Exposed |
|---|---|---|

2. Frequency of Exposure

xposure Summary

| 14. ubstance Code | 15. Rqatd | 16. Smpl Type | 17.Exp Type | 18.Exp Level | 19. Units | 20. PEL | 21. Adj | 22. Severity | 23. Citation information | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | No Cit | FTA | Over Exp | Eng | PPE | Trng | Med | OTH |

WA calculated on actual time sampled
he I. H. is free to make changes on the Form 91B and submit them directly to IMIS

6.Analyst's Comments   OSHA ID-105
(Analytical Method)

Reporting limits for air samples
Arsenic 0.5ug
Lead  5 ug

for wipes multiply these limits by 2

mples analyzed using ICP-MS

| 27.Chain of Custody | Init. | Date |
|---|---|---|
| a. Seals Intact | | Y |
| b. Rec'd In Lab | LLD | 11 MAY 2007 |
| c. Rec'd by Anal. | DE | 15 JUN 2007 |
| d. Anal. Completed | DE | 22 JUN 2007 |
| e. Calc. Checked | ALW | 22 JUN 2007 |
| f. Supr. OK'd | JR | 26 JUN 2007 |

| 28 Submission number | TS1 | TS2 | TS3 | TS101 |
|---|---|---|---|---|
| 9 Lab Sample No. Minutes/Type) | D30729 W | D30730 W | D30731 W | D30732 W |

| 30. Analyte | 31. Analysis Results/ 32. Sample included in calculations of | | | | | | |
|---|---|---|---|---|---|---|---|
| 0260 | Arsenic, Inorganic | X | ND | X | ND | X | 19.9000 | X | BLK |
| 1591 | Lead, Inorganic (as Pb) | X | ND | X | ND | X | 32.3000 | X | BLK |

Because the results for air samples are used in further calculations, the number of figures reported in section 31 may not reflect the actual precision of the analysis.
Calculated confidence limits (UCL & LCL) should be rounded to no more than three significant figures.
The precision of analysis for wipe samples and for bulk material samples justify rounding results to no more than two significant figures.

The Sampling and Analytical Error (SAE) is the current value for the specific chemical(s) and should be used for the calculations.
Blank values are reported for reference only. Appropriate blank corrections have been applied to the samples by the Salt Lake Technical Center. Blank results are less than the reporting limit(s) unless otherwise noted.

3. Analyte Code  SAE Value

   0260

   1591

| MILLIGRAMS PER LITER (URINE) | D | MICROGRAMS PER DECILITER (BLOOD) |
|---|---|---|
| PICO CURIES PER LITER (RADON GAS) | P | PARTS PER MILLION |

Air Sampling Report    U.S. Department of Labor    Occupational Safety and Health Administration.

Page 2 of 2

| | | |
|---|---|---|
| FIBERS PER CUBIC CENTIMETER | X | MICROGRAMS |
| MILLIGRAMS PER CUBIC METER | % | PERCENT |
| MILLIGRAMS | E | FIBERS PER MM2 |
| NONE | G | MILLION PARTICLES PER CUBIC FOOT (MPPCF) |

/S  Bar Meters per Second

The results are below the detection limits.

alyte codes are chosen by the laboratory. The I. H. should review them for applicability. if there are any
estions call the laboratory for appropriate analyte codes (ie. ICP uses fume analyte codes when the IH may
re sampled for dust).

mpling Number:    434859914



U. S. Department of Labor
Occupational Safety and Health Administration

# Worksheet

Fri Jul 20, 2007 3:25pm

| | |
|---|---|
| Inspection Number | 310772330 |
| Opt. Insp. Number | 07002 |

| Establishment Name | Department of Interior-National Historic Site | | | | |
|---|---|---|---|---|---|
| Type of Violation | S Serious | Citation Number | 01 | Item/Group | 004 |
| Number Exposed | 1 | No. Instances | 0 | REC | C Complaint |
| Std. Alleged Vio. | 1910.1025( d)( 3)(   i) | | | | |

| Abatement Period | MultiStep Abatements | | | Final Abatement | Action Type/Dates |
|---|---|---|---|---|---|
| | PPE Period | Plan | Report | | |
| 10 | | | | | |
| Abatement Documentation Required | | | | Date Verified | |

| Substance Codes | 1590 - LEAD ARSENATE (AS PB) |
|---|---|

| AVD/Variable Information: |
|---|

29 CFR 1910.1025(d)(3)(i):  The initial determination for lead was not based on employee exposure monitoring results and other relevant considerations listed in (A), (B) and (C) of this paragraph:

    (a)    G.W.Carver Museum: Employer failed to provide exposure measurements to ascertain the levels of lead for employees arranging, disassembling, rearranging, shipping, and receiving taxidermed artifacts.

| Penalty Calculations | | | | Adjustment Factors | | | Proposed Adjusted Penalty |
|---|---|---|---|---|---|---|---|
| Severity | Probability | Gravity | GBP | Size | Good Faith | History | |
| H High | L Lesser | 03 | 2500.00 | 0 | 0 | 10 | 4500.00 |
| Repeat Factor | | 0 | | | | | |

| Employee Exposure: | | | | | |
|---|---|---|---|---|---|
| Occupation | | | Employer | Dept of Interior-NPS | |
| Nr. of Employees | | | Duration | over 6 mos. | Frequency | 8hrs/da5da/wk |
| Employee Name | | | | | |
| Address | | | Phone | | |

| Instance Description: | A. Hazard | B. Equipment | C. Location | D. Injury/Illness | E. Measurements |
|---|---|---|---|---|---|

| 4. Date/Time |
|---|
| 05/07/07  7:35 am |

20. Instance Description -  Describe the following:
    a) Hazards-Operation/Condition-Accident
        Employee exposed to inorganic lead handling taxidermed artifacts, such as, but not limited to, unpacking, packing, and storing artifacts.
    b) Equipment
    c) Location
        Museum Storage Units
    d) Injury/Illness
        Severity High due to possible permanent damage to renal, reproductive, and central nervous system and Probability Lesser due to limited exposure.

e) Measurements

| 21. Photo Number | Location on Video |
|---|---|
|  |  |

23. Employer Knowledge :
    The Superintendent provided this IH a copy of the report from The Field Museum in Chicago, IL, stating "It is known that Dr. Carver advocated the use of arsenical pesticides such as lead arsenate and Paris Green (copper [II]-acetoarsenite)".
24. Comments (Employer, Employee, Closing Conference) :
    Superintendent and Chief of Interpretation indicated knowledge of The Field Museum report.
25. Other Employer Information :
    The Chief of Interpretation indicated knowledge that lead arsenate is a lead compound.

| 26. Classification: | | | | |
|---|---|---|---|---|
| Serious | Knowledge | S or O | Repeat? | Willful? |
| Yes | Yes | S | No | NO |

| First Repeat | Second Repeat | Repeat Penalty |
|---|---|---|
|  |  |  |

| Event Date | Event Code | Action Code | Citation Type | Penalty | Abate Date | Final Order |
|---|---|---|---|---|---|---|
|  | Z Add transaction | A Add | S Serious | 4500.00 |  |  |



**US Department of Labor, Occupational Safety and Health Administration**



**Photo Mounting Sheet**



Photo Number:
Description:05/03/07  2:30 pm  Museum Storage Cabinet # 5  Museum Storage Unit
Inspection # 310772330
Citation # 1  Instances 004, 005, 006, & 007
The 3 red dots indicate a positive reaction for the presence of Lead.



# U. S. Department of Lab
Occupational Safety and Health Administration

## Worksheet

Fri Jul 20, 2007 3:38pm



| | | |
|---|---|---|
| Inspection Number | | 310772330 |
| Opt. Insp. Number | | 07002 |

| Establishment Name | Department of Interior-National Historic Site | | | | |
|---|---|---|---|---|---|
| Type of Violation | S Serious | Citation Number | 01 | Item/Group | 005 (a) |
| Number Exposed | 1 | No. Instances | 0 | REC | C Complaint |
| Std. Alleged Vio. | 1910.1025( l)( 1)(   i) | | | | |

| Abatement Period | MultiStep Abatements | | | Final Abatement | Action Type/Dates |
|---|---|---|---|---|---|
| | PPE Period | Plan | Report | | |
| 10 | | | | | |
| Abatement Documentation Required | | | | Date Verified | |

| Substance Codes | 1590 - LEAD ARSENATE (AS PB) |
|---|---|

| AVD/Variable Information: |
|---|

29 CFR 1910.1025(l)(1)(i): Employee(s) working in an area where there was potential exposure to airborne lead at any level were not informed of the content of Appendices A and B of this regulation:

(a)     G.W. Carver Museum: Employees were not informed of the proper methods of personal protection, personal hygiene, and medical surveillance while arranging, disassembling, rearranging, shipping and receiving taxidermed artifacts in displays containing lead.

| Penalty Calculations | | | | Adjustment Factors | | | Proposed Adjusted Penalty |
|---|---|---|---|---|---|---|---|
| Severity | Probability | Gravity | GBP | Size | Good Faith | History | |
| H High | L Lesser | 03 | 2500.00 | 0 | 0 | 10 | 4500.00 |
| Repeat Factor | | 0 | | | | | |

| Employee Exposure: | | | | | |
|---|---|---|---|---|---|
| Occupation | | | Employer | Dept of Interior-NPS | |
| Nr of Employees | | | Duration | over 6 mos. | Frequency | 8hrs/da5da/wk |
| Employee Name | | | | | |
| Address | | | Phone | | |

| Instance Description: | A. Hazard   B. Equipment   C. Location   D. Injury/Illness   E. Measurements |
|---|---|

| 4. Date/Time |
|---|
| 05/07/07  7:35 am |

20. Instance Description -  Describe the following:
- a) Hazards-Operation/Condition-Accident
    Employee exposed to inorganic lead handling taxidermed artifacts, such as, but not limited to, unpacking, packing, and storing.
- b) Equipment
- c) Location
    Museum Storage Units
- d) Injury/Illness

Case 3:08-cv-00069-WKW-TFM    Document 43-3    Filed 09/02/2008    Page 45 of 53

Page 2                                                                          Fri Jul 20, 2007 3:38pm
Department of Interior-National Historic Site          Inspection Nr. 310772350 Citation Nr. 01 Item/Group 005 (a)

Severity High due to possible damage to renal, reproductive, and central nervous systems and Probability Lesser due to limited exposure.
  e) Measurements

| 21. Photo Number | Location on Video |
|---|---|
|  |  |

23. Employer Knowledge :
    The Superintendent provided this IH a copy of the report from The Field Museum in Chicago, IL., stating "It is known that Dr. Carver advocated the use of arsenical pesticides such as lead arsenate and Paris Green [copper (II)-acetoarsenite]".
24. Comments (Employer, Employee, Closing Conference) :
    Superintendent and Chief of Interpretation indicated knowledge of The Field Museum report.

25. Other Employer Information :

| 26. Classification: | | | | |
|---|---|---|---|---|
| Serious | Knowledge | S or O | Repeat? | Willful? |
| Yes | Yes | S | No | No |

| First Repeat | Second Repeat | Repeat Penalty |
|---|---|---|
|  |  |  |

| Event Date | Event Code | Action Code | Citation Type | Penalty | Abate Date | Final Order |
|---|---|---|---|---|---|---|
|  | Z Add transaction | A Add | S Serious | 4500.00 |  |  |

U. S. Department of Labor
Occupational Safety and Health Administration

# Worksheet

Fri Jul 20, 2007 3:58pm

| | | |
|---|---|---|
| Inspection Number | | 310772330 |
| Opt. Insp. Number | | 07002 |

| Establishment Name | Department of Interior-National Historic Site | | | | |
|---|---|---|---|---|---|
| Type of Violation | S Serious | Citation Number | 01 | Item/Group | 005 (b) |
| Number Exposed | 1 | No. Instances | 1 | REC | C Complaint |
| Std. Alleged Vio. | 1910.1200( h)( 1) | | | | |

| Abatement Period | MultiStep Abatements | | | Final Abatement | Action Type/Dates |
|---|---|---|---|---|---|
| | PPE Period | Plan | Report | | |
| 10 | | | | | |

| Abatement Documentation Required | | Date Verified | |
|---|---|---|---|

| Substance Codes | 0261 - ARSENIC & INORGANIC COMPOUNDS (ACTION LEVEL) |
|---|---|
| | 1590 - LEAD ARSENATE (AS PB) |

| AVD/Variable Information: |
|---|

29CFR 1910.1200(h)(1):Employer did not provide employees with effective information and training on hazardous chemicals in their work area at the time of their initial assignment, and whenever a new physical or health hazard the employees have not previously been trained about is introduced into their work area. Information and training may be designed to cover categories of hazards (e.g., flammability, carcinogenicity) or specific chemicals. Chemical-specific information must always be available through labels and material safety data sheets.

(a)     Artifact Storage Department: Employer failed to provide adequate training for employees handling taxidermed artifacts containing hazardous chemicals such as, but not limited to, arsenic, compounds, with health effects, such as, but not limited to, skin disorders, digestive and respiratory system disorders.

| Penalty Calculations | | | | Adjustment Factors | | | Proposed Adjusted Penalty |
|---|---|---|---|---|---|---|---|
| Severity | Probability | Gravity | GBP | Size | Good Faith | History | |
| H High | L Lesser | 03 | 2500.00 | 0 | 0 | 10 | 4500.00 |
| Repeat Factor | | 0 | | | | | |

| Employee Exposure: | | | | | |
|---|---|---|---|---|---|
| Occupation | | | Employer | Dept of Interior-NPS | |
| Nr of Employees | | | Duration | over 6 mos. | Frequency | 8hrs/da5da/wk |
| Employee Name | | | | | |
| Address | | | Phone | | |

| Instance Description: | A. Hazard | B. Equipment | C. Location | D. Injury/Illness | E. Measurements |
|---|---|---|---|---|---|

| 4. Date/Time |
|---|
| 05/03/07  11:10 am |

20. Instance Description -  Describe the following:
   a) Hazards-Operation/Condition-Accident: Employees handling taxidermed artifacts that has been treated with hazardous chemicals, such as, arsenic, barium, lead, and strontium compounds did not have any training on these hazardous chemicals.

Case 3:08-cv-00069-WKW-TFM   Document 43-3   Filed 09/02/2008   Page 47 of 53

Page 2                                                                              Fri Jul 20, 2007 3:58pm
Department of Interior-National Historic Site            Inspection Nr. 310772990 Citation Nr. 01 Item/Group 005 (b)

    b) Equipment: Taxidermed Artifacts
    c) Location: Storage Holding Area
    d) Injury/Illness: Central Nervous System, Reproductive, and Renal Disorders.
          Severity High because of permanent damage to CNS, Reproductive System, and Renal
          Systems. Probability Lesser because employees handling the taxidermed artifacts for the past
          48 months without personal protective equipment. Employee complained of chronic
          poisoning symptoms.
    e) Measurements: See OSHA 92's in case file

| 21. Photo Number | Location on Video |
|---|---|
| 8 | |

23. Employer Knowledge : Superintendent and Chief of Interpretation stated the taxidermed artifacts contained
arsenic and lead compounds. A letter from The Field Museum indicate the presence of arsenic and lead.
Superintendent Light and Mr. Brandyburg gave me a copy of the written hazardous communication program.

24. Comments (Employer, Employee, Closing Conference) :

25. Other Employer Information :
An employee received training at a previous National Park. The training did not cover taxidermed birds
mounted by Dr. George Washington Carver at it's location. This training should be site specific due to new
hazards unknown to new employees.

| 26. Classification: | | | | |
|---|---|---|---|---|
| Serious | Knowledge | S or O | Repeat? | Willful? |
| Yes | Yes | S | No | No |

| First Repeat | Second Repeat | Repeat Penalty |
|---|---|---|
| | | |

| Event Date | Event Code | Action Code | Citation Type | Penalty | Abate Date | Final Order |
|---|---|---|---|---|---|---|
| | Z Add transaction | A Add | S Serious | 4500.00 | | |

**U. S. Department of Labor**
Occupational Safety and Health Administration



# Worksheet

Fri Jul 20, 2007 3:54pm

|  |  |
|---|---|
| Inspection Number | 310772330 |
| Opt. Insp. Number | 07002 |

| Establishment Name | **Department of Interior-National Historic Site** | | | | |
|---|---|---|---|---|---|
| Type of Violation | **S Serious** | Citation Number | **01** | Item/Group | **006** |
| Number Exposed | **1** | No. Instances | **1** | REC | **C Complaint** |
| Std. Alleged Vio. | **1910.1200( g)( 8)** | | | | |

| Abatement Period | MultiStep Abatements | | | Final Abatement | Action Type/Dates | | |
|---|---|---|---|---|---|---|---|
| | PPE Period | Plan | Report | | | | |
| **10** | | | | | | | |
| Abatement Documentation Required | | | | Date Verified | | | |

| Substance Codes | **0261 - ARSENIC & INORGANIC COMPOUNDS (ACTION LEVEL)** |
|---|---|
| | **1590 - LEAD ARSENATE (AS PB)** |

| AVD/Variable Information: |
|---|

29 CFR 1910.1200(g)(8): The employer did not maintain copies of the required material safety data sheets for each hazardous chemical in the workplace:

(a)    Artifact Storage Department: Employer failed to provide material safety data sheets for employees handling taxidermed artifacts containing hazardous chemicals, such as, but not limited to, arsenic and lead, with health effects, such as, but not limited to, central nervous system, reproductive, and renal disorders.

| Penalty Calculations | | | | Adjustment Factors | | | Proposed Adjusted Penalty |
|---|---|---|---|---|---|---|---|
| Severity | Probability | Gravity | GBP | Size | Good Faith | History | |
| **H High** | **L Lesser** | **03** | **2500.00** | **0** | **0** | **10** | **4500.00** |
| Repeat Factor | | **0** | | | | | |

| Employee Exposure: | | | | | |
|---|---|---|---|---|---|
| Occupation | | Employer | **Dept of Interior-NPS** | | |
| Nr of Employees | | Duration | **over 6 mos.** | Frequency | **8hrs/da5da/wk** |
| Employee Name | | | | | |
| Address | | Phone | | | |

| Instance Description: | A. Hazard    B. Equipment    C. Location    D. Injury/Illness    E. Measurements |
|---|---|

| 4. Date/Time |
|---|
| 05/03/07  11:10 am |

20. Instance Description -  Describe the following:
a) Hazards-Operation/Condition-Accident: Employees handling taxidermed artifacts that has been treated with hazardous chemicals, such as, arsenic, barium, lead, and strontium compounds did not have any training on these hazardous chemicals.
b) Equipment: Taxidermed Artifacts
c) Location: Storage Holding Area
d) Injury/Illness: Central Nervous System, Reproductive, and Renal Disorders.

Severity High because of permanent damage to CNS, Reproductive System, and Renal Systems. Probability Lesser because employees handling the taxidermed artifacts for the past 48 months without personal protective equipment. Employee complained of chronic poisoning symptoms.
e) Measurements: See OSHA 92's in case file

| 21. Photo Number | Location on Video |
|---|---|
| 8 | |

23. Employer Knowledge : Superintendent and Chief of Interpretation stated the taxidermed artifacts contained arsenic and lead compounds. A letter from The Field Museum indicate the presence of arsenic and lead. Superintendent Light and Mr. Brandyburg gave me a copy of the written hazardous communication program.

24. Comments (Employer, Employee, Closing Conference) :

25. Other Employer Information :
An employee received training at a previous National Park. The training did not cover taxidermed birds mounted by Dr. George Washington Carver at it's location. This training should be site specific due to new hazards unknown to new employees.

26. Classification:

| Serious | Knowledge | S or O | Repeat? | Willful? |
|---|---|---|---|---|
| Yes | Yes | S | No | No |

| First Repeat | Second Repeat | Repeat Penalty |
|---|---|---|
| | | |

| Event Date | Event Code | Action Code | Citation Type | Penalty | Abate Date | Final Order |
|---|---|---|---|---|---|---|
| | Z Add transaction | A Add | S Serious | 4500.00 | | |

U. S. Department of Labor
Occupational Safety and Health Administration

# Worksheet

Fri Jul 20, 2007 4:04pm

| | | |
|---|---|---|
| Inspection Number | | 310772330 |
| Opt. Insp. Number | | 07002 |

| Establishment Name | Department of Interior-National Historic Site | | | | |
|---|---|---|---|---|---|
| Type of Violation | O Other | Citation Number | 02 | Item/Group | 001 |
| Number Exposed | 1 | No. Instances | 1 | REC | |
| Std. Alleged Vio. | 0032( b)( 3) | | | | |

| Abatement Period | MultiStep Abatements | | | Final Abatement | Action Type/Dates |
|---|---|---|---|---|---|
| | PPE Period | Plan | Report | | |
| 0 | | | | | |

| Abatement Documentation Required | | Date Verified | | |
|---|---|---|---|---|

| Substance Codes | |
|---|---|

| AVD/Variable Information: | |
|---|---|

29 CFR 1904.32(b)(3): The Summary of Work-Related Injuries and Illnesses (OSHA Form 300A or equivalent) was not properly certified:

    (a)    The OSHA 300A for the year 2003 not certified by the highest officer at the establishment.

ABATEMENT NOTE:  The company executive that certifies the 300A must be one of the following:  owner of the company, officer of the corporation, or the highest ranking company official at the establishment.

| Penalty Calculations | | | | Adjustment Factors | | | Proposed Adjusted Penalty |
|---|---|---|---|---|---|---|---|
| Severity | Probability | Gravity | GBP | Size | Good Faith | History | |
| N Minimal | G Greater | 03 | 1000.00 | 0 | 0 | 10 | 900.00 |
| Repeat Factor | | 0 | | | | | |

| Employee Exposure: | | | | | |
|---|---|---|---|---|---|
| Occupation | : | | Employer | Dept of Interior-National Park | |
| Nr of Employees | | | Duration | over 6 mos. | Frequency | 5 day/wk, 40 hr |
| Employee Name | | | | | |
| Address | | | Phone | | |

| Instance Description: | A. Hazard    B. Equipment    C. Location    D. Injury/Illness    E. Measurements |
|---|---|

| 4. Date/Time |
|---|
| 05/04/07 9:17am |

20. Instance Description -  Describe the following:
    a) Hazards-Operation/Condition-Accident
        Regulatory Requirement - Highest Management Official failed to identify trends.
    b) Equipment
        OSHA 300A 2003
    c) Location

d) Injury/Illness
e) Measurements

| 21. Photo Number | Location on Video |
|---|---|
|  |  |

23. Employer Knowledge :The Safety Manager completed log and certified.  James G. Glenn signed the document.

24. Comments (Employer, Employee, Closing Conference) :

25. Other Employer Information :

| 26. Classification: | | | | |
|---|---|---|---|---|
| Serious | Knowledge | S or O | Repeat? | Willful? |
| No | Yes | O | No | No |

| First Repeat | Second Repeat | Repeat Penalty |
|---|---|---|
|  |  |  |

| Event Date | Event Code | Action Code | Citation Type | Penalty | Abate Date | Final Order |
|---|---|---|---|---|---|---|
|  | Z Add transaction | A Add | O Other | 900.00 |  |  |

U.S. Department of Labor          Occupational Safety and Health Administration
                                  Mobile Area District Office
                                  1141 Montlimar ... ... ...
                                  Mobile, AL 36609



7C

Dear    7C


In response to your report of alleged hazardous working conditions and/or violations of 29 CFR Part 1960 citable program elements at Department of Interior- National Historic Site, Tuskegee Institute-1600 Bus Scout Circle, Tuskegee, AL 36088, the Occupational Safety and Health Administration (OSHA) has conducted a workplace inspection. The inspection was completed on 05/07/07.

We found that employees were not provided with adequate personal protective equipment for the level of exposure this did not violate OSHA standards and/or citable program elements.

We also found that the employer failed to conduct employee exposure monitoring for lead and arsenic, failed to provide employees with material safety data sheets, and adequate training on health hazards of working with lead and arsenic. This failure violated OSHA standards and/or citable program elements. Therefore, a Notice of Unsafe and Unhealthful Working Conditions (Notice) was sent to your establishment official stating that violations identified by OSHA must be corrected. The Notice (enclosed) reflects the dates by which the violations must be corrected. The contents of the Notice must be posted near the violations(s) for three working days or until the violation(s) are abated, whichever is later.

If you do not agree that the conditions(s) your reported have been satisfactory investigated or cited, please contact us within 15 calendar days and request a review of the complaint.

Thank you for your concern about workplace safety and health.

Sincerely,

for Ken Nishiyama Atha
Area Director

Enclosure



Air Sampling Worksheet    **U.S. Department of Labor**
Occupational Safety and Health Administration

May 8, 2007 10:53am

| OD | Date | Reporting ID 0418600 | Inspection Number 310772330 | | Sampling Number    434859955 |
|---|---|---|---|---|---|

| Establishment Name Department of Interior-National Historic Site | Sampling Date 05/07/07 | Shipping Date 05/08/07 |
|---|---|---|

| Person Performing Sampling (Signature)    *TC* | Print Last Name *C* | CSHO ID    *TC* |
|---|---|---|

| Employee (Name, Address, Telephone Number)    *Area Climate Controlled Storage Vault* | Exposure Information | a. Number 1 | b. Duration |
|---|---|---|---|
| | Frequency | **8 hrs/day, 5 days/wk** | |

| | Weather Conditions *indoors* | Photo(s) (Y) *#1 w/ employee* |
|---|---|---|
| Job Title    **Park Guide** | Occupation Code | |

| PPE (Type and Effectiveness) *cotton gloves* | Pump Checks and Adjustments *hourly 9:00  11:00  3:00  10:05  2:00* |
|---|---|

Job Description, Operation, Work Location(s), Ventilation and Controls

*Employee places specimens within designated storage lockers ( secured) for storage and security.*

*Ventilation - general*                                                                 Cont'd

Pump Number: 4    18930                    **Sampling Data**

| Lab Sample Number | | | | | |
|---|---|---|---|---|---|
| Sample Submission Number | | | 7006 0100 0003 2024 0331 | | |
| Sample Type | area | | | | |
| Sample Media | MCEF | | | | |
| Filter/Tube No. | | | | | |
| Time On/Off | 7.58 | | | | |
| | 3:55 | | | | |
| Total Time (in minutes) | 477 | | | | |
| Flow Rate ☑ l/mm  ☐ cc/min | 1.7 | | | | |
| Volume (in liters) | 811 | | | | |
| Net Sample Weight (in mg) | | | | | |
| Analyze Samples for: | Indicate Which Samples to Include in TWA | | | | |
| *arsenic, lead, barium,*  → | | | | | |
| *& strontium*  → | | | | | |

| Interference and IH Comments to Lab *none* | Supporting Samples | Chain of Custody | Initials | Date |
|---|---|---|---|---|
| | a. Blanks | Seals Intact    Y    N | | |
| | | Received in Lab | | |
| | | Received by Analyst | | |
| | b. Bulks | Analysis Complete | | |
| | | Calculation Checked | | |
| | | Supervisor Ok'd. | | |
| | | Case File Page | | of |

U.S. Postal Service
CERTIFIED MAIL RECEIPT
(Domestic Mail Only; No Insurance Coverage Provided)
For delivery information visit our website at www.usps.com.
PS Form 3800, June 2002
See Reverse for Instructions
Sent To
Street, Apt. No.; or PO Box No.
City, State, ZIP+4
Total Postage & Fees    $
Restricted Delivery Fee (Endorsement Required)
Return Receipt Fee (Endorsement Required)
Certified Fee
Postage    $
Postmark Here

OSHA-91A (Rev 6/5

Voltage Checked?
☑ Yes ☐ No

$$\frac{1707 + 1714 + 1717 + 1711 + 1713}{5} = 1707 \, cc$$

| Location/T & Alt. | | | | |
|---|---|---|---|---|
| *Site* | Flow Rate  *1709 cc* | Method ☑ Bubble ☐ PR | Initials  *TSII* | Date/Time  *05.07.07/ 7.35a* |

Sampling Calibration Records

| Location/T & Alt. | Flow Rate Calculations |
|---|---|
| *Office* | $$\frac{1789 + 1792 + 1780 + 1777 + 1768}{5} = 1781 \, cc$$ |

| Flow Rate  *1781 cc* | Initials | Date/Time  *05.08.07 / 2:35pm* |
|---|---|---|

Sampling Weight Calculation

| er No | | | | | |
|---|---|---|---|---|---|
| al Weight   (mg) | | | | | |
| al Weight   (mg) | | | | | |
| ght Gained (mg) | | | | | |
| nk Adjustment | | | | | |
| Sample Weight (mg) | | | | | |

lations and Notes



# Sampling Worksheet    ● U.S. Department of Labor
## Occupational Safety and Health Administration

May 8, 2007 10:53am

| Date | Reporting ID 0418600 | Inspection Number 310772330 | | Sampling Number    434859955 |
|------|------|------|------|------|

| Establishment Name Department of Interior-National Historic Site | | Sampling Date 05/07/07 | Shipping Date 05/08/07 |
|------|------|------|------|

| Person Performing Sampling (Signature) ⁊C | Print Last Name ⁊C | CSHO ID ⁊C |
|------|------|------|

| Employee (Name, Address, Telephone Number) *Area Climate Controlled Storage Vault* | Exposure Information | a. Number 1 | b. Duration |
|------|------|------|------|

| | Frequency    8 hrs/day, 5 days/wk |
|------|------|

| Title    **Park Guide** | Occupation Code | Weather Conditions *indoors* | Photo(s) (Y) *#1 w/employee* |
|------|------|------|------|

| PPE (Type and Effectiveness) *cotton gloves* | Pump Checks and Adjustments *hourly 9:00  11:04  3:00      10:05  2:00* |
|------|------|

| Job Description, Operation, Work Location(s), Ventilation and Controls *Employee places specimens within designated storage lockers (secured) for storage and security.* | |
|------|------|

| *Ventilation - general* | Cont'd |
|------|------|

| Pump Number:  4    18930 | **Sampling Data** |
|------|------|

| Lab Sample Number | |
|------|------|
| Sample Submission Number | 7006 0100 0003 2024 0331 |
| Sample Type | *area* |
| Sample Media | MCEF |
| Filter/Tube No. | |
| Time On/Off | 7:58 |
| | 3:55 |
| Total Time (in minutes) | 477 |
| Flow Rate ☐ l/mm  ☐ cc/min | 1.7 |
| Volume (in liters) | 811 |
| Net Sample Weight (in mg) | |
| Analyze Samples for: | Indicate Which Samples to Include in TWA |
| *arsenic, lead, barium,* → | |
| *& strontium* → | |

| Interference and IH Comments to Lab *none* | Supporting Samples | Chain of Custody | Initials | Date |
|------|------|------|------|------|
| | a. Blanks | Seals Intact    Y    N | | |
| | | Received in Lab | | |
| | | Received by Analyst | | |
| | b. Bulks | Analysis Complete | | |
| | | Calculation Checked | | |
| | | Supervisor Ok'd. | | |
| | | Case File Page | | of |

OSHA-91A (Rev. 6

Air Sampling Report    U.S. Department of Labor    Occupational Safety and Health Administration.

Page 1 of 2

| eporting ID 418600 | 2. Inspection Number 310772330 | 3. Sampling TEST | ▷ 434859955 |
|---|---|---|---|

. Establishment Name

DEPARTMENT OF INTERIOR-NATIONAL
HISTORIC SITE

| . CSHO ID ⌐C | 6. Sampling Date 07 MAY 2007 | 7. Shipping Date 08 MAY 2007 | 8.Date Result Received 07.02.07 |
|---|---|---|---|

| . Job Title aborers, except construction (8769) | | 10.Occupational Code | 11. Number Exposed |
|---|---|---|---|

2. Frequency of Exposure

xposure Summary

| 14. ubstance Code | 15. Rqstd | 16. Smpl Type | 17.Exp Type | 18.Exp Level | 19. Units | 20. PEL | 21. Adj | 22. Severity | 23. Citation information | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | No Cit | PTA | Over Exp | Eng | PPE | Trng | Med | OTH |
| 0260 | Y | A | T | 0.00000 | M | 0.010 | 0 | | | | | | | | |
| 1591 | Y | A | T | 0.00000 | M | 0.050 | 0 | | | | | | | | |

WA calculated on actual time sampled
he I. H. is free to make changes on the Form 91B and submit them directly to IMIS

| 26.Analyst's Comments    OSHA ID-105 (Analytical Method) | 27.Chain of Custody | Init. | Date |
|---|---|---|---|
| | a. Seals Intact | Y | |
| Reporting limits for air samples Arsenic 0.5ug | b. Rec'd In Lab | LLD | 11 MAY 2007 |
| ead  5 ug | c. Rec'd by Anal. | DE | 15 JUN 2007 |
| .or wipes multiply these limits by 2 | d. Anal. Completed | DE | 22 JUN 2007 |
| Samples analyzed using ICP-MS | e. Calc. Checked | ALW | 22 JUN 2007 |
| | f. Supr. OK'd | JR | 26 JUN 2007 |

28 Submission
number

9 Lab Sample No.  D30726
Minutes/Type)    477  A

| 30. Analyte | 31. Analysis Results/ 32. Sample included in calculations of |
|---|---|

0260 Arsenic,
    Inorganic    **M**    ND

1591 Lead,
    Inorganic (as
    Pb)    **M**    ND

Because the results for air samples are used in further calculations, the number of figures reported in section 31 may not reflect the actual precision of the analysis.
Calculated confidence limits (UCL & LCL) should be rounded to no more than three significant figures.
The precision of analysis for wipe samples and for bulk material samples justify rounding results to no more than two significant figures.

The Sampling and Analytical Error (SAE) is the current value for the specific chemical(s) and should be used for the calculations.
Blank values are reported for reference only. Appropriate blank corrections have been applied to the samples by the Salt Lake Technical Center. Blank results are less than
the reporting limit(s) unless otherwise noted.

| 3. Analyte Code | SAE Value |
|---|---|
| 0260 | 0.0905 |
| 1591 | 0.0953 |

ampling Number:    434859955

Air Sampling Report    U.S. Department of Labor    Occupational Safety and Health Administration.

Page 2 of 2

| | | | |
|---|---|---|---|
| | MILLIGRAMS PER LITER (URINE) | D | MICROGRAMS PER DECILITER (BLOOD) |
| | PICO CURIES PER LITER (RADON GAS) | P | PARTS PER MILLION |
| | FIBERS PER CUBIC CENTIMETER | X | MICROGRAMS |
| | MILLIGRAMS PER CUBIC METER | % | PERCENT |
| | MILLIGRAMS | E | FIBERS PER MM2 |
| | NONE | C | MILLION PARTICLES PER CUBIC FOOT (MPPCF) |

BM/S  Bar Meters per Second

ND  The results are below the detection limits.

Analyte codes are chosen by the laboratory. The I. H. should review them for applicability. if there are any
questions call the laboratory for appropriate analyte codes (ie. ICP uses fume analyte codes when the IH may
have sampled for dust).

# ir Sampling Worksheet ● U.S. Department of Labor

**Occupational Safety and Health Administration**

May 8, 2007 10:45am    07-003

| OD | Date | Reporting ID 0418600 | Inspection Number 310772330 | Sampling Number | 434859948 |
|---|---|---|---|---|---|

| Establishment Name: Department of Interior-National Historic Site | Sampling Date 05/07/07 | Shipping Date 05/08/07 |
|---|---|---|

| Person Performing Sampling (Signature)   7C | Print Last Name   7C | CSHO ID  7C |
|---|---|---|

| Employee (Name, Address, Telephone Number) | Exposure Information | a. Number 1 | b. Duration since 2000 |
|---|---|---|---|
| cu              ph. | Frequency | 8 hrs/day, 5 days/wk | |

| Job Title **Park Guide** | Occupation Code | Weather Conditions partly cloudy 60-80°F | Photo(s) # 5 @ desk |
|---|---|---|---|

| PPE (Type and Effectiveness) Cotton gloves | | Pump Checks and Adjustments morning 8:55  11:00  3:00           4:55    1:00 |
|---|---|---|

Job Description, Operation, Work Location(s), Ventilation and Controls

Employee works between 3 sites maintaining historical displays by performing job duties, such as (but not limited to), cleaning, dusting, and display arrangements.

ventilation - general                                                                    Cont'd

Pump Number:  2   18918                          **Sampling Data**

| Lab Sample Number | | | | | |
|---|---|---|---|---|---|
| Sample Submission Number | | | | | |
| Sample Type | personal | | | | |
| Sample Media | MCEF | | | | |
| Filter/Tube No. | | | | | |
| Time On/Off | 7.56 | 1:04 | | | |
| | 12:06 | 3.51 | | | |
| Total Time (in minutes) | 250 | 167 | | | |
| Flow Rate ☑ l/mm ☐ cc/min | 1.7 | 1.7 | | | |
| Volume (in liters) | 4.25 | 284 | | | |
| Net Sample Weight (in mg) | | | | | |
| Analyze Samples for: | Indicate Which Samples to Include in TWA, Ceiling, etc. Calculations | | | | |
| | | | | | |
| | | | | | |

| Interference and IH Comments to Lab | Supporting Samples | Chain of Custody | Initials | Date |
|---|---|---|---|---|
| | a. Blanks | Seals Intact        Y        N | | |
| | | Received in Lab | | |
| | | Received by Analyst | | |
| | b. Bulks | Analysis Complete | | |
| | | Calculation Checked | | |
| | | Supervisor Ok'd. | | |
| | | Case File Page | | of |

OSHA-91A  (Rev.6/

Air Sampling Report   U.S. Department of Labor   Occupational Safety and Health Administration.

Page 1 of 2

| orting ID 418600 | 2. Inspection Number 310772330 | 3. Sampling TEST | 434859948 |

Establishment Name

DEPARTMENT OF INTERIOR-NATIONAL HISTORIC SITE

| CSHO ID | 6. Sampling Date | 7. Shipping Date | 8.Date Result Received |
| ⁷ ᶜ | 07 MAY 2007 | 08 MAY 2007 | 07.02.07 |

| Job Title | | 10.Occupational Code | 11. Number Exposed |
| borers, except construction (8769) | | | |

. Frequency of Exposure

:posure Summary

| 14. ubstance Code | 15. Rqstd | 16. Smpl Type | 17.Exp Type | 18.Exp Level | 19. Units | 20. PEL | 21. Adj | 22. Severity | 23. Citation information | | | | | | | |
| | | | | | | | | | No Cit | PTA | Over Exp | Eng | PPE | Trng | Med | OTH |
| 0260 | Y | P | T | 0.00000 | M | 0.010 | 0 | | | | | | | | | |
| 1591 | Y | P | T | 0.00000 | M | 0.050 | 0 | | | | | | | | | |

WA calculated on actual time sampled
ne I. H. is free to make changes on the Form 91B and submit them directly to IMIS

| 6.Analyst's Comments Analytical Method) | OSHA ID-105 | 27.Chain of Custody a. Seals Intact | Init. | Date Y |
| | | b. Rec'd In Lab | LLD | 11 MAY 2007 |
| Reporting limits for air samples Arsenic 0.5ug nd 5 ug | | c. Rec'd by Anal. | DE | 15 JUN 2007 |
| tor wipes multiply these limits by 2 | | d. Anal. Completed | DE | 22 JUN 2007 |
| Samples analyzed using ICP-MS | | e. Calc. Checked | ALW | 22 JUN 2007 |
| | | f. Supr. OK'd | JR | 26 JUN 2007 |

?8 Submission
number

9 Lab Sample No.  D30727
Minutes/Type)  417  P

| 30. Analyte | 31. Analysis Results/ 32. Sample included in calculations of |

0260 Arsenic, Inorganic    M    ND

1591 Lead, Inorganic (as Pb)    M    ND

Because the results for air samples are used in further calculations, the number of figures reported in section 31 may not reflect the actual precision of the analysis.
Calculated confidence limits (UCL & LCL) should be rounded to no more than three significant figures.
The precision of analysis for wipe samples and for bulk material samples justify rounding results to no more than two significant figures.

The Sampling and Analytical Error (SAE) is the current value for the specific chemical(s) and should be used for the calculations.
Blank values are reported for reference only. Appropriate blank corrections have been applied to the samples by the Salt Lake Technical Center. Blank results are less than the reporting limit(s) unless otherwise noted.

3. Analyte Code  SAE Value
   0260        0.0905
   1591        0.0953

Case 3:08-cv-00069-WK WTFM   Document 43-4   Filed 09 02 2008   Page 7 of 51

Air Sampling Report   U.S. Department of Labor   Occupational Safety and Health Administration.

Page 2 of 2

| | | |
|---|---|---|
| MILLIGRAMS PER LITER (URINE) | D | MICROGRAMS PER DECILITER (BLOOD) |
| PICO CURIES PER LITER (RADON GAS) | P | PARTS PER MILLION |
| FIBERS PER CUBIC CENTIMETER | X | MICROGRAMS |
| MILLIGRAMS PER CUBIC METER | % | PERCENT |
| MILLIGRAMS | E | FIBERS PER MM2 |
| NONE | G | MILLION PARTICLES PER CUBIC FOOT (MPPCF) |

M/S  Bar Meters per Second

(D  The results are below the detection limits.

nalyte codes are chosen by the laboratory. The I. H. should review them for applicability. if there are any
uestions call the laboratory for appropriate analyte codes (ie. ICP uses fume analyte codes when the IH may
ave sampled for dust).

ir **Sampling Worksheet**

Apr 30, 2007 2:46pm   01-002

**U.S. Department** ● **Labor**
Occupational Safety and ● ealth Administration

| OD | Date | Reporting ID<br>0418600 | Inspection Number<br>310772330 | Sampling<br>Number 434859906 |
|---|---|---|---|---|

| hment Name | | Sampling Date<br>05.07.07 | Shipping Date<br>05.08.07 |
|---|---|---|---|
| a pt. of interior - National Historic Site | | | |

| son Performing Sampling (Signature) | | Print Last Name | CSHO ID |
|---|---|---|---|
| | 7C | 7C | 7C |

| nployee (Name, Address, Telephone Number) | Exposure Information | a. Number | b. Duration |
|---|---|---|---|
| Area  Storage  Holding | | 1 | since 2000 |

Frequency 8 hrs / day,  5 days / week

| Weather Conditions<br>partly cloudy<br>60° - 80°F | Photo(s) Y  #6<br>w/ employee |
|---|---|

| Title<br>Park Guide | Occupation Code | |
|---|---|---|

| E (Type and Effectiveness)<br>cotton gloves | Pump Checks and Adjustments<br>hourly 9:00  11:05  3:05<br>3:05  2:05 |
|---|---|

Description, Operation, Work Location(s), Ventilation and Controls

Employee places specimens here for preparation for shipping or storage.  General tools are used.

ventilation - general                                                Cont'd

ump Number:  3        18919        **Sampling Data**

| ab Sample Number | | | | | | |
|---|---|---|---|---|---|---|
| ample Submission umber | | | | | | |
| ample Type | area | | | | | |
| mple Media | MCEF | | | | | |
| lter/Tube No. | | | | | | |
| ime On/Off | 7:59 | | | | | |
| | 3:55 | | | | | |
| otal Time n minutes) | 476 | | | | | |
| ow Rate fl/mm  ☐ cc/min | 1.7 | | | | | |
| olume n liters) | 809 | | | | | |
| et Sample Weight n mg) | | | | | | |
| nalyze Samples for: | Indicate Which Samples to Include in TWA, Ceiling, etc. Calculations | | | | | |
| rsenic, lead, barium, ... | → | | | | | |
| strontium | → | | | | | |

| erference and IH Comments to Lab | Supporting Samples | Chain of Custody | Initials | Date |
|---|---|---|---|---|
| rsenic, lead, barium, & | a. Blanks | Seals Intact | Y   N | |
| strontium  none | | Received in Lab | | |
| | | Received by Analyst | | |
| | b. Bulks | Analysis Complete | | |
| | | Calculation Checked | | |
| | | Supervisor Ok'd. | | |
| | | Case File Page | | of |

OSHA-91A  (Rev.6/97

Air Sampling Report    U.S. Department of Labor    Occupational Safety and Health Administration.

Page 1 of 2

| 1. Reporting ID 418600 | 2. Inspection Number 310772330 | 3. Sampling TEST | ▷ 434859906 |

4. Establishment Name

DEPARTMENT OF INTERIOR-NATIONAL
HISTORIC SITE

| 5. CSHO ID | 6. Sampling Date | 7. Shipping Date | 8.Date Result Received |
| JC | 07 MAY 2007 | 08 MAY 2007 | 07.02.07 |

| 9. Job Title | | 10.Occupational Code | 11. Number Exposed |
| Laborers, except construction (8769) | | | |

12. Frequency of Exposure

Exposure Summary

| 14. Substance Code | 15. Rqstd | 16. Smpl Type | 17.Exp Type | 18.Exp Level | 19. Units | 20. PEL | 21. Adj | 22. Severity | 23. Citation information |||||||
| | | | | | | | | | No Cit | PTA | Over Exp | Eng | PPE | Trng | Med | OTH |
| 0260 | Y | P | T | 0.00000 | M | 0.010 | 0 | | | | | | | | | |
| 1591 | Y | P | T | 0.00000 | M | 0.050 | 0 | | | | | | | | | |

TWA calculated on actual time sampled
The I. H. is free to make changes on the Form 91B and submit them directly to IMIS

Analyst's Comments    OSHA ID-105
(Analytical Method)

Reporting limits for air samples
Arsenic 0.5ug
Lead  5 ug

for wipes multiply these limits by 2

Samples analyzed using ICP-MS

| 27.Chain of Custody | Init. | Date |
| a. Seals Intact | | Y |
| b. Rec'd In Lab | LLD | 11 MAY 2007 |
| c. Rec'd by Anal. | DE | 15 JUN 2007 |
| d. Anal. Completed | DE | 22 JUN 2007 |
| e. Calc. Checked | ALW | 22 JUN 2007 |
| f. Supr. OK'd | JR | 26 JUN 2007 |

28 Submission number

29 Lab Sample No.  D30728
Minutes/Type)    476   P

| 30. Analyte | 31. Analysis Results/ | 32. Sample included in calculations of |
| 0260 Arsenic, Inorganic | M    ND | |
| 1591 Lead, Inorganic (as Pb) | M    ND | |

Because the results for air samples are used in further calculations, the number of figures reported in section 31 may not reflect the actual precision of the analysis.
Calculated confidence limits (UCL & LCL) should be rounded to no more than three significant figures.
The precision of analysis for wipe samples and for bulk material samples justify rounding results to no more than two significant figures.

The Sampling and Analytical Error (SAE) is the current value for the specific chemical(s) and should be used for the calculations.
k values are reported for reference only. Appropriate blank corrections have been applied to the samples by the Salt Lake Technical Center. Blank results are less than the reporting limit(s) unless otherwise noted.

| 3. Analyte Code | SAE Value |
| 0260 | 0.0905 |
| 1591 | 0.0953 |

Air Sampling Report    U.S. Department of Labor    Occupational Safety and Health Administration.

Page 2 of 2

| | | |
|---|---|---|
| MILLIGRAMS PER LITER (URINE) | D | MICROGRAMS PER DECILITER (BLOOD) |
| PICO CURIES PER LITER (RADON GAS) | P | PARTS PER MILLION |
| FIBERS PER CUBIC CENTIMETER | X | MICROGRAMS |
| MILLIGRAMS PER CUBIC METER | % | PERCENT |
| MILLIGRAMS | E | FIBERS PER MM2 |
| NONE | G | MILLION PARTICLES PER CUBIC FOOT (MPPCF) |

/S  Bar Meters per Second

) The results are below the detection limits.

alyte codes are chosen by the laboratory. The I. H. should review them for applicability. if there are any
estions call the laboratory for appropriate analyte codes (ie. ICP uses fume analyte codes when the IH may
ve sampled for dust).

4

-------------------- page(s)

# Were withheld

# EXEMPTION 5

OSHA's Form 300A

# Summary of Work-Related Injuries and Illnesses

Year 20 **0 3**

U.S. Department of Labor
Occupational Safety and Health Administration

Form approved OMB no. 1218-01

*All establishments covered by Part 1904 must complete this Summary page, even if no work-related injuries or illnesses occurred during the year. Remember to review the Log to verify that the entries are complete and accurate before completing this summary.*

*Using the Log, count the individual entries you made for each category. Then write the totals below, making sure you've added the entries from every page of the Log. If you had no cases, write "0."*

*Employees, former employees, and their representatives have the right to review the OSHA Form 300 in its entirety. They also have limited access to the OSHA Form 301 or its equivalent. See 29 CFR Part 1904.35, in OSHA's recordkeeping rule, for further details on the access provisions for these forms.*

## Number of Cases

| Total number of deaths | Total number of cases with days away from work | Total number of cases with job transfer or restriction | Total number of other recordable cases |
|---|---|---|---|
| *0* | *3* | *3* | *0* |
| (G) | (H) | (I) | (J) |

## Number of Days

| Total number of days of job transfer or restriction | Total number of days away from work |
|---|---|
| *120* | *48* |
| (K) | (L) |

## Injury and Illness Types

Total number of . . .
(M)

(1) Injuries          *4*

(2) Skin disorders          *0*

(3) Respiratory conditions          *0*

(4) Poisonings          *0*

(5) All other illnesses          *1*

### Establishment Information

Your establishment name **Tuskegee Institute NHS**

Street **1212 Old Montgomery Rd**

City **Tuskegee**   State **AL**   ZIP **36088**

Industry description *(e.g., Manufacture of motor truck trailers)*

**DOI / IER / NPS**

Standard Industrial Classification (SIC), if known *(e.g., SIC 3715)*

**5 6 1 2 30**

### Employment Information *(If you don't have these figures, see the Worksheet on the back of this page to estimate.)*

Annual average number of employees          **2**

Total hours worked by all employees last year          **38,000**

### Sign here

Knowingly falsifying this document may result in a fine.

I certify that I have examined this document and that to the best of my knowledge the entries are true, accurate, and complete.

**Jean S. Berry**   **Safety Manager**
Company executive          Title

**334 727-0024**   **10/15/03**
Phone          Date

**Post this Summary page from February 1 to April 30 of the year following the year covered by the form.**

Public reporting burden for this collection of information is estimated to average 50 minutes per response, including time to review the instructions, search and gather the data needed, and complete and review the collection of information. Persons are not required to respond to the collection of information unless it displays a currently valid OMB control number. If you have any comments about these estimates or any other aspects of this data collection, contact: US Department of Labor, OSHA Office of Statistics, Room N-3644, 200 Constitution Avenue, NW, Washington, DC 20210. Do not send the completed forms to this office.

OSHA's Form 300

# Log of Work-Related Injuries and Illnesses

**Attention:** This form contains information relating to employee health and must be used in a manner that protects the confidentiality of employees to the extent possible while the information is being used for occupational safety and health purposes.

Year 20**03**



**U.S. Department of Labor**
Occupational Safety and Health Administration

Form approved OMB no. 1218-0176

You must record information about every work-related death and about every work-related injury or illness that involves loss of consciousness, restricted work activity or job transfer, days away from work, or medical treatment beyond first aid. You must also record significant work-related injuries and illnesses that are diagnosed by a physician or licensed health care professional. You must also record work-related injuries and illnesses that meet any of the specific recording criteria listed in 29 CFR Part 1904.8 through 1904.12. Feel free to use two lines for a single case if you need to. You must complete an Injury and Illness Incident Report (OSHA Form 301) or equivalent form for each injury or illness recorded on this form. If you're not sure whether a case is recordable, call your local OSHA office for help.

Establishment name *Tuskegee Institute*
City *Tuskegee*    State *AL*

| (A) Case no. | (B) Employee's name | (C) Job title (e.g., Welder) | (D) Date of injury or onset of illness | (E) Where the event occurred (e.g., Loading dock north end) | (F) Describe injury or illness, parts of body affected, and object/substance that directly injured or made person ill (e.g., Second degree burns on right forearm from acetylene torch) | Death (G) | Days away from work (H) | Remained at work — Job transfer or restriction (I) | Remained at work — Other recordable cases (J) | On job transfer or restriction (K) | Away from work (L) | (M) Injury (1) | Skin disorder (2) | Respiratory condition (3) | Poisoning (4) | All other illnesses (5) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | | Worker | 4/30 | GWC Museum | Broke Lower Rt. Tibula | ☐ | ☒ | ☒ | ☐ | 120 days | 45 days | ☒ | ☐ | ☐ | ☐ | ☐ |
| 2 | | YCC | 7/29 | TYAI | Bruised Rt. Ankle | ☐ | ☐ | ☐ | ☐ | ___ days | 1 days | ☒ | ☐ | ☐ | ☐ | ☐ |
| 3 | | YCC | 7/15 | TYAI | Wasp sting | ☐ | ☒ | ☐ | ☐ | ___ days | 2 days | ☐ | ☐ | ☐ | ☐ | ☒ |
| 4 | | YCC | 6/28 | TYIN | Thorn in Arm | ☐ | ☐ | ☒ | ☐ | ___ days | ___ days | ☒ | ☐ | ☐ | ☐ | ☐ |
| 5 | | YCC | 7/28 | TYAI | Object in Eye | ☐ | ☐ | ☒ | ☐ | ___ days | ___ days | ☒ | ☐ | ☐ | ☐ | ☐ |
| | | | ___/___ month/day | | | ☐ | ☐ | ☐ | ☐ | ___ days | ___ days | ☐ | ☐ | ☐ | ☐ | ☐ |
| | | | ___/___ month/day | | | ☐ | ☐ | ☐ | ☐ | ___ days | ___ days | ☐ | ☐ | ☐ | ☐ | ☐ |
| | | | ___/___ month/day | | | ☐ | ☐ | ☐ | ☐ | ___ days | ___ days | ☐ | ☐ | ☐ | ☐ | ☐ |
| | | | ___/___ month/day | | | ☐ | ☐ | ☐ | ☐ | ___ days | ___ days | ☐ | ☐ | ☐ | ☐ | ☐ |
| | | | ___/___ month/day | | | ☐ | ☐ | ☐ | ☐ | ___ days | ___ days | ☐ | ☐ | ☐ | ☐ | ☐ |
| | | | ___/___ month/day | | | ☐ | ☐ | ☐ | ☐ | ___ days | ___ days | ☐ | ☐ | ☐ | ☐ | ☐ |
| | | | ___/___ month/day | | | ☐ | ☐ | ☐ | ☐ | ___ days | ___ days | ☐ | ☐ | ☐ | ☐ | ☐ |
| | | | ___/___ month/day | | **Page totals ➤** | | 3 | 3 | | 120 | 45 | 4 | | | | 1 |

**Identify the person** — **Describe the case** — **Classify the case** — Using these four categories, check ONLY the most serious result for each case: — Enter the number of days the injured or ill worker was: — Check the "Injury" column or choose one type of illness:

Be sure to transfer these totals to the Summary page (Form 300A) before you post it.

| | Injury (1) | Skin disorder (2) | Respiratory condition (3) | Poisoning (4) | All other illnesses (5) |

Page ___ of ___

Public reporting burden for this collection of information is estimated to average 14 minutes per response, including time to review the instructions, search and gather the data needed, and complete and review the collection of information. Persons are not required to respond to the collection of information unless it displays a currently valid OMB control number. If you have any comments about these estimates or any other aspects of this data collection, contact: US Department of Labor, OSHA Office of Statistics, Room N-3644, 200 Constitution Avenue, NW, Washington, DC 20210. Do not send the completed forms to this office.

## FY0$\underline{3}$ Log of Federal Occupational Injuries and/or Illnesses

| Case No (1) | Date of Injury (2) | Date Supervisor Notified | Date Safety Officer Notified | Employee's Name (3) | Occupation (4) | Duty Station (5) | Description of Injury Illness and Body Part Affected (6) | INJURIES | | | ILLNESSES/DISESAES | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | Fatal Cases (7) | Lost Time Cases (8) | No Lost Time Cases (9) | Fatal Cases (10) | Lost Time Cases (11) | No Lost Time Cases (12) |
| 1 | 4/30 | 4/30 | 4/30 | | NPS | TWIN | Broken Leg | | 1 | | | | |
| 2 | 7/29 | 7/29 | 7/29 | | YCC | TWIN | Bruised Ankle | | 1 | | | | |
| 3 | 7/15 | 7/15 | 7/15 | | YCC | TWIN | Sting | | | | | 1 | |
| 4 | 6/28 | 6/28 | 6/28 | | YCC | TWIN | Thorn in Arm | | | 1 | | | |
| 5 | 7/28 | 7/28 | 7/28 | | YCC | TWIN | object in eye | | | 1 | | | |
| 6 | | | | | | | | | | | | | |
| 7 | | | | | | | | | | | | | |
| 8 | | | | | | | | | | | | | |
| 9 | | | | | | | | | | | | | |
| 10 | | | | | | | | | | | | | |
| 11 | | | | | | | | | | | | | |
| 12 | | | | | | | | | | | | | |
| 13 | | | | | | | | | | | | | |
| 14 | | | | | | | | | | | | | |
| 15 | | | | | | | | | | | | | |
| 16 | | | | | | | | | | | | | |
| 17 | | | | | | | | | | | | | |
| 18 | | | | | | | | | | | | | |
| 19 | | | | | | | | | | | | | |
| 20 | | | | | | | | | | | | | |
| 21 | | | | | | | | | | | | | |
| 22 | | | | | | | | | | | | | |
| 23 | | | | | | | | | | | | | |
| 24 | | | | | | | | | | | | | |
| 25 | | | | | | | | | | | | | |
| 26 | | | | | | | | | | | | | |
| TOTALS {If used as annual summary in compliance with 29 CFR 1960.69(b)} | | | | | | | | | 2 | 2 | | 1 | |

Electronic Copy Available from the Regional Safety Office.

Thu Apr 26 2007 3:02pm

Department of Interior-National Historic Site

Complaint Nr. 205251226

| Has this condition been brought to the attention of: | Employer |
|---|---|
| ase Indicate Your Desire: | Do NOT reveal my name to the Employer |
| The Undersigned believes that a violation of an Occupational Safety or Health standard exists or which is a job safety or health hazard at the establishment named on this form. | A. Employee |

| Complainant Name | ⌐C | | | | Telephone | ⌐C |
|---|---|---|---|---|---|---|
| Address(Street,City,State,Zip) | ⌐C | | | | | |
| Signature | ⌐C | | | | Date | |

If you are an authorized representative of employees affected by this complaint, please state the name of the organization that you represent and your title:

Organization Name: | Your Title:

**OFFICIAL USE ONLY:**

| Identification | Reporting ID | 0418600 | Previous Activity | | 0 | | Opt. Number | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Establishment Name Change? ☐Yes ☐No | | Site Address Change? ☐Yes ☐No | | Employer ID | | | | City Code | County Code |
| | | | | | | | | | 3070 | 087 |
| Receipt Information | Received By ⌐C | | Send OSHA-7? ☐ Yes ☐ No | | Date: 04/26/07 Time:     AM  PM | | | Supervisor(s) Assigned 19187 | | |
| Industry & Ownership | A. Private Sector | | | | | | | | | |
| Complaint Evaluation | Evaluated By  ⌐C | | | Subject/Severity | | | | | | |
| | Is this a Valid Complaint? -- Yes | | | **Health-Serious** | | | | | | |
| | Formality -  **Formal** | | | | | | | | | |
| | Migrant Farmworker Camp? -- | | | | | | | | | |
| Send Letter | Type | | | | | Date Letter Sent | Date Response Due | | | |
| Received Letter | Type | | | | Date Letter Received | Evaluation | | Abatement Date | | |
| | **B. Signed Osha-7 Returned** | | | | 04/26/07 | | | | | |
| Complaint Action | Inspection Planned? Yes | If Yes, Priority:  8 | | If No, Reason: | | | | | | |
| | Transfer To (Name) | | | Transfer Date | | | | | | |
| | Transfer To Category | | | | | | | | | |
| Strategic Initiatives | | | | | | | | | | |
| National Emphasis | | | | | | | | | | |
| Local Emphasis | | | | | | | | | | |
| Optional Information | Type | ID | | | Value | | | | | |
| Close omplaint | | | | | | | | | | |

COMMENTS

OSHA-7(Rev. 7/02)



...ent of Labor
...fety and Health Administration

...lleged Safety or Health Hazards

Complaint Number

Tuskegee Institute NHS

ent Name

Site Code: 1600 Boy Scout Circle    Site FAX: Tuskegee, AL 36088
Site Phone: (334)727-4321    Mail FAX: (334)727-6390
Mail Phone: 1212 W. Montgomery Rd.    Telephone

ddress

Superintendent Catherine Light - National Park Service
Department of Interior

ment Official

of Business

...ARD DESCRIPTION/LOCATION. Describe briefly the hazard(s) which you believe exist. Include the approximate number of employees
...ed to or threatened by each hazard. Specify the particular building or worksite where the alleged violation exists.

Physical exposure to one employee and assistants to hazardous chemicals including strontium sulfate and Barium Carbonate and other geological specimens at the curatorial storage facility at Tuskegee Institute NHS. Also, major off-gassing of specimens.

Please view attached documentation.

7C

...lth Committee

Telephone    7C

Has this condi...
attention of:...
Please Indica...

The Undersig...
an Occupation...
exists which...
at the establishment named on this form.

Date    4-24-0

7C

Complainant Name

Address(Street,City,State,Zip)    ...please state the name of the organization that

...representative of employees affected by this complaint,

Signature    7C

If you are an authorized representative of employees affected by this complaint, please state the name of the organization that
represent and your title:    Your Title:    7C
Organization Name:

2

OSH...



**8**

**---------------- page(s)**

# Were withheld

# EXEMPTION 5

Employee Appraisal Handbook                                                                        Appendix 8

. art E:  Critical Elements  and Performance Standards:  *List below each of the employee's critical elements (at least one, but no more than 5) and their corresponding performance standards.  If Benchmark Standards are used, indicate "Benchmark Standards are attached" in the space below, and ensure they are attached to this form.*

| Critical Element 3: | Housekeeping Program: Best method to maintain collections through the housekeeping program.<br><br>NPS Strategic Plan Goals IA6 |
|---|---|
| **Performance Standards** ||
| Exceptional | Refer to attached benchmark and in addition: The historic structures are cleaned twice daily using new and innovative curatorial methods according to developed schedule.  100% of the cleaning all facilities is done according to Conserve-O-Gram 2/21.  100% of the wooden objects in the collection are cleaned annually using methods prescribed in the Conserve-O-Gram; 7/1, 7/5.  100% of the hazard are identified through Hazard Communication Standards outlined in Conserve-O-Gram 2/1, which includes development of Material Safety Data Sheets for 100% of Curatorial activities. |
| Superior | Refer to attached benchmark and in addition: The historic structures are cleaned daily using new and innovative curatorial methods according to developed schedule.  95% of the cleaning all facilities is done according to Conserve-O-Gram 2/21.  95% of the wooden objects in are cleaned annually using methods prescribed in the Conserve-O-Gram; 7/1, 7/5.  95% of the hazard are identified through Hazard Communication Standards outlined in Conserve-O-Gram 2/1, which includes development of Material Safety Data Sheets for 95% of Curatorial activities. |
| Fully Successful | Refer to attached benchmark and in addition:  The historic structures are cleaned weekly using new and innovative curatorial methods according to developed schedule.  950% of the cleaning all facilities is done according to Conserve-O-Gram 2/21.  100% of the wooden objects in the collection are cleaned annually using methods prescribed in the Conserve-O-Gram; 7/1, 7/5.  90% of the hazard are identified through Hazard Communication Standards outlined in Conserve-O-Gram 2/1, which includes development of Material Safety Data Sheets for 90% of Curatorial activities. |
| Minimally Successful | Refer to attached benchmark and in addition:  The historic structures are cleaned monthly using new and innovative curatorial methods according to developed schedule.  80% of the cleaning all facilities is done according to Conserve-O-Gram 2/21.  80% of the wooden objects in the collection are cleaned annually using methods prescribed in the Conserve-O-Gram; 7/1, 7/5.  80% of the hazard are identified through Hazard Communication Standards outlined in Conserve-O-Gram 2/1, which includes development of Material Safety Data Sheets for 80% of Curatorial activities. |
| Unsatisfactory | Refer to attached benchmark and in addition:  The historic structures are not cleaned monthly using new and innovative curatorial methods according to developed schedule.  80% or less of the cleaning all facilities is done according to Conserve-O-Gram; 7/1, 7/5.  80% or less of the wooden objects in the collection are cleaned annually using methods prescribed in the Conserve-O-Gram; 7/1, 7/5.  80% or less of the hazard are identified through Hazard Communication Standards outlined in Conserve-O-Gram 2/1, which includes development of 80% or less Material Safety Data Sheets for Curatorial activities. |

**Narrative Summary**

Describe the employee's performance for each critical element.  A narrative summary must be written for each element assigned a rating of Exceptional, Minimally Successful, or Unsatisfactory.

Rating for Critical Element 3:

☐ **Exceptional-5**    ☑ **Superior-4**    ☐ **Fully Successful-3**    ☐ **Minimally Successful-2**    ☐ **Unsatisfactory-0**

# OCCUPATIONAL SAFETY AND HEALTH ADMINISTRATION OSHA 1A
## General Industry Narrative

**COMPANY NAME:**

**Type of Business:** *Government Agency*

**Employer Representatives Contacted**  *yes*
(I= Credentials Presented C= Closing Conference O= Opening Conference)

Name: *Bobby Henderson , Wendell Echols*
Title: *vice president*
Function:
WA: *no*

## Names and Addresses of All Organized Employee Groups
Name:
Local Number: *AFGE #110*
Phone: *(334) 727-0550 ext. 3454    cell (334) 421-4058*
Street Address: *2400 Hospital Rd.*
City: *Tuskegee*
State: *al*
Zip: *36083*

## Authorized Representatives of Employees
Name: *AFGE #110*
Phone: *334 727-0552*
Organization:
Title:
Street Address:
City:
State:
Zip:
WA: *no*

**Records ("X" if reviewed and entered into NCR)** *none*
OSHA 300:
OSHA 300A:
OSHA 301 or equivalent:

**Employee Information:**

**Name:**              (EE# )
**Phone:**
**Address:**

Recordkeeping Program:

Compliance Program:

Engineering Controls:

Regulated Areas:

Emergency Procedures:

Written Compliance Plan:

Hygiene Facilities:

**Closing Conference:**

**Possible Employer Defense:**

## PENALTY REDUCTIONS

| SIZE | GOOD FAITH | HISTORY |
|---|---|---|
| 1-25   Employees =   60% | 25%-good programs | 10%-No serious, willful |
| 26-100  Employees =  40% | 15%-some deficiencies | or repeat in last 3 years |
| 101-250 Employees = 20% | 0%  poor or no programs | |

SIZE REDUCTION  (%):

GOOD FAITH  REDUCTION  (%):
JUSTIFICATION:

HISTORY  REDUCTION   (%):
JUSTIFICATION:

TOTAL REDUCTION   (%):

Follow-up Recommended Y/N:
Reason:

ACCOMPANIED BY:

**NARRATIVE**

**Nature/Scope Inspection:**  Complaint

**Opening Conference:**  05.03.07

**Workplace Observations:**

Machine Guarding:

Hazard Communication Program: Deficiencies.    MSDS's only

Open-sided Floors:

Stairways and Ladders:

Lockout/Tagout Program:

Electrical:

Means of Egress:

PPE: Dust Mask

First Aid: all is are trained in first aid & CPR

Fire Protection: No

Hand Tools:

Confined Space Program:

Bloodborne Pathogens Program:


**IH's Discuss**

Occupational Health Program:

Monitoring Program:

Medical Surveillance Program:

Education and Training Program:

8

------------------ page(s)

Were withheld

EXEMPTION 5





--------------- page(s)

Were withheld

EXEMPTION 5

07-002      Directions to Site

left follow 51 around to right   left @ BP station   1st red light right (old montgomery rd)
follow to school   2nd light franklin rd   right   dog scoot is 4th left turn

— right on franklin rd  go to light  make a left   and bear to left,

07-60-?     05.03.07

photos                                                             time

#1   lead test done in Museum Storage Cabinet #5    lead test positive light print   2:36p

#2   wipe test area in MSC #5    (TS1)                                 2:40p

#3   over over view of wipe test (TS1) in MSC#5                   2:42p

#4   wipe test area in MSC #5   (TS 2)                              2:55p

5.08.07    @ 1:35pm talked with   7C       concerning her exam records being received by Superintendent Light and Chief interpreter Brandenburg and dates she should receive her exposure notices ( May 31 - June 1).  TELEPHONE CONVERSATION

5.10.07    Spoke w/ 7C   via Telephone @ 11:35 am

Performed the Field Museum study report in file          7C

415 # 734859948

A3014  07-002

05.07.07  cont. on-site photos

#8  wpa sample of domestic fowl in GW. Carver Museum

07-002

05.07.07  Wipe Sample taken in GW. Carver Museum        73 03

11.10 cm

photo #8

#9   used test posture from Fowl mount @ GW Carver Museum

#10  Fowl Mount @ GW Carver Museum

#11  Dirty HVAC register in the Interpretive Rangers Office Space

#2

5.07.07    Pre Calibration

7.24 am

pump # 18918

$$\frac{1708 + 1710 + 1705 + 1712 + 1707}{5} = 1708$$

AA

A TS 12

time on

time off

flow rate 1.7

volume

ph.

Hell @ Farheyes

I spend an hour and a half doing rounds and the rest of the day is here.

#3                    area Sample — Storage Holding

05·07·07  #18919

Site time  7·29am

Pre Calibration      $\frac{1687 + 1802 + 1780 + 1788 + 1768}{5}$ = 1765

AA _                                                         pole #6
                                                             u in storage holding

time on  7:59
time off  3:55

1:26 OK

                                                             Sins 5day/wk
                                                                     7 is
✓⟹  potable H₂O   1910.141(b)(1)(i)  no drinking H₂O @ maintenance    20 days
✗  ?  toilet facilities  1910.141(c)(1)(i)                           30 days

.04   ? 1.  if determination of chemicals exist on site
      ? 2.    "           "        "      "     "
⟹  3  1910.1200(g)(1) no MSDS for arsenic/lead, barium sulfate? & strontium sulfate?   carbonate
⟹  4  1910.1200(h)(3) Training on Haz Comm.  lead/arsenic
      or 1910.1025(l)  training on lead

?  1910.1025(d)(8) initial monitoring   (d)(3)(c) employee complaints of symptom attributable to lead exposure
?  1910.1000(a)(1)  arsenic & barium
?  1910.1000(e)  engineering controls for arsenic & barium
?  1910.1025(c)(1)  overexposure to lead
?  1910.1025(e)(1)  engineering controls

✓⟹  1910.141(d)(2)(iii)  no hand soap for 4 lavatories in E.W. Carver Museum  5
                          cleaning the HVAC ducts  30 days      75  can not site
✗⟹  No OSHA poster @   (G)                              abatement 20 days  we do not
1904. ✓   no 300 reon for  2006, 2005, 2004.      lead     2003     30 days      site

07-002

#4          Area Sample    Museum Storage Unit #1          Climate Controle

pump# 18920

05.07.07   Pre Calibration

time 7.35am

$$\frac{1708 + 1713 + 1711 + 1709 + 1707}{5} = 1709$$

photo #7

is in storage

AA

time on  7:58

time off  3:55

1:37 on

item 3      1910.1018 (e)(2)   initial monitoring for arsenic

item 4      need to write up  1910.1025 (d)(3)(c)  employee complaint of symptoms attributable to exposure to lead.

item 5      1910.1025 (l)(i)(i)  no training on lead

1910.1025 (

19

07002                inspection # 310772330

NESA                              SIC 8412              Robert Kustin - work supervisor

— medical release forms        primary NAICS 712120    Tyrone Brandyburg - chief of interpretation
                                                        Catherine Light - Superintendent

Department of the Interior - National Historic Site
Tuskegee Institute
1600 Boy Scout Cir.
Tuskegee, AL 36088
ph.
tax ID

inorganic arsenic 1910.1018    action level $5\mu g/m^3$, PEL $10\mu g/m^3$
barium carbonate 1910.1000        0.5 $mg/m^3$
strontium sulfate

? monitoring, initial determination, haz. comm. prog., Taxidermy collection- tested positive for As
— swab samples taken by Tina Dessler
* — storage location of specimens in question
  need to see PPE purchased (respirator, gloves - nitrile or neoprene), apron/lab coat, safety glasses,
    arsenic test kit, safety sign dated 04.18.07
    completion of training 05.04.07 PPE & 05.31.07 safety - authorities, roles, & responsibilities
    course codes 1413 & 1338 respectively, 06.11.07 safety USGS Industrial Hygiene Program Source code B

⇒ symptoms weight loss, nausea & diarrhea alternating with constipation; pigmentation and eruption
  of the skin, loss of hair, & peripheral neuritis.
    Chronic hepatitis & cirrhosis
    numbness and parasthenia of "glove & stocking" distribution
  — horizontal white lines (strictions) on fingernails and toenails
    polyneuritis

8:15 - 4.45      80-1 museum PS rep.

05.04.07  Opening Conf                @ 9:17 am                    shift times 7:30am - 4:00 pm  Public
        Catherine Light - superintendent
        Tyrone Brandyburg - Chief of Interpretation
        Shirley Streater - Administrative Officer
        Andrew Collins - Facility Manager

   — no 2006, 2005, 2004  300 log    obtained copies
      strontium sulfate & barium carbonate are not on the artifacts
      lead arsenic

      training completed — see certificates
        We did this after the fact, once she notified us.   C. Light


      Closing conf.                   go to web page for copies of any standard
    — go over citations
    — recommend
    — signage  → lead

------------------- page(s)

## Were withheld

## EXEMPTION 5

# FAMILY PRACTICE

⌐C

⌐C

Telephone: (334)
Fax: (334)

March 30, 2007

Re: ⌐C

To Whom It May Concern:

The above referenced patient contacted my office on Tuesday 03/20/2007 and Thursday 03/22/2007 regarding being tested for a heavy metal screening (includes arsenic). Monday 03/26/2007 ⌐C called our office to find out about the screenings. I informed the patient the test would not be covered by her insurance and the cost of the test would be approximately five hundred dollars.

Should you need additional information, please do not hesitate to call.

Sincerely,

⌐C

Cc: file

GS/na

Report Request

May 7, 2007

OSHA
Attn:      ⌐ C
1141 Montlimar Drive, Suite 1006
Mobile, Alabama 36609

Dear      ⌐ C

I would like to thank you for responding to my complaint in such a prompt manner. As per our conversation, I would like to request a copy of your report in total upon completion. I would also like to request that several copies of your report be sent to the Secretary of the Interior, the Director of the National Park Service, and the Southeast Regional Director.

I believe it is imperative that safety and health issues be brought to the attention of individuals that can enforce issues of compliance. As you have stated all individuals have the right to a safe workplace.

Again, thank you for your prompt response and I look forward to hearing from you in the near future.

Sincerely,

⌐ C

⌐ C

cc: addresses of officials

Department of Interior
Dirk Kempthorne, Secretary of the Interior
1849 C Street N.W.
Washington, D.C. 20240

Department of Interior
Mary Bomar, Director of the National Park Service
1849 C Street N.W.
Washington, D.C. 20240

National Park Service
Patricia Hooks, Regional Director
100 Alabama Street S.W.
1924 Building
Atlanta, G.A. 30303



**S. Department of Lab or**

Occupational Safety and Health Administration
1141 Montlimar Drive, Suite 1006
Mobile, AL 36609
Telephone:    (251) 441-6131
FAX:            (251) 441-6396



## MEDICAL RECORDS RELEASE FORM

I, _____ (worker/patient or next of kin) hereby authorize
_____ (name of physician or organization holding the
medically related records) to release to the Occupational Safety and Health Administration the
following medical information from my medical _____ (own or on behalf of a
relative) personal medical records.

Description of medical records to be related: _____

_____

_____

_____

NAME OF PATIENT: _____

RELATIONSHIP TO PATIENT: _____

DATE OF BIRTH OF PATIENT: _____

I give my permission for this medical information to be used by the Occupational Safety and
Health Administration for oversight activities authorized by law, including civil, criminal, or
administrative investigations and inspections. I do not give my permission for any other use or
re-disclosure of this information.

NOTE: Several extra lines are provided below so that you may place additional restriction on
this authorization letter. You may: (1) Specify a particular expiration date of this letter, if less
than one year; (2) describe medical information to be created in the future that you intend to be
covered by this authorization letter; (3) describe portions of the medical information in the
specified records which you do not intend to be released as a result of this letter; or (4) state "no
restrictions."

_____

_____

_____

FULL NAME OF EMPLOYEE OR LEGAL REPRESENTATIVE: _____

SIGNATURE OF EMPLOYEE OR LEGAL REPRESENTATIVE: _____

DATE OF SIGNATURE: _____

NOTE: See reverse side for information concerning HIPPA and OSHA

# The Field Museum

## CONSERVATION, DEPARTMENT OF ANTHROPOLOGY

### Description of semi-quantitative testing methodology for the presence of arsenic (As$^{3+/5+}$) as utilized for three objects in the collection of Tuskegee Institute National Historic Site

During the week of March 12-16[th], I traveled to the Tuskegee Institute NHS with three other Field Museum employees to evaluate objects for potential inclusion in a traveling exhibit about George Washington Carver. Of the objects viewed, three were taxidermy birds. In the Anthropology Department of the Field Museum, it is standard procedure to perform arsenic spot tests on all artifacts that will be exhibited or otherwise routinely handled. While in Tuskegee, I had over 150 objects to assess for condition. For this reason, I was only able to get samples for poison testing from materials that would be most likely to have been treated with pesticide. Taxidermy animals, such as the birds mentioned above, are very susceptible to insect damage and therefore likely to have been treated with pesticide. It is known that Dr. Carver advocated the use of arsenical pesticides such as lead arsenate and Paris Green (copper (II)-acetoarsenite).[1]

Test and methods used for poison testing of TUIN 329/115, TUIN 330, and TUIN 331/114:

Sampling: A strip of acid-free tissue paper was wrapped around the end of a bamboo skewer as a makeshift swab. The swab was dampened in filtered water and rolled over various representative parts of the object to pick up any possible arsenic powder residue; two sample swabs were prepared from each object. The samples were stored in polyethylene zip-lock bags prior to testing; the swabs for each object were stored in separate bags. A control sample was prepared by dipping a swab in the same filtered water used for the sample swabs; this swab was also placed in a polyethylene bag for storage. All samples were returned to the Field Museum for testing.

Test procedure: Semi-quantitative test for the presence of arsenic (As$^{3+/5+}$) using the Merkoquant 10 026 Arsenic Test Kit (available from EM Science, Gibbstown, NJ).

Testing vessels (13 x 100 mm glass test tubes) were filled with five milliliters of deionized water each. One sample swab from each of the three objects was placed in the water in its own test tube and allowed to soak for 30 minutes, with agitation at 15 minutes. The control sample described above and a known positive control were tested in an identical manner. While the samples were soaking, indicator strips were inserted through ready-made slits in test tube caps. After 30 minutes, the sample solutions were slightly agitated and the swabs removed. One measuring spoon full of Reagent #1, zinc powder, was added to the sample solution in each test tube, which was then agitated to ensure thorough mixing. Ten drops of Reagent #2, 32% hydrochloric acid, were added to each test tube before they were capped with the caps bearing indicator strips. The reaction was left to proceed for 30 minutes, with agitation at 15 minutes. After thirty minutes, the vessels were uncapped, and the reaction zone pad on the indicator strip was compared with the color scale provided with the test kit.

Test Principle: From Odegaard, et al. 2000. *Material Characterization Tests for Objects of Art and Archaeology*. London: Archetype Publications.
Hydrogen gas is formed by reaction of zinc metal with hydrochloric acid. Arsenic compounds, if present in the solution, are reduced to arsine gas by reacting with nascent hydrogen. The arsine gas reacts with the mercury (II) bromide treated paper on the indicator strip, forming colored compounds.

Test Results:
Control sample gathered at Tuskegee: NEGATIVE. The color of the reaction zone on the indicator strip remained unchanged throughout the test.

Taxidermy chicken, TUIN 329/115: POSITIVE. The color of the reaction zone on the indicator strip indicated an amount of 0.5 mg/liter As$^{3+/5+}$ according to this test.



The Field Museum

## CONSERVATION, DEPARTMENT OF ANTHROPOLOGY

Taxidermy chicken TUIN 330: POSITIVE. The color of the reaction zone on the indicator strip indicated an amount of 1.0 mg/liter $As^{3+/5+}$ according to this test.

Taxidermy chicken TUIN 331/114: POSITIVE. The color of the reaction zone on the indicator strip indicated an amount of >3 mg/liter $As^{3+/5+}$ according to this test.

The results of arsenic testing were recorded for the Field Museum's records and were communicated by telephone to Teresa Valencia, Museum Specialist at Tuskegee Institute NHS on March 19, 2007.

---

[i] For example: Bulletin No. 36: Carver, G.W. *How to Grow the Tomato and 115 Ways to Prepare it for the Table.* Tuskegee Institute Press. Second Edition, August 1936. This bulletin recommends the use of lead arsenate to protect tomatoes from worms.

Also, NPS object TUIN 1817, a framed example of the use of arsenical pesticides on plant materials.

------------------ page(s)

Were withheld

EXEMPTION 5

May 10, 2007


National Park Service
U. S. Department of the Interior
1212 West Montgomery Road
Tuskegee, Alabama 36088

Dear Superintendent Light,

I have enclosed copies of my business card for documenting my OSHA inspection.
Please distribute a card to ⌐C and respectively.

I will hold a final closing conference via telephone when the sampling results are
received and calculated.

If you have any questions or concerns, please contact me.

Sincerely,


⌐C

⌐C

U. S. Department of Labor / OSHA
Mobile Area Office
1141 Montlimar Drive, Suite 1006
Mobile, Alabama 36609


Cc:
File





National Park Service
U.S. Department of the Interior

Catherine F. Light
Superintendent

Tuskegee Institute National Historic Site
Tuskegee Airmen National Historic Site
Selma to Montgomery National Historic Trail
1212 W. Montgomery Road
Tuskegee AL 36088
334 727 -6390 phone
334 727 -4597 fax
catherine_light@nps.gov

# ir Sampling Worksheet ⬤ U.S. Department of Labor
## Occupational Safety and Health Administration

May 8, 2007 9:43am

| OD | Date | Reporting ID 0418600 | Inspection Number 310772330 | | Sampling Number | 434859930 |
|---|---|---|---|---|---|---|

| ..shment Name .:partment of Interior-National Historic Site | | | Sampling Date 05/07/07 | Shipping Date 05/08/07 |
|---|---|---|---|---|

| ..rson Performing Sampling (Signature) | | Print Last Name | CSHO ID 7C |
|---|---|---|---|

| ..nployee (Name, Address, Telephone Number) | Exposure Information | a. Number 1 | b. Duration |
|---|---|---|---|
| | Frequency | 8 hrs/day,5 days/wk | |
| | Weather Conditions | Photo(s) Y | |

| ..b Title    **EE maintain specimen** | Occupation Code | Pump Checks and Adjustments |
|---|---|---|

PE (Type and Effectiveness)

..ob Description, Operation, Work Location(s), Ventilation and Controls

Cont'd

Pump Number:                           **Sampling Data**

| | | | | | | |
|---|---|---|---|---|---|---|
| ..ab Sample Number | | | | | | |
| Sample Submission Number | | | | | | |
| ..mple Type | | | | | | |
| Sample Media | | | | | | |
| Filter/Tube No. | | | | | | |
| Time On/Off | | | | | | |
| Total Time (in minutes) | | | | | | |
| Flow Rate ☐ l/mm  ☐ cc/min | | | | | | |
| Volume (in liters) | | | | | | |
| Net Sample Weight (in mg) | | | | | | |
| Analyze Samples for: | Indicate Which Samples to Include in TWA, Ceiling, etc. Calculations | | | | | |

| ..terference and IH Comments to Lab | Supporting Samples | Chain of Custody | Initials | Date |
|---|---|---|---|---|
| | a. Blanks | Seals Intact        Y      N | | |
| | | Received in Lab | | |
| | | Received by Analyst | | |
| | b. Bulks | Analysis Complete | | |
| | | Calculation Checked | | |
| | | Supervisor Ok'd. | | |
| | | Case File Page | | of |

## *TUSKEGEE INSTITUTE NATIONAL HISTORIC SITE*

## CHEMICAL HAZARD COMMUNICATION PROGRAM

## 2005

## EMPLOYEE RIGHT TO KNOW

It is the policy of the National Park Service to provide and maintain a safe and healthy work environment. Tuskegee Institute National Historic Site is primarily concerned with the protection of employees, families and park visitors from accident or illness, and the protection of property from damage resulting from hazards in the park environment.

My signature below reflects my support for the implementation of this program, the roles and responsibilities contained herein, program compliance, employee training and the potential work stoppage due to any violation of this policy.

Submitted by:          Tuskegee Institute National Historic Site Safety Committee

Prepared by:       _____     Date: _____
                   Andrew Callens
                   Facility Manager

Prepared by:       _____     Date: _____
                   H. Tyrone Brandyburg,
                   Environmental Management Coordinator

Approved by:       _____     Date: _____
                   Catherine F. Light
                   Superintendent

**TABLE OF CONTENTS**

I.      INTRODUCTION

II.     CHEMICALS IN THE WORK PLACE

III.    SUMMARY OF THE HAZARD COMMUNICATION PROGRAM

IV.     CONTAINER LABELING

V.      MATERIAL SAFETY DATA SHEETS (MSDS)

VI.     TRAINING

VII.    NON-ROUTINE HAZARDOUS TASKS

VIII.   CONTRACTORS AND OTHER EMPLOYEES

IX      PROCEDURES FOR RECEIPT OF CHEMICALS

**APPENDICES**

Appendix A:   INVENTORY OF CHEMICALS IN TUSKEGEE INSTITUTE NATIONAL HISTORIC SITE

Appendix B:   LOCATION OF MATERIAL SAFETY DATA SHEETS (MSDS) STATIONS

Appendix C:   HEALTH HAZARD DEFINITIONS

Appendix D:   GLOSSARY

TUSKEGEE INSTITUTE NATIONAL HISTORIC SITE

HAZARD COMMUNICATION PROGRAM

The following has been approved as Tuskegee Institute National Historic Site's HAZARD COMMUNICATION PROGRAM, defined in 29 CFR 1910.1200, Occupational Safety and Health Administration (OSHA) and the National Fire Protection Association (NFPA) 704 Hazard Identification System.

## I. INTRODUCTION

The Tuskegee Institute National Historic Site has developed this Hazard Communication Program to ensure its employees are working in a safe and healthy environment. This program provides employees with information about potential hazards in materials found in the work place.

This program is mandated by the Occupational Safety and Health Administration (OSHA) Regulation 29 CFR 1910.1200, Chemical Hazard Communication Standard. The regulation states that employers must develop, implement and maintain a written comprehensive Hazard Communication Program in the workplace. Wyoming State regulations have adopted the OSHA standards.

### PURPOSE

The purpose of this program is to inform all park employees of the "Right to Know" law which entitles workers to be properly informed and trained on chemicals in the work place, and know how to protect themselves from chemical exposures. This awareness reduces the incidence of chemical source illness and injuries and protects park resources. This information includes container labeling, employee training, Material Safety Data Sheets (MSDS) management and an inventory list of all known chemicals or materials of concern used in the work place.

### APPLICABILITY

This program applies to all park employees (full time, seasonal, and part time) as well as all contractors while performing work in park facilities or properties and must be followed at all times. However, the means of implementation may vary.

Chemicals present in the park which employees may be exposed to under normal conditions, performing non-routine tasks, or responding to emergencies may also vary. This Hazard Communication Program applies to all work areas of Tuskegee Institute National Historic Site: Park Management, Protection, Administration, Resource Management, Cooperation Association, Facility Management and Interpretation. The Superintendent is in full support of this program and encourages safe practices in our chemical work environment. A copy of this plan will be kept at each MSDS station in the park and made available to all employees.

## II. CHEMICALS IN THE WORKPLACE

Millions of workers in industry are exposed to one or more chemical hazards annually. There are thousands of existing chemicals in and about work entities in the world with new ones being formulated every day. These statistics are exhausting and along with the high numbers of chemicals present a high potential of incident. Because of these reasons, the park is concerned with the health and safety of its employees, concessionaires, contractors, visitors, and the environment.

Chemical exposure may cause or contribute to many serious health effects such as heart ailments, kidney and lung damage, sterility, cancer, burns and rashes. Some chemicals may also be safety hazards and have the potential to cause fires, explosions and other accidents.

The OSHA Hazard Communication Standard establishes uniform requirements to ensure that hazards of all chemicals imported into, produced, or used in U.S. work places are evaluated and that this hazard information is transmitted to affected employers and exposed employees. Chemical manufacturers and importers must convey the hazard information to downstream consumers by means of labels on containers and material safety data sheets (MSDS).

## III. SUMMARY OF THE TUIN HAZARD COMMUNICATION PROGRAM

A. Ensure that all liquids, powders, solids, gases, chemicals and other materials, which are hazardous to the health of employees, are identified, evaluated, and labeled.

B. Compile an inventory of chemicals known to be present in the workplace using an identity that is referenced on the appropriate MSDS. (Appendix A)

C. Ensure that information concerning these hazards is relayed to all affected employees through a training program that includes:

1. Instruction on container labeling and other forms of hazard warnings

2. Instruction on the use of material safety data sheets (MSDS)

3. Location of MSDS (Right to Know) stations (Appendix B)

D. Describe how Tuskegee Institute National Historic Site will inform employees of the hazards associated with non-routine tasks and chemicals in their work areas.

E. Describe how Tuskegee Institute National Historic Site will require independent contractors, and workers in the park to establish a Hazard Communication Program and identify the hazards their employees may be exposed to while performing their work.

F. Describe how Tuskegee Institute National Historic Site will ensure that distributors of hazardous substances include the MSDS with each shipment of hazardous substances purchased and used in the park. This assessment and labeling requirement applies to any substance which is known to be present in the workplace and which, under normal conditions of use or in emergencies, could expose employees to a health and/or safety hazard.

## IV. CONTAINER LABELING

A. Labels and other forms of warning:

1. Tuskegee Institute National Historic Site shall ensure that every container of chemicals in the workplace is labeled, tagged or marked with the name of the material inside. This label shall match the name on the Material Safety Data Sheet (MSDS).

As container labels become illegible, they shall be replaced.

2. Each Division Chief will verify that all containers in his/her work group will be marked with the following information:

    a. Identity of the chemical(s) contained therein

    b. Clearly display all appropriate hazard warnings

    c. These chemicals will not be released for use until the above data is verified

B. Exceptions: The following items are exempt from labeling requirements because they are governed by other regulations:

1. Pesticides that are labeled as required by the Environmental Protection Agency

2. Food or food additives, drugs, or cosmetics when labeled as required by the Food and Drug Administration and intended for the personal use by employees in the work place

3. Consumer products when labeled as required by the Consumer Product Safety Commission

4. Tobacco or tobacco products

5. Wood or wood products

6. Articles, meaning manufactured items which:

    a. Are formed to specific shape or design during manufacture

    b. Have an end use function dependent in whole or in part upon its shape or design during end use

    c. Do not release or otherwise result in exposure to a hazardous substance under normal condition of use

7. Pipes and piping systems (but Best Management Practice dictates marking these)

C. In lieu of affixing labels to individual stationary process containers, Tuskegee Institute National Historic Site may use signs, placards, process sheets, or other such written materials as long as:

1. The alternative method identifies the containers to which it applies and conveys the information required above to be on the label and

2. The written materials are legible, in English, and prominently displayed on the container or readily accessible to the employees in their work area throughout each shift

D. Portable temporary or secondary containers into which a substance is transferred from a larger container must be labeled.

E. No one shall remove or deface existing labels on incoming containers of chemicals unless the container is immediately re-labeled with the required information.

F. New labels are not necessary if the existing labels contain the required information and are legible.

## V. MATERIAL SAFETY DATA SHEETS (MSDS)

A. Each MSDS shall contain, in English, the following required information:

1. Label Identification:

a. Single Chemicals: chemical and common name(s)

b. Mixture Tested as a Whole: The chemical(s) and common name(s) of the ingredients that contribute to known hazards and the common name(s) of the mixture itself

c. Mixture NOT Tested as a Whole: (1) The chemical(s) and common name(s) of all ingredients which comprise 1% or greater of the composition, except those chemicals identified as carcinogens shall be listed if the concentrations are 0.1% or greater. (2) The chemical(s) and common name(s) of all ingredients which have been determined to present a physical hazard when in the mixture. (Appendix D)

2. Physical and chemical characteristics of the chemical including but not limited to vapor pressure and flash point.

3. The physical hazards of the chemical including but not limited to potential for fire, explosion and reactivity.

4. The health hazards of the chemical including but not limited to signs/symptoms of exposure, and any medical conditions which are aggravated by exposure to the chemical.

5. The OSHA permissible exposure limit and any other exposure limit used or recommended by the chemical manufacturer when available.

6. Whether the chemical is a carcinogen or has been found to be a potential carcinogen by OSHA or by Federal or State Agencies.

7. Applicable precautions for safe handling, storage and use which are known to the chemical manufacturer or distributor including but not limited to appropriate hygienic practices, protective measures during repair and maintenance of contaminated equipment, and procedures for clean-up of spills and leaks.

8. Applicable control measures which are known to the chemical manufacturer or distributor, such as appropriate engineering controls work practices, or personal protective equipment.

9. Emergency and first aid procedures

10. The name, addresses, and telephone number of the chemical manufacturer or distributor who can provide additional information on the chemical and appropriate emergency procedures, if necessary.

11. If no relevant information is found for any given category on the MSDS, the chemical manufacturer or distributor shall mark it to indicate that no applicable information was found.

12. Where complex mixtures have similar hazards and contents (i.e. the chemical ingredients are essentially the same, but specific composition varies from mixture to mixture) the chemical manufacturer or distributor may prepare one MSDS to apply to all

of these similar mixtures.

B. Coordination of Material Safety Data Sheets (MSDS)

> 1. Tuskegee Institute National Historic Site shall maintain copies of the required MSDS for chemicals used in the work place, and shall ensure that they are readily available for employees at the MSDS stations in their work areas. (Appendix B)
>
> 2. Each Division Chief is responsible for obtaining the necessary MSDS for any and all chemicals used in their workplace. In order to maintain a comprehensive MSDS file, copies of the MSDS for all chemicals to which employees may be exposed, will be kept in alphabetical order at the MSDS station where the chemicals are stored. They will be available for review to all employees during each work shift.
>
> 3. Each Division Chief is responsible for updating the master inventory at their workplace MSDS station. Division Chief will ensure that each product is accompanied by an MSDS before the product is put to use.
>
> 4. Each Division Chief will review new data sheets for significant health and safety information and see that any new information is passed onto employees. Division Chief will check each new MSDS for completeness. If an MSDS is missing or incomplete, a new MSDS will be requested by the Division Chief from the manufacturer. The chemical can not be used until a complete MSDS is received and filed at the job-site MSDS station.
>
> 5. MSDS are available to all employees during all working hours. If an MSDS is not available for a particular concern/chemical, contact the Division Chief in charge of the MSDS station.
>
> 6. The park recommends that if emergency medical treatment is necessary due to an exposure incident, a copy of the applicable MSDS should accompany the patient to the medical facility.
>
> 7. MSDS may be kept in any format, including but not limited to operating procedures, and may be designated to cover groups of chemicals in a work area where it may be more appropriate to address the hazards of the process rather than the individual chemicals.
>
> 8. MSDS shall also be made readily available, upon request, to designated representative(s) of Federal and State regulatory agencies.

## VI. TRAINING

A. Employee training and information:

> Tuskegee Institute National Historic Site shall provide employees with information and training on chemicals in their work area at the time of their initial assignment, upon reassignment to an area, and whenever a new hazard is introduced into their work area. The training will include, but not be limited to, methods of detection of chemical release, detection equipment, physical and health hazards of the chemical, protective measures, and details of the hazard communication program.

1. Each  Division Chief shall inform employees of:

    a. The requirements of this document

    b. All operations in their work area where chemicals are present

    c. The location and availability of the written hazard communication program including the required inventory of chemicals with MSDS required by this program and

    d. The annual refresher training

2. Employee training shall include at least:

    a. Methods and observations that may be used to detect the presence or release of a chemical in the work area (such as monitoring conducted by the employer, continuous monitoring devices, visual appearance, or odor of chemicals when being released, etc.)

    b. The physical and health hazards of the chemicals in the work area

    c. The measure employees can take to protect themselves from these hazards including, but not limited to, specific procedures the employer has implemented to protect employees from exposure to chemicals such as:

        (1). Appropriate work practices

        (2). Personal protective equipment

        (3). Emergency procedures

    d. The details of this hazard communication program including:

        (1). An explanation of the labeling system

        (2). An explanation of the MSDS system

        (3). Instructions for employees to obtain and use appropriate hazard information

    e. The details of Tuskegee Institute National Historic Site's emergency notification for spills/leaks procedures.

3. Documentation

    a. The Records Keeper for the Environmental Management Team will maintain a training file listing the names of all employees receiving training, the training materials covered and the date training was conducted.

    b. Send a copy of this Haz-Com training list to the Safety Committee and the Records Keeper for the Environmental Management Team.

## Explanation of Documentation

This letter along with many others from other employees were sent to the Director of the National Park Service Mary Bomar asking that an investigation be conducted of the three sites (Tuskegee Institute National Historic Site, Tuskegee Airmen National Historic Site, and Selma to Montgomery National Historic Trail).

These letters all came after employees were being threatened, harassed, and forced into constructive discharges by management.



United States Department of the Interior

National Park Service
Tuskegee Institute
National Historic Site
1212 West Montgomery Road
Tuskegee Institute, Alabama 36088



January 31, 2007

To:        Mary Bomar, Director, National Park Service

From:      Teresa Valencia, Museum Specialist, Tuskegee Institute National Historic Site

Subject:   Hostile Work Environment – Emergency Action Requested

I recently read your "NLC Message" and something that caught my attention was a suggestion that you made to NLC members about making this the "Year of the People". So often, organizations overlook the valuable contributions that employees at all levels make. We tend to set our focus primarily on the management teams that are selected to assist parks in moving forward and hopefully those teams consist of visionaries who have the ability or potential to lead.

As a child, I dreamed of the day that I would have the opportunity to wear the green and the grey National Park Service uniform. I always admired National Park Service employees and have always had respect for the uniform and the mission. My dream finally came true and I am currently on my 13th year with the National Park Service. I have had the opportunity to work at 6 National Park Sites as well as serve on several details.

Currently, I am stationed at Tuskegee Institute National Historic Site in Alabama and am the Museum Specialist for Tuskegee Institute NHS, Tuskegee Airmen NHS, and Selma to Montgomery NHT. Being of African American/Latina descent I thought this would be a wonderful opportunity to for me to not only educate the public, but to educate myself as well about African American History. Growing up in rural Wyoming, I was not afforded the opportunity to learn about African Americans in school. I gladly accepted the position at Tuskegee back in 2002 and transferred from Brown v. Board NHS in Topeka, Kansas to Tuskegee, Alabama. When I accepted this position I was hired to work for Tuskegee Institute NHS, but shortly after my arrival I received the responsibility of working for all three sites.

Working at Tuskegee has definitely been challenging. Some of those challenges have been welcomed and others have not. I find Tuskegee Institute to be a prime example of a dysfunctional organization that has cultivated a toxic work environment for its employees.

In 2006, employees at Tuskegee Institute National Historic Site organized a Union and joined the "American Federation for Government Employees". The employees had no one to turn to, not within the park, nor within the Regional Office in Atlanta. Employees at the park were told that we would not have an EEO councilor on-site. Due to past staff experiences with the Regional Office EEO personnel, a lack of confidence has developed in their ability to execute complaints and conduct proper investigations.

Currently, park employees are in a very hostile work environment. There are numerous documented accounts of employees seeking assistance from management without redress and face retaliatory actions. Employees currently have the following issues:



- poor health
- hostile work environment
- harassment
- constructive discharges
- intimidation
- abuse of managerial authority

It is my hope that in writing this letter that an investigation be ordered to address these issues in the near future. We all know that National Parks are a valuable resource as well as the employees that care for them.

I greatly appreciate your time and assistance in addressing this issue.

**U.S. Department of Labor**
Occupational Safety and Health Administration

Inspection Number: 310772330
**Inspection Dates:** 05/04/2007 - 05/07/2007
**Issuance Date:** 07/20/2007



## Notice of Unsafe or Unhealthful Working Conditions

**Company Name:**   Department of Interior-National Historic Site
**Inspection Site:**   Tuskegee Institute-1600 Boy Scout Circle, Tuskegee, AL   36088

---

Citation 1 Item 1 Type of Violation:   **Serious**

29 CFR 1910.141(b)(1)(i):  Potable water was not provided in all places of employment, for drinking, washing of the person, cooking, washing of foods, washing of cooking or eating utensils, washing of food preparation or processing premises, and personal service rooms:

(a)     Maintenance Shed:  Employees were not provided drinking water when mowing, trimming, cutting, cultivating, maintaining equipment and grounds.

**Date By Which Violation Must be Abated:**                    08/02/2007

Citation 1 Item 2 Type of Violation:   **Serious**

29 CFR 1910.141(d)(2)(iii):  Lavatories were not provided with hand soap or similar cleansing agent:

(a)     Basement of G.W. Carver Museum: Employer did not provide hand soap for employees performing maintenance of museum displays and keeping the museum clean.

**Date By Which Violation Must be Abated:**                    08/01/2007

Citation 1 Item 3 Type of Violation:   **Serious**

29 CFR 1910.1018(e)(2):  Initial monitoring was not performed for each workplace, or work operation covered by this section to accurately determine the airborne concentration of inorganic arsenic to which employees may be exposed:

(a)     G.W.Carver Museum: Employer failed to conduct exposure measurements to ascertain the levels of arsenic for employees arranging, disassembling, rearranging, shipping, and receiving taxidermed artifacts.

**Date By Which Violation Must be Abated:**                    08/08/2007

---

See pages 1 through 5 of this Notice for information on employer and employee rights and responsibilities.

**U.S. Department of Labor**

Occupational Safety and Health Administration

Inspection Number: 310772330
Inspection Dates: 05/04/2007 - 05/07/2007
Issuance Date:   07/20/2007



## Notice of Unsafe or Unhealthful Working Conditions

**Company Name:**   Department of Interior-National Historic Site
**Inspection Site:**   Tuskegee Institute-1600 Boy Scout Circle, Tuskegee, AL  36088

---

### Citation 1 Item 4  Type of Violation:   Serious

29 CFR 1910.1025(d)(3)(i):  The initial determination for lead was not based on employee exposure monitoring results and other relevant considerations listed in (A), (B) and (C) of this paragraph:

(a)    G.W.Carver Museum: Employer failed to provide exposure measurements to ascertain the levels of lead for employees arranging, disassembling, rearranging, shipping, and receiving taxidermed artifacts.

**Date By Which Violation Must be Abated:**                                  08/02/2007

The alleged violations below have been grouped because they involve similar or related hazards that may increase the potential for illness.

### Citation 1 Item 5a  Type of Violation:   Serious

29 CFR 1910.1025(l)(1)(i):  Employee(s) working in an area where there was potential exposure to airborne lead at any level were not informed of the content of Appendices A and B of this regulation:

(a)    G.W. Carver Museum: Employees were not informed of the proper methods of personal protection, personal hygiene, and medical surveillance while arranging, disassembling, rearranging, shipping and receiving taxidermed artifacts in displays containing lead.

**Date By Which Violation Must be Abated:**                                  08/08/2007

---

See pages 1 through 5 of this Notice for information on employer and employee rights and responsibilities.

**U.S. Department of Labor**
Occupational Safety and Health Administration

**Inspection Number:** 310772330
**Inspection Dates:** 05/04/2007 - 05/07/2007
**Issuance Date:** 07/20/2007



## Notice of Unsafe or Unhealthful Working Conditions

**Company Name:**  Department of Interior-National Historic Site
**Inspection Site:**  Tuskegee Institute-1600 Boy Scout Circle, Tuskegee, AL  36088

---

Citation 1 Item 5b Type of Violation:  **Serious**

29CFR 1910.1200(h)(1): Employer did not provide employees with effective information and training on hazardous chemicals in their work area at the time of their initial assignment, and whenever a new physical or health hazard the employees have not previously been trained about is introduced into their work area. Information and training may be designed to cover categories of hazards (e.g., flammability, carcinogenicity) or specific chemicals. Chemical-specific information must always be available through labels and material safety data sheets.

    (a)    Artifact Storage Department: Employer failed to provide adequate training for employees handling taxidermed artifacts containing hazardous chemicals such as, but not limited to, arsenic, compounds, with health effects, such as, but not limited to, skin disorders, digestive and respiratory system disorders.

    **Date By Which Violation Must be Abated:**      08/02/2007

Citation 1 Item 6 Type of Violation:  **Serious**

29 CFR 1910.1200(g)(8):  The employer did not maintain copies of the required material safety data sheets for each hazardous chemical in the workplace:

    (a)    Artifact Storage Department: Employer failed to provide material safety data sheets for employees handling taxidermed artifacts containing hazardous chemicals, such as, but not limited to, arsenic and lead, with health effects, such as, but not limited to, central nervous system, reproductive, and renal disorders.

    **Date By Which Violation Must be Abated:**      08/02/2007

---

See pages 1 through 5 of this Notice for information on employer and employee rights and responsibilities.

**U.S. Department of Labor**
Occupational Safety and Health Administration

Inspection Number:  310772330
Inspection Dates: 05/04/2007 - 05/07/2007
Issuance Date:     07/20/2007



Notice of Unsafe or Unhealthful Working Conditions

**Company Name:**  Department of Interior-National Historic Site
**Inspection Site:**  Tuskegee Institute-1600 Boy Scout Circle, Tuskegee, AL  36088

---

Citation 2 Item 1 Type of Violation:  Other

29 CFR 1904.32(b)(3): The Summary of Work-Related Injuries and Illnesses (OSHA Form 300A or equivalent) was not properly certified:

    (a)    The OSHA 300A for the year 2003 not certified by the highest officer at the establishment.

ABATEMENT NOTE:  The company executive that certifies the 300A must be one of the following:  owner of the company, officer of the corporation, or the highest ranking company official at the establishment.

Date By Which Violation Must be Abated:                    07/26/2007

Ken Nishiyama-Atha
Area Director

---

See pages 1 through 3 of this Notice for information on employer and employee rights and responsibilities.

## **Explanation of Documentation**

Affidavits from co-workers and union showing that there was a lack of assistance from management.

# SWORN AFFAVIDT

I Vinnie Diane May give Teresa Valencia permission to use the listed below attachments and documentations for her case against Superintendent Catherine F. Light and Chief of Resource and Education Hubert T. Brandyburg,

7 Page Document Vinnie Diane May
3 Page Document Vinnie Diane May
2 Page Document Mary Bomar letter
4 Page Documentation starting with Wednesday, March 1
1 Page Documentation October 25, 2001
Documentation of Andrew Callens use of SEMO Government Vehicle
Documentation for September – November

VINNIE DIANE MAY

_Vinnie Diane may_ Date _February 7, 2008_

Sworn to & Subscribed before me this _7th_ day of _February 2008_

Notary Public: _Cindy Ticer_

My name is Vinnie Diane May and I started with the National Park Service February 13, 1998.

I was hired by Superintendent Willie Madison. I was the personal Secretary of Willie Madison, Brenda Caldwell and Catherine Light.

Office hours at Tuskegee Institute NHS were 8:00 – 4:30. I would get up to leave at 4:30 and Lorraine Thomas and Shirley Streeter would just look at me. I often wondered why they stayed so late and as far as I know they are still staying late.

There was unofficial comp time for Managers and they kept their own time. I kept unofficial time for Superintendent Light under her direction. One time Shirley Streeter said her comp time got taken from her and she went to Superintendent Light and got her comp time re-instated and it was considered unofficial comp time. So whenever you asked her about her leave she would state Superintendent Light and her had something worked out.

There was a day that Lorraine and Shirley had a friend in the hospital and they both took off and went to Montgomery they were gone from the Park for at least three hours. When I had a meeting with Superintendent Light and Shirley Streeter under other circumstances I brought that up. I was told by Superintendent Light that Shirley and Lorraine worked late all the time and she approved for them to leave the office.

Lorraine came in one day sick and Shirley had her lay down on the couch in the office and locked the front door so nobody would walk in on her. She lay down for approximately an hour then when she felt better went in the kitchen and eat with Shirley Streeter and Superintendent Light. No leave was taken from her. I was doing time cards at the time for all three Parks.

One of the Rangers called me at Park Headquarters one day and told me Teresa Valencia was in the hospital and she had a stroke I started crying and Lorraine made the remark I thought somebody had died the way you were acting. The park had no empathy for employees other than themselves. When Teresa Valencia had a stroke there was a comment made about asking if her mouth was crooked? Anytime Teresa called in there was always a comment made about her being sick. There were comments about her sexual orientation as well.

When Jubilee/Re-enactment of Selma to Montgomery March there was abuse of government vehicles, private own vehicles and payment to Tyrone Brandyburg to drive private own vehicles (pov) when government vehicles were available. On one occasion I remember he drove his own pov to Selma then drove to Tuskegee to attend a funeral of someone that volunteered for the Park then drove back to Selma. When the Re-enactment was over he was paid for driving his pov at the regular mileage rate and something was said in the Park but nothing was ever did. All the government cars were in Selma so there were government cars available to drive.

One year when we had the Reenactment march all the Managers got hotel rooms and attended all the main events and funds were taken out of Selma budget for this. Tyrone Brandyburg drove from Montgomery to attend and was paid pov mileage and provided lodging for his family one more than one occasion. Shirley Streeter and Lorraine Thomas were provided lodging on at least one occasion I am aware of.

Tyrone Brandyburg traveled to different locations to attend grand openings or anniversaries of Parks to represent Superintendent Light. Tyrone Brandyburg took his family and was provided lodging and pov mileage approximately 1400 miles one trip I cannot recall the place. I know this took place because I did travel for all the Managers at the Park and did vouchers once they were completed. Also I completed 1164 standard forms for reimbursement was completed by me.

Every time Superintendent Light traveled I had to get reservations for her a rental car. I only remember one occasion she did not get rental car and she went to New York and Regional Director Patricia Hooks had rental car and picked up Superintendent Light. No other Managers got rental cars as far as I can remember.

There is a relationship between Shirley Streeter and Lorraine Thomas that nobody in the Park understands to this day.

Superintendent Light became best friends with Shirley and Lorraine and I had problems with that because she was their Supervisor. How can you supervise your best friends and be treating everyone equal you cannot do that.

I was having difficulties with a new temporary employee Tina Price and she and I ended up in Superintendent's Light office and Tina Price made a comment "you have met your match in me" I felt this was a threat Superintendent Light did nothing other than tell us to stay away from each other.

Check all property at Park and make sure it is accounted for. I heard rumors that property was being taken to individuals home.

When employees would called in sick Managers would talk about them.

Andrew Callens duty station was Tuskegee he lived in Selma he would come to Lowndes County and take Selma's Government Vehicle and drive to Tuskegee. He had an employee that worked at Lowndes County and he would tell him when to go over to Tuskegee and ride with him. I reported this to Superintendent Light and absolutely nothing was done.

I spoke to James Rogers about my concerns of Andrew Callens use of government vehicle and he went to Andrew and told him what I said. Andrew Callens became very aggressive after that in his dealings with me for any Park business.

My understanding a temporary employee is being provided orientation training as a permanent Park Ranger that is fraud waste and abuse of government money.

All computers should be checked for e-mails especially Superintendent Light's communication with Tina Smiley and other employees.

All travel authorizations and vouchers especially Selma 5685 March time frame during Re-enactment march should be closely reviewed. All of Superintendent's Light travel should be reviewed. Time and attendance and budget should be reviewed.

I am not being sour grapes I have now moved on but I would like to see someone held accountable for what the employees have been through and are still going through at this Park.

### Sworn Affidavit

I Wendell J. Echols, Sr. do hereby submit this sworn affidavit as a statement to the disparate treatment of Ms. Teresa Valencia.

Since joining the Employees Union, American Federation of Government Employees Local #110 Ms. Valencia has been treated unfairly and retaliated against for her Union Leadership and trying to make the environment safer and more conducive to a positive workplace. She has been denied Workers Compensation assistance in filing the same, denied Family Medical Leave Act Rights, denied reasonable accommodations, and forced into a hardship by not allowing advanced sick leave or annual leave and practicing medicine by going against the doctor's orders and recommendations.

There have been other occasions that routine request were disapproved while other employees were approved for the same or similar request. Other employees were given the opportunity to work from home, but by her doctors recommendation she was not allowed to work from home. This is just a couple of incidents that I am aware occurred. There was an occasion when a temporary employee by the name of Tina Smiley at the Selma site accused Ms. Valencia at making an inappropriate pass at her. This accusation never transpired and as a result Ms. Valencia was banned from the Selma site thus making her incapable of performing her duties. While none of this was sustained, she was still banned from the Selma site.

I feel that Ms. Valencia has been retaliated against, because she used her right to call OSHA in on issues that were threatening to Ms. Valencia, volunteers, and youth that assisted in the care of museum collections. Prior to OSHA coming in there was no training, no personal protective equipment (PPE), and no Material Safety Data Sheets (MSDS), and no reference in the Automated National Catalog System (ANCS+) concerning toxic exposure from the Carver Collections. There never was a baseline analysis done for the presence of any toxic materials exposure in any employee.

Upon the arrival of the OSHA official, Mr. Tuxberry Suber II, he met with management, the Union and the employees regarding Health and Safety issues. At that time it was told to management that employees were exposed to lead and arsenic. Mold spores were found in the basement of the Carver Museum, and Ms. Valencia's worksite had no accommodations for females to use the restroom. Mr. Suber II expressed his concern for the way Ms. Valencia has been treated and that management should do everything in its power to assist her and to be more compassionate for her needs. Unfortunately this has not been the case. It is as if his bringing attention to this matter has placed roadblocks and obstructions to hinder progress in this matter. Mr. Tyrone Brandyburg began to harass Ms. Valencia after she notified OSHA of the Safety and Health concerns. This harassment started long before her calling OSHA, but increased after the call was made. At that time, the Superintendent, Catherine Farmer Light joined in on the harassment and it escalated to Ms. Valencia suffering poor health. This was magnified by the fact that she received no help administratively, physically or morally in her quest to do the right thing. She was threatened by Tryone Brandyburg on two occasions questioning her doctor's

opinion and recommendations regarding her health and well being. Mr. Brandyburg and Catherine Farmer Light both accused Ms. Valencia of self contamination with lead and arsenic, which is absorbed and degrading to her professional abilities.

Management knew well in advance of the potential of exposure to lead and arsenic and even went as far as to encapsulate the specimens without communicating this to Ms. Valencia. At the time this was done, the proper PPE did not exist in the museum or the Tuskegee Site. She was ordered to purchase PPE and take training on these issues which was after the fact.

Management has suffered Ms. Valencia's physical, emotional, and financial hardship, all of which could have been handled without causing any hardship, but chose not to. Management has no compassion when it comes to doing the right thing. She was harassed by Ms. Shirley Streeter when during a meeting with her. Ms. Streeter refused to call Ms. Light in on an issue that could only be addressed by Ms. Light. She was harassed by Andrew Callens video taping Ms. Valencia's actions before she was relocated to the Carver Museum with less than a weeks notice. She was also harassed by Kevin Colley, who has no compassion by stating that OSHA sided with the National Park Service, which is an untruth. He also said that Ms. Valencia's complaint was a waste of time. All of this was done knowing that Ms. Valencia's health was declining. There are so many violations against Management, but without a signed Contract Agreement the Union is limited to the actions it must take.

If there are any more concerns you may contact me at (334)421-2113.

This affidavit is true to the best of my knowledge.

Respectfully Submitted                                          February 14, 2008

Wendell J. Echols, Sr., AFGE Local #110

From: Wendell J. Echols, Chief Steward, AFGE Local #110

To: Whom it may concern

Date: 4-23-07

This letter is a statement requested by Teresa Valencia as to what transpired during a meeting between Catherine Light, Tyrone Brandyburg, Teresa Valencia and myself. This meeting was called by Teresa concerning incidents pertaining to her worksite that needed to be addressed. This issue is the exposure to arsenic and other dangerous exposures.

The items were moved and Teresa asked why and where they were moved and she was told it was by Catherine's direction and she did not need to know where they were. She also stated that she did not have to tell anyone anything concerning this issue.

This meeting started with an employee being concerned about her safety and ended up threatened by disciplinary action. All Federal employees have a right to report safety issues when they become a hazard.

If I can be of any other assistance please feel free to contact me at (334)421-2113

Wendell J. Echols, Chief Steward, AFGE Local #110

## Sworn Affidavit
February 13, 2008

The following observations were made by me while serving as a Park Ranger at
Tuskegee Institute National Historic Site in Tuskegee, Alabama. I have worked at this
site for 6 years and 1 ½ months. My work station is located in the George Washington
Carver Museum. I have worked with Ms. Teresa Valencia since she transferred to the
site as a Museum Curator.

- A few years ago during a staff meeting of the Resource Education Division in the
  George Washington Carver Museum, the subject of the park budget was brought
  up. We were told we did not have any funds to spend. Ms. Teresa Valencia said
  that the park should have an audit. Mr. Tyrone Brandyburg said she shouldn't say
  that. Ms. Valencia asked why and Mr. Brandyburg stated that if she wanted to
  keep her job that she should not bring that up again. He said that went for all of
  us.

- After Ms. Valencia was exposed to the arsenic and lead in the curatorial storage
  building she noticed that all of the items that were tainted were gone. (It is
  common knowledge that as Museum Curator, Ms. Valencia is responsible for the
  care and security of all park artifacts.) She told me about it and in my presence
  she asked Mr. Brandyburg where the artifacts were taken. He had been told by
  Superintendent Light to move them. Mr. Brandyburg told her it was none of her
  business where the artifacts were stored.

- At one time when Ms.Valencia was hospitalized she was contacted by Chief
  of Resource Education Tyrone Brandyburg, as told to me by Ms. Valencia. Mr.
  Brandyburg wanted access to her computer password to obtain the first park
  newsletter. Although, I was not present during this action, I do know that the
  newsletter was not completed until several months later, thus showing that there
  was no urgency.

- I came to work one morning and Ms.Valencia was in her office located near my
  own. She complained of chest pains. She did not have any sick leave left and
  was afraid to leave the office to obtain medical attention due to the stressful,
  hostile work environment. She was afraid that she would be labeled
  insubordinate. I contacted the National Park Service Office in Washington, DC
  and spoke with Staff Ranger Greg Hindsley. I told him the situation and he told
  me to fax all of Ms. Valencia's documentation about her complaint. I faxed all
  the information and spoke with Mr. Hindsley He said that he had forwarded the
  information to National Park Service Deputy Director Dan Wenk. Ms. Valencia
  had a previously scheduled doctor's appointment in the early afternoon. I drove
  her to the doctor and picked her up so that she would not be placed at risk while
  driving. This occurred approximately in August 2007

- During the time when Ms. Robyn Harris was acting Chief of Resource Education
  I observed that an artifact in the George Washington Carver Museum was

missing. The taxidermied animal (rooster) was one of those items that had been tested for arsenic/lead. Since my office is located in the museum, I was concerned about where the artifact might have been stored. I sent an email to Ms. Harris, Law Enforcement Officer Kevin Colley and Ms. Valencia. Ms. Valencia, who is responsible for the artifacts at the Museum, told me that she did not know what happened to it. I did not receive a response from either Ms. Harris or Mr. Colley. This was in August 2007.

- During OSHA's investigation into potential safety violations at Tuskegee Institute National Historic Site, I told the investigator about a few safety issues that I had observed. One being the routinely missing paper towels and soap in the restrooms at the George Washington Carver Museum. I had visitors complain about this. I also had visitors complain of mold allergies that were heightened when they were downstairs in the museum. I told Chief of Resource Education Tyrone Brandyburg about this several years ago. I showed the investigator a growth that could be seen spreading from the metal vents onto the ceiling in the basement of the museum. The vents that were the worst were in the restrooms. As of this date, the growth is still there and continues to spread across the ceiling. This was on May 7, 2007.

- During a time when contractors were sealing the tile floors in the restrooms located in the George Washington Carver Museum, Ms. Valencia mentioned to me that they were using chemicals and there was not proper ventilation in the area they were working. There also were no Material Safety Data Sheets for the chemicals being used. Ms. Valencia was in the process of leaving the museum for a doctor's appointment and asked me to send an email on her behalf to Acting Superintendent Shirley Streeter. Ms. Streeter responded saying that she would let Facility Manager Andrew Callens know about the situation. The next day I was asked by maintenance where some of the chemicals were that were being used in the sealing of the floors. I said that I did not know. This occurred approximately August 2007.

- Ms. Robyn Harris, during her acting stint as Chief of Resource Education, called the George Washington Carver Museum and asked me to tell Ms. Valencia that she needed additional documentation on Ms. Valencia's illness. This was approximately October 2007. I happened to be on the phone with Ms. Valencia at the same time that Ms. Harris called and I forwarded the message. Ms. Valencia asked when they needed the information. Ms. Harris replied – "Yesterday."

- As National Park Service employees, we routinely receive email requests to donate leave to those people who have exhausted their sick leave and have serious medical issues. We asked Ms. Valencia why she was not on that list. It was several months later that Ms. Valencia was placed on that list.

- One evening a few months ago I called Ms. Valencia to ask how she was doing. She was very depressed and spoke of ending it all. I was extremely upset after speaking with her and not knowing what to do; I called Tuskegee Airmen NHS Site Manager Deanna Mitchell. I was concerned that she might commit suicide

with all that she had been going through with her illness and the harassment at work. Ms. Mitchell said that she would call her.

- On a few occasions, visitors have come into the Carver Museum or called the Museum stating that they were in Tuskegee to pick up artifacts. I would call Ms. Valencia to tell her the visitors were here and she would have no idea that they were coming. I have asked these people who they spoke with and it was always Chief of Resource Education Tyrone Brandyburg. Apparently Mr. Brandyburg made arrangements with these individuals and did not tell Ms. Valencia. The visitors have been upset that Ms. Valencia was not informed about their visit.

- Ms. Valencia and a co-worker Ms.LaJunnida (Rene) Frazier were victims of discrimination when fellow co-workers Ms. Robyn Harris and Mr. Tyrone Brandyburg speculated on their sexual orientation and relationship. I was an eyewitness to comments made by Park Ranger Robyn Harris. She stated that Ms. Rene Frazier was the girlfriend of Ms.Valencia. These comments were detrimental to the work environment.

- Ms. Valencia was told during a staff meeting by Mr. Tyrone Brandyburg that she was to move her office from the curatorial storage building to the George Washington Carver Museum. She had not been given any prior warning that she was to move and was told to be completely moved out of the curatorial storage area in three days. Ms. Valencia asked why she was being moved and she was given no answer.

- It is my understanding that Ms. Valencia has been listed as a witness in discrimination complaints against the National Park Service involving both Superintendent Catherine Light and Chief of Resource Education Tyrone Brandyburg. She also served as the park Shop Steward for the American Federation of Government Employees. Ms. Valencia along with several employees made an attempt to improve the work environment by sending letters to National Park Service Director Mary Bomar. The letters detailed the hostile environment that had been created by management. She was routinely placed in confrontational situations with Superintendent Catherine Light and Chief of Resource Education Tyrone Brandyburg. Thus Ms. Valencia was placed in a potential position of being a victim of reprisal. Because of her support of those who have filed complaints she has suffered.

The above observations were made to best of my knowledge.

_Shirley Baxter_
Shirley Baxter

_02/13/08_
Date

_Jacquelyn Carlisle_
_Notary Public_
_witnessed_
2/13/08

## Explanation of Documentation

Countless vain attempts to remedy the situation fell upon deaf ears which you can see by the attached documents. Numerous attempts were made using the normal chain of command and protocol that went unheeded and retaliated to.

February 6, 2007

Tyrone Brandyburg
Tuskegee Institute NHS
1212 West Montgomery Road
Tuskegee Institute, Alabama 36088

Dear Mr. Brandyburg:

This letter is in reference to your memorandum dated February 1, 2007 requesting more "Medical Documentation". First, there were no attachments to this memorandum.

Second, I am concerned as to why this information is being requested. I feel that the request for "Medical Documentation" is harassing, abusive, excessive, and is reprisal for my union activities to date. In short, your request for medical documentation is in excess of the medical certification required under the Family Medical Leave Act (FMLA). Further, I feel that the request requires the release of personal and or confidential information in violation of the FMLA guidelines. Nevertheless, I will timely provide written medical certification of my condition to you as soon as possible.

Third, as of February 5, 2007, I have 173 hours of accrued annual leave. Pursuant to the union contract, annual leave is provided to allow employees extended leave for rest and recreation and to provide periods of time off for personal and emergency purposes. Further, the use of annual leave is the absolute right of the employee. My request for leave as a result of a diagnosis of CAD clearly falls under this category. As such I request the use of my accrued annual leave so that I may restrict my physical activity until my medical condition is resolved.

Your over burdensome request has added significant undue stress and has compounded the already pre-existing medical conditions. I appreciate your consideration for these issues addressed above. I know you will show the greatest professionalism and integrity in addressing this matter. I look forward to rectifying this matter so that I may return to work as soon as possible.

Sincerely,


Teresa Valencia


Attachment: Dr. Sanchez, M.D. – Coronary Artery Disease
            Dr. Pervaiz A. Malik, M.D. – Cardiac Evaluation



Tyrone Brandyburg

03/21/2007 02:40 PM
CST

To: Teresa Valencia/TUIN/NPS@NPS
cc: Shirley Streeter/TUIN/NPS@NPS, Catherine Light/TUIN/NPS@NPS
Subject: Re: Field Museum - Taxidermy Specimens

Hi Teresa:

If you feel that you have been exposed to lead arsenic or paris green, it is your responsibility to go to the physician of your choice to ascertain whether or not you have been exposed to any poisons. Please have them provide you with a medical report. Use the appropriate leave, (i.e. sick leave or annual leave).

Once you return with the report, we will proceed from there. I highly recommend that you do not go back into that environment until the issue has been resolved.

Thanks

H. Tyrone Brandyburg
Chief of Resource Education & Interpretation
Tuskegee Institute National Historic Site
Tuskegee Airmen National Historic Site
Selma to Montgomery National Historic Trail
334-727-6390 Telephone
334-727-4597 Fax
tyrone_brandyburg@nps.gov

Teresa Valencia

Teresa Valencia

03/21/2007 09:46 AM
CST

To: Tyrone Brandyburg/TUIN/NPS@NPS
cc: Bobby.Henderson@va.gov
Subject: Field Museum - Taxidermy Specimens

Hi Tryone:

By any chance have you found out whether or not I could be tested for occupational exposure to arsenic? If so, what steps do I need to take?

Thanks

Teresa Valencia

03/27/2007 09:47 AM
CDT

To: Edward Perez/WASO/NPS, Louis Rowe/WASO/NPS
cc:
Subject: Fw: Field Museum - Taxidermy Specimens

Hi Edward and Louis,

My supervisor, Tyrone Brandyburg forwarded the arsenic report from the Field Museum, which I am
forwarding to both of you. I went to see my physician Dr. Gilberto Sanchez yesterday and told him that I
needed to get a heavy metals screening and that it was recommended that an Occupational Physician
conduct the screening. He told me they could run the test, but that it would not be covered under my
insurance. I spoke with my physicians nurse today and she told me that the cost for the screening would
run around $500.00. My physician here is Dr. Gilberto Sanchez and his nurse is Nicole (334)271-4503.

Tyrone Brandyburg, Chief of Interpretation and Resource Education mentioned to me today that he has
some information for me pertaining to hazardous materials that he will be forwarding on to me. As I
mentioned in a previous conversation, Mr. Tyrone Brandyburg stated that at one time the taxidermy
specimens were encapsulated, but when they were moved from the Carver Museum to the off-site
storage facility the encapsulation was removed. Last night, I had the opportunity to speak with the
previous Museum Specialist, Michael Jolly, he stated that the whole time he was here the taxidermy
collection was never covered. If I remember correctly he worked here approximately 4 or 5 years. Prior to
that my current supervisor, Tyrone Brandyburg was the Museum Specialist.

In the Montgomery phonebook I found two doctors that work in County Industrial Medicine their names
are E. Arnold Johnson and William D. Sargeant (334)262-2602. I went to grab lunch yesterday and
thought I was going to pass out. I don't know if the tests will come out positive or negative, but I want to
get to the bottom of this. Something is going on with me and I am extremely concerned.

Thank you for your time and assistance in this matter.

Respectfully yours,

Teresa Valencia
Museum Specialist

—— Forwarded by Teresa Valencia/TUIN/NPS on 03/27/2007 09:47 AM ——



Tyrone Brandyburg

03/26/2007 01:28 PM
CST

To: Teresa Valencia/TUIN/NPS@NPS
cc: Catherine Light/TUIN/NPS@NPS
Subject: Re: Field Museum - Taxidermy Specimens

Hi Teresa

The attached file contains the report that was sent from the Field Museum. There are a few other action
items that also needs your attention in addition to adding the report to the catalog records. We can
discuss at staff meeting on Tuesday.

Thanks



NPS poison testing letter.doc
H. Tyrone Brandyburg
Chief of Resource Education & Interpretation



The Field Museum

CONSERVATION, DEPARTMENT OF ANTHROPOLOGY

### Description of semi-quantitative testing methodology for the presence of arsenic ($As^{3+/5+}$) as utilized for three objects in the collection of Tuskegee Institute National Historic Site

During the week of March 12-16[th], I traveled to the Tuskegee institute NHS with three other Field Museum employees to evaluate objects for potential inclusion in a traveling exhibit about George Washington Carver. Of the objects viewed, three were taxidermy birds. In the Anthropology Department of the Field Museum, it is standard procedure to perform arsenic spot tests on all artifacts that will be exhibited or otherwise routinely handled. While in Tuskegee, I had over 150 objects to assess for condition. For this reason, I was only able to get samples for poison testing from materials that would be most likely to have been treated with pesticide. Taxidermy animals, such as the birds mentioned above, are very susceptible to insect damage and therefore likely to have been treated with pesticide. It is known that Dr. Carver advocated the use of arsenical pesticides such as lead arsenate and Paris Green (copper (II)-acetoarsenite).[']

Test and methods used for poison testing of TUIN 329/115, TUIN 330, and TUIN 331/114:

Sampling: A strip of acid-free tissue paper was wrapped around the end of a bamboo skewer as a makeshift swab. The swab was dampened in filtered water and rolled over various representative parts of the object to pick up any possible arsenic powder residue; two sample swabs were prepared from each object. The samples were stored in polyethylene zip-lock bags prior to testing; the swabs for each object were stored in separate bags. A control sample was prepared by dipping a swab in the same filtered water used for the sample swabs; this swab was also placed in a polyethylene bag for storage. All samples were returned to the Field Museum for testing.

Test procedure: Semi-quantitative test for the presence of arsenic ($As^{3+/5+}$) using the Merkoquant 10.026 Arsenic Test Kit (available from EM Science, Gibbstown, NJ).

Testing vessels (13 x 100 mm glass test tubes) were filled with five milliliters of deionized water each. One sample swab from each of the three objects was placed in the water in its own test tube and allowed to soak for 30 minutes, with agitation at 15 minutes. The control sample described above and a known positive control were tested in an identical manner. While the samples were soaking, indicator strips were inserted through ready-made slits in test tube caps. After 30 minutes, the sample solutions were slightly agitated and the swabs removed. One measuring spoon full of Reagent #1, zinc powder, was added to the sample solution in each test tube, which was then agitated to ensure thorough mixing. Ten drops of Reagent #2, 32% hydrochloric acid, were added to each test tube before they were capped with the caps bearing indicator strips. The reaction was left to proceed for 30 minutes, with agitation at 15 minutes. After thirty minutes, the vessels were uncapped, and the reaction zone pad on the indicator strip was compared with the color scale provided with the test kit.

Test Principle: From Odegaard, et al. 2000. *Material Characterization Tests for Objects of Art and Archaeology*. London: Archetype Publications.
Hydrogen gas is formed by reaction of zinc metal with hydrochloric acid. Arsenic compounds, if present in the solution, are reduced to arsine gas by reacting with nascent hydrogen. The arsine gas reacts with the mercury (II) bromide treated paper on the indicator strip, forming colored compounds.

Test Results:
Control sample gathered at Tuskegee: NEGATIVE. The color of the reaction zone on the indicator strip remained unchanged throughout the test.

Taxidermy chicken, TUIN 329/115: POSITIVE. The color of the reaction zone on the indicator strip indicated an amount of 0.5 mg/liter $As^{3+/5+}$ according to this test.

Tina Gessler, Assistant Conservator                                                                3/27/2007



The Field Museum

CONSERVATION, DEPARTMENT OF ANTHROPOLOGY

Taxidermy chicken TUIN 330: POSITIVE. The color of the reaction zone on the indicator strip indicated an amount of 1.0 mg/liter $As^{3+/5+}$ according to this test.

Taxidermy chicken TUIN 331/114. POSITIVE. The color of the reaction zone on the indicator strip indicated an amount of >3 mg/liter $As^{3+/5+}$ according to this test.

The results of arsenic testing were recorded for the Field Museum's records and were communicated by telephone to Teresa Valencia, Museum Specialist at Tuskegee Institute NHS on March 19, 2007.

For example: Bulletin No. 36. Carver, G.W. *How to Grow the Tomato and 115 Ways to Prepare it for the Table.* Tuskegee Institute Press. Second Edition, August 1936. This bulletin recommends the use of lead arsenate to protect tomatoes from worms.

Also, NPS object TUIN 1817, a framed example of the use of arsenical pesticides on plant materials.

Tina Gessler, Assistant Conservator                                3/27/2007

Teresa Valencia

04/16/2007 03:38 PM
CDT

To: Allen Bohnert/Atlanta/NPS@NPS, Linda Giles/Atlanta/NPS@NPS, Louis Rowe/WASO/NPS@NPS, Edward Perez/WASO/NPS@NPS

cc:

Subject: Taxidermy Collection

Dear Mr. Allen Bohnert:

As you are aware, the Field Museum from Chicago, Illinois, visited the park about a month ago. They are interested in borrowing some of our collections for an exhibit. While they were here they took a small sample from the taxidermy collections to test for arsenic. The items that they tested all came back positive. The conservator, Tina Gessler, immediately notified me about her findings and told me to take extra precautions, which I did. I secured all of the specimens and placed a sign on the cabinet door that no one is to open that cabinet without written authorization.

Today, while I was doing my walk through through the storage area I looked in my keybox and noticed that the key for the taxidermy specimens was not in it's proper location. I then took the key and checked the cabinet and noticed that all of the taxidermy specimens were missing.

When I discovered this I immediately notified Louis Rowe and Edward Perez and they forwarded my memo on to Linda Giles who is the Safety and Health Manager at the Atlanta Regional Office. She told me to check with my supervisor to see if the items had been loaned out or transferred. When I spoke with Tyrone this afternoon I asked him if we were going to allow the Field Museum to borrow such specimens and he said he didn't think so, because they aren't in good shape. I then asked him if he knew what happened to the taxidermy collection. He told me that under Catherine Lights authority he was told to remove the objects from the collection. I then asked him where they were located and he told me that I didn't need that information.

I find it to be highly irresponsible to remove toxic items from a collection where they have already been secured. I have already been exposed to the arsenic. Why would you then expose another person to a harmful substance unneccesarily?

Respectfully yours,

Teresa Valencia

 **Tyrone Brandyburg**
05/10/2007 05:05 PM
CST

To: Teresa Valencia/TUIN/NPS@NPS
cc: Wendell.Echols@va.gov
Subject: Re: Annual and Sick Leave[ ]

Teresa:

I am available to discuss this issue with you tomorrow anytime after 12:00pm

Thanks

H. Tyrone Brandyburg
Chief of Resource Education & Interpretation
Tuskegee Institute National Historic Site
Tuskegee Airmen National Historic Site
Selma to Montgomery National Historic Trail
334-727-6390 Telephone
334-727-4597 Fax
tyrone_brandyburg@nps.gov

Teresa Valencia

Teresa Valencia
05/10/2007 03:25 PM
CDT

To: Tyrone Brandyburg/TUIN/NPS@NPS
cc: Wendell.Echols@va.gov
Subject: Annual and Sick Leave

Dear Mr. Tyrone Brandyburg:

Due to my on-going health issue both my annual leave and sick leave are dwindling down. I would like to know the process of applying for donated leave. If possible, could I set up a meeting with both you and Wendell Echols to discuss this matter further.

Thank you for your time and assistance and I look forward to hearing from you in the near future.

Respectfully yours,

Teresa Valencia

May 23, 2007

Tuskegee Institute National Historic Site
Attn: Tyrone Brandyburg
1212 West Montgomery Road
Tuskegee, Alabama 36116

Dear Mr. Tyrone Brandyburg:

I am writing this letter in response to the memorandum you mailed to me dated May 18, 2007.

In your memo you stated that I must exhaust all of my leave and that my medical emergency must be expected to last at least 80 hours. I am requesting that I be placed on the Leave Share Program. If I do not meet the criteria for the Leave Share Program I would like to request that I be allowed to borrow sick leave. I have enclosed a copy of my leave slip for your records.

If further information is needed regarding this matter please feel free to contact me.

Respectfully yours,

Teresa Valencia



United States Department of the Interior

National Park Service
Tuskegee Institute
National Historic Site
1212 West Montgomery Road
Tuskegee Institute, Alabama 36088



IN REPLY REFER TO:

A6423 (TUIN, SEMO, TUIN)

May 23, 2007

SOP NUMBER 1

MANAGEMENT

## A. PURPOSE

To establish procedures for identifying the Chain of Command, rank and authority at the Tuskegee Institute National Historic Site, Selma to Montgomery National Historic Site and Tuskegee Airmen National Historic Site.

## B. GENERAL

A Chain of Command shall be maintained within the units of Tuskegee Institute NHS, Tuskegee Airmen NHS and Selma to Montgomery NHT (parks). The Chain of Command will assist in the orderly and effective management of our park units.

## C. DEFINITIONS

**Chain of Command:** The hierarchy, rank and authority in which the employees at the park(s) in each grade follows the chain of command.

## D. CHAIN OF COMMAND

The following constitutes the Chain of Command at the park(s) that must be followed by all employees on the rolls of the Central Alabama Parks:

1. Superintendent
2. Site Managers (applicable to individual sites TUAI & SEMO) & Division Chiefs
3. Work Supervisor(s), when applicable

## E. RESPONSIBILITIES

### Superintendent

1. Provides overall supervision, management and policy direction for each division in the parks (i.e. administrative support, resource management, resource protection, visitor services and interpretation, planning and development, and facility maintenance);

2. Provides direction, leadership, and guidance through staff meetings, conferences, personal interviews, written or verbal orders and instructions;

3. Evaluates the operating efficiency and effectiveness of each division in accomplishing the goals and objectives and provides a general framework of management policy;

4. Classify, recruits, and staff all subordinate Federal Wage System positions and General Schedule positions within the parks;

5. Issue decisions on all disciplinary actions and adverse actions;

6. Encourages and guides a spirit of cooperation and coordination among the various divisions of the parks;

7. Interprets and implements park policy and practices, makes changes, and improvements in park policy, and resolve significant management problems;

8. Ensure employees receive pay for the time worked;

9. Ensure a safe and healthy work site that is free of illegal discrimination;

10. Ensure the right to form, join, and to participate in the Union.

### Site Manager's, Division Chief Roles, and Work Supervisors

1. Provides direction, leadership, and guidance through staff meetings, conferences, personal interviews, written or verbal orders and instructions;

2. Evaluates the operating efficiency and effectiveness of the division in accomplishing the goals and objectives and provides a general framework of management policy;

3. Establishes and maintains a safe, productive, supportive and well-ordered work environment;

4. Issue proposed disciplinary actions and adverse actions;

5. Encourages and guides a spirit of cooperation and coordination in the division or work unit;

6. Interprets and implements park policy and practices, and makes changes as appropriate within discretionary authority and with the Superintendent's approval;

7. Advise employees regarding assigned duties and conduct expectations and observing employees performance and conduct to ensure compliance with the standards of ethical conduct and other established work requirements;

8. Investigate and document circumstances related to incidents of employee misconduct;

9. Effectively use the individual performance management process:
   a. Establish clear expectations for employees
   b. Provide honest and timely feedback
   c. Support employees' growth and development
   d. Recognize and reward desired performance
   e. Correct undesirable performance
   f. Remain focused on helping employees to succeed

5. Provides leadership to employees and to help create a supportive performance management culture;

6. Is fair, reasonable, accountable, consistent, and timely;

7. Communicates honestly and directly;

8. Follow park policies, procedures, and guidelines

All members of these park units must follow the Chain of Command. If you have problems start at the lowest point and work your way up. The Superintendent is the terminus for the park units, the Southeast Regional Office follows if necessary, and then the Washington Office. Constant disregard for Chain of Command will not be tolerated.

As an employee of the National Park Service and the Department, you are required to carry out the announced policies and programs of the National Park Service and the Department and to obey proper requests, directions, or supervisors. While policies related to your work are under consideration, you may express your professional opinions and points of view. However, once a decision has been rendered by those in authority, you are expected to comply with the decision and work to ensure the success of programs or

issues affected by the decision. You will be subject to appropriate disciplinary action, including removal, if you fail to:

(a) Comply with any lawful regulations, orders, or policies; or
(b) Obey the proper requests of supervisors having responsibility for my performance.

In addition, you shall not engage in any conduct or activity which is in excess of your authority, or is otherwise contrary to any law or announced National Park Service or Departmental policy.

*This SOP has been incorporated into our Parks' SOPs located on our \Shareall drive. This SOP is not a substitute for, nor does it address the EEO complaint process.*

Teresa Valencia

05/31/2007 03:48 PM
CDT

to:  Tyrone Brandyburg/TUIN/NPS@NPS
cc:  Catherine Light/TUIN/NPS@NPS
Subject:  Advanced Sick Leave

Dear Mr. Tyrone Brandyburg

I just wanted to do a follow-up to our conversation in my office this morning. I would like some clarification pertaining to the medical information needed to qualify for advanced sick leave. Is it my understanding that your are in need of my diagnosis, prognosis, and eventual outcome? The only reason I am requesting advanced sick leave is because my physician has been extremely shorthanded and hasn't had time to complete the necessary paperwork. However, if it is necessary to provide you with the same information that is need to be placed on the "leave donor program" then I would prefer to be placed on that program only.

I spoke with Dr. Sanchez's nurse today and she said that she would try and get the necessary paperwork to me by Monday, but explained that they are extremely shorthand at this time.

Thank you for your time and assistance in this matter.

Respectfully yours,

Teresa Valencia

Teresa Valencia

06/04/2007 12:07 PM
CDT

To   Tyrone Brandyburg/TIIN/NPS@NPS

cc:

Subject:  Advanced Sick Leave

Dear Mr. Tyrone Brandyburg,

I am doing a follow-up on my letter that I sent to you on 05/31/2007 concerning medical documentation. Could you please give me some sort of clarification on what type of documentation is necessary?

I have an appointment today with Dr. Gilberto Sanchez, so I want to make sure that I ask him for the proper documentation.

Thank you for your time and assistance in this matter.

Respectfully yours,

Teresa Valencia



United States Department of the Interior

National Park Service
Tuskegee Institute
National Historic Site
1212 West Montgomery Road
Tuskegee Institute, Alabama 36088



P36 (247)

June 5, 2007

MEMORANDUM

To:        Teresa Valencia, Museum Specialist, TUIN

From:      Chief of Interpretation, TUIN

Subject    Request for Medical Documentation

You have requested to be placed on the Voluntary Leave Program and provided a brief
statement from your doctor indicating that you cannot return to work.

In order to properly consider your request, I need more detailed medical documentation from
your physician concerning your medical condition. Specifically, I need documentation that
addresses the items listed below. A new medical examination is not necessary if your doctor
can provide current information from his/her records. It is preferable that the documentation
is recorded on his/her letterhead stationery and that each item be responded to by the item
number. Your doctor should be sure to sign the report. If an item is not applicable, he/she
should so indicate.

(a) The history of the specific medical condition(s), including references to findings
from previous examinations, treatment, and responses to treatment

(b) Clinical findings from the most recent medical evaluation, including any of the
following which have been obtained: findings of physical examination, results of
laboratory tests, and other special evaluations or diagnostic procedures.

(c) Diagnosis, including the current clinical status

(d) Prognosis, including plans or recommendations for future treatment and an
estimate of the expected date of full or partial recovery, if applicable.

(e) An explanation of the impact of the medical condition on overall health and
activities, including the basis for any conclusion that restrictions or accommodations
are or are not warranted, and where they are warranted, an explanation of their
therapeutic risk avoiding value.



(f) An explanation of the medical basis for any conclusion which indicates the likelihood that you are or are not expected to suffer sudden or subtle incapacitation by carrying out, with or without accommodation, the tasks or duties of your position.

(g) Narrative explanation of the medical basis for any conclusion that the medical condition has or has not become static or well stabilized and the likelihood that you may experience sudden or subtle incapacitation as a result of the medical condition.

You are responsible for any costs incurred in connection with obtaining this documentation. So that your physician has sufficient information to respond to the items concerning your ability to perform in your job and accommodations that might be recommended, it is important that you provide him/her with your position description. If your physician has any question about the information being requested, or if he/she needs any additional information regarding the requirements of your job, he/she can telephone me at 334-727-6390.

If you are unable to provide the medical documentation, I will decide on your request based on the limited information you have previously provided to me.

Sincerely,

H. Tyrone Brandyburg

I acknowledge receiving this document. _____    _____

                                                    Signature    Date



"Echols, Wendell J.
CAVHCS"
<Wendell.Echols@va.g
ov>

06/09/2007 07:06 AM
AST

To: <catherine_light@nps.gov>
cc: <tyrone_brandyberg@nps.gov>, <teresa_valencia@nps.gov>
Subject: FW: Notification of Change

Sent to correct E-Mail address.

**From:** Echols, Wendell J. CAVHCS
**Sent:** Thursday, June 07, 2007 10:11 AM
**To:** 'catherine.light@nps.gov'; 'tyrone.brandyberg@nps.gov'
**Cc:** Lowe, James K. Jr. CAVHCS; Henderson, Bobby L. CAVHCS; 'teresa.valencia@nps.gov'
**Subject:** Notification of Change

Good morning Tyrone,
I am sending this E-Mail in regards to your plans to move Ms Valencia from her present location to the
Carver Museum. She has stated that she was told verbally on Monday that she would be relocated. The
position of the Union is that there should be written communication prior to a change such as this. The
standard time frame for the notification process is 2 weeks, but can be waived by the Employee upon
consent. We are requesting that this be put in writing for documentation purposes. Please contact me to
determine if we need to meet on this subject. You may reach me at 334-421-2113 334-421-2113.

Thanks for your attention to this matter.

Wendell J. Echols

Teresa Valencia

06/12/2007 02:34 PM
CDT

To: Robyn Harris/TUIN/NPS@NPS
cc: Catherine Light/TUIN/NPS@NPS  Wendell Echols@va.gov
Subject: Requesting Meeting with Union Representation

Dear Robyn Harris:

Since you are currently the Chief of Resource Education and Interpretation I would like to request a meeting with you along with my Union Representative. This meeting is to discuss my medical certification from Doctor Gilberto Sanchez. Mr. Tyrone Brandyburg provided me with the application for the "Voluntary Leave Transfer Program." Doctor Gilberto Sanchez completed the form, but Mr. Tyrone Brandyburg stated in his letter dated June 5, 2007 that the information my doctor provided was unacceptable.

I spoke with my physician today and he stated that he has supplied Mr. Tyrone Brandyburg with sufficient information. According to my doctor, providing further documentation would be in violation of HIPA regulations.

This meeting is to assist me in determining other possible options, if any.

Thank you for your time and assistance in this matter.

Respectfully yours,

Teresa Valencia
Museum Specialist

 Catherine Light
06/13/2007 04:24 PM
CDT

To: "Echols, Wendell J. CAVHCS" <Wendell.Echols@va.gov>
cc: teresa_valencia@nps.gov, tyrone_brandyberg@nps.gov, shirley_streeter@nps.gov
Subject: Re: FW: Notification of Change

Attached per request



memo for move.DOC
Catherine Farmer Light
Superintendent, Tuskegee Institute NHS,
Tuskegee Airmen NHS & Selma to Montgomery NHT

The National Park Service cares for special places saved by the American people so that all may experience our heritage!

"Echols, Wendell J. CAVHCS" <Wendell.Echols@va.gov>

 "Echols, Wendell J CAVHCS" <Wendell.Echols@va.g ov>
06/09/2007 07:06 AM AST

To: <catherine_light@nps.gov>
cc: <tyrone_brandyberg@nps.gov>, <teresa_valencia@nps.gov>
Subject: FW: Notification of Change

Sent to correct E-Mail address.

**From:** Echols, Wendell J. CAVHCS
**Sent:** Thursday, June 07, 2007 10:11 AM
**To:** 'catherine.light@nps.gov'; 'tyrone.brandyberg@nps.gov'
**Cc:** Lowe, James K. Jr. CAVHCS; Henderson, Bobby L. CAVHCS; 'teresa.valencia@nps.gov'
**Subject:** Notification of Change

Good morning Tyrone,
I am sending this E-Mail in regards to your plans to move Ms Valencia from her present location to the Carver Museum. She has stated that she was told verbally on Monday that she would be relocated. The position of the Union is that there should be written communication prior to a change such as this. The standard time frame for the notification process is 2 weeks, but can be waived by the Employee upon consent. We are requesting that this be put in writing for documentation purposes. Please contact me to determine if we need to meet on this subject. You may reach me at 334-421-2113 334-421-2113.

Thanks for your attention to this matter

Wendell J. Echols



United States Department of the Interior

National Park Service
Tuskegee Institute
National Historic Site
1212 West Montgomery Road
Tuskegee Institute, Alabama 36088



P4021 (TUIN, SEMO, TUAI)

June 13, 2007

Memorandum

To          President, AFGE, Local 110

From:       Superintendent, Tuskegee Institute National Historic Site, Selma to Montgomery National
            Historic Trail, Tuskegee Airmen National Historic Site

Subject:    Notification, Move of Employee

This memorandum serves notice that the Union was verbally notified of an employee move to the
employee on June 5, 2007 via the employee herself, who serves as Union Shop Steward. She raised no
objection but indicated she would need assistance. This assistance was provided. An OHSA evaluation
recommended that restroom facilities for this employee be provided. This move is to accommodate that
recommendation for the wellbeing and comfort of the employee.

Sincerely,

*/s/ Catherine F. Light*
Catherine F. Light
Catherine F. Light, Superintendent



June 14, 2007

Memorandum

To: Robyn Harris, Acting Chief of Resource Education and Interpretation

For: Catherine Light, Superintendent

From: Teresa Valencia, Museum Specialist

Subject: Leave Donor Program

I've made both a verbal request as well as a written request to Mr. Tyrone Brandyburg, Chief of Resource Education and Interpretation, to be placed on the "leave donor program" or to be given an advancement of sick leave

Mr. Tyrone Brandyburg supplied me with a form for the "leave share program" that my physician needed to fill out. When I returned that form to Mr. Brandyburg he said it was unacceptable. I again went to my physician and asked him to write a letter in order to satisfy Mr. Brandyburg's criteria for the "leave share program". However, Mr. Tyrone Brandyburg also requested that I provide him with a copy of my test results from Dr. Sanchez's office at my own expense.

I have enclosed a copy of the letter that Dr. Gilberto Sanchez provided me with in order to be placed on the "leave share program". I find Mr. Tyrone Brandyburg's request for my test results to be inappropriate and in violation of my rights under the Health Information Protection Act (HIPA). I am concerned as to why this information is being requested. I feel that the request for "Medical Documentation" is harassing, abusive, excessive, and is retaliation and reprisal. In short, Mr. Brandyburg's request for medical documentation is in excess of the medical certification required under the Family Medical Leave Act (FMLA). Further I feel that the request requires the release of personal and or confidential information in violation of the FMLA guidelines

It is my understanding that to qualify for the "leave share program" that I must exhaust all of my sick leave as well as annual leave, which I have at this time. I would also like to note that I invoked my entitlement to the Family Medical Leave Act on February 7, 2007

I find Mr. Tyrone Brandyburg's request to be burdensome and has added significant undue stress. I appreciate your consideration for these issues addressed above. I believe you will show the greatest professionalism and integrity in addressing this matter

I find Mr. Tyrone Brandyburg's request to be burdensome and has added significant undue stress. I appreciate your consideration for these issues addressed above. I believe you will show the greatest professionalism and integrity in addressing this matter

June 15, 2007
11:00 a.m.

**Leave Share Meeting Attendance: Bobby Henderson, Wendell Echols, Robyn Harris, Catherine Light, Teresa Valencia**

This meeting was called by Teresa Valencia in order to discuss her leave. Ms. Teresa Valencia has exhausted all of her leave time.

Ms. Catherine Light, Superintendent, suggested that the Union start the meeting. Mr. Wendell Echois then spoke up and stated that all of us were here to discuss the "leave share." It was stated that Ms. Valencia had applied for the "leave share program," but that her application was refused by Mr. Tyrone Brandyburg, Chief of Resource Education and Interpretation. Ms. Light then entered the conversation and stated that my letter dated 06/14/2007 was incorrect when I wrote that the items Tyrone Brandyburg was requesting was inappropriate and a violation of my rights. She then distributed information on the Family Medical Leave Act in which she highlighted several sections. Ms. Valencia then spoke up and asked why the park needed such in-depth medical documentation. Ms. Valencia stated that she had enacted her FMLA rights back in February of 2007. Ms. Catherine Light stated numerous times that my documentation for FMLA rights was not sufficient evidence to prove that I had a serious health condition even though my doctor stated clearly that I had Coronary Artery Disease and that it would be detrimental for me to return to work at this time until the issue was resolved. It was impossible for my doctor to give her an approximate duration of the condition until after I underwent the procedure for a heart catherization. She then stated that's why I wasn't approved then and that's why I am not approved now. She also stated that she disagreed with my doctor's diagnosis of "Occupational Exposure" to lead and arsenic. Mr. Bobby Henderson then asked, why is Mr. Brandyburg requesting such in-depth medical documentation...he is not a doctor. Ms. Light then stated that that information is sent up to the Human Resources Office in Atlanta, Georgia, for them to make a decision on whether or not to give me an advancement of leave or to place me on the "leave share program." Mr. Bobby Henderson then asked her why Mr. Tyrone Brandyburg has not sat down with Ms. Valencia to assist her. Ms. Light said she didn't know, but that Mr. Brandyburg supplied Ms. Valencia with all the information necessary to get the material from my physician. Towards the end Ms. Catherine Light herself stated that she had the ultimate decision. So again, Mr. Henderson asked her why ...if you know Ms. Valencia is sick are you not trying to assist her. Ms. Light said she would make accommodations for Ms. Valencia when she supplies the appropriate documentation from her physician. Ms. Teresa Valencia's only reply to Ms. Light is that she understood even though she disagrees. Teresa Valencia and Union Officials thanked Ms. Catherine Light for her time at the conclusion of the meeting.

**Union Note: After the meeting I spoke with Mr. Bobby Henderson about our next step. He said he needed to discuss with James Lowe and then forward the information on to the General Council in Atlanta, Georgia, before we proceed.**

Depending on the ruling of the General Council the Union will then distribute this information to the media (i.e., Fox News, CNN, MSNBC, etc.) next week.

Teresa Valencia

06/18/2007 09:53 AM
CDT

To  Bobby Henderson@va.gov

cc
Subject  Re: Friday's meeting

Hi Bobby

On Friday around 3:45 pm Catherine called me and asked me to provide her with the original copy of the form that the doctor gave me for the "Leave Program". I told Catherine that I gave the original to Tyrone Brandyburg. At approximately 9:15 am Ms. Robyn Harris called me and requested the same information. I told her that I had given the original to Tyrone Brandyburg and that I has already had this discussion with Ms. Catherine Light.

Friday, when Supt. Light called she said she needed the information in order to send my material on to Atlanta. One thing that did not sit well with me at that meeting was when she said she had invoked or is going to invoke her FMLA Rights. Both myself and Mr. Ed Wilson have had to jump through all sorts of hoops with these people just to get a little bit of assistance.

Anyway, I just wanted to make you aware that she has requested this information from me. Thanks for your assistance in this matter.

**Teresa Valencia**

06/26/2007 11:16 AM
CDT

To: Sandra Owensby/Atlanta/NPS@NPS
cc: Bobby.Henderson@va.gov
Subject: Application to Become a Leave Recipient

Dear Ms. Sandra Owensby:

I would like to formally request written documentation as to why my application to "become a leave recipient" was denied.

Thank you for your time and assistance in this matter.

Respectfully yours,

Teresa Valencia



Attractive Card for ugly credit

Netflix Try for Free!

Online Degree Programs

6.3% 30yr fix* Estimate savings

Degrees in as Fast as 2 years

**Date:** Fri, 10 Aug 2007 07:44:15 -0700 (PDT)

**From:** "Teresa Valencia" <valenciaisthe1@yahoo.com> View Contact Details Add Mobile Alert

**Subject:** Fwd: Teresa Valencia

**To:** Greg_Hindsley@nps.gov

Dear Mr. Greg Hindsley:

This letter pertains to the faxed documentation that Shirley Baxter sent to your office on August 7, 2007. In reviewing my letter I noticed that I forgot to give your office my contact number, which is (334)868-0901. Also, I am forwarding a message that I sent to my Supervisor, Tyrone Brandyburg yesterday evening along with documentation from my physician. I am still waiting for a response from him and I will forward that on to you as well.

I truly hope that I will be able to find some resolution and relief to this whole situation. Your assistance in this matter is greatly appreciated and I look forward to hearing from you in the near future.

Respectfully yours

*Teresa Valencia*

Note: forwarded message attached.

Park yourself in front of a world of choices in alternative vehicles
Visit the Yahoo! Auto Green Center.

**Forwarded Message** [ Download File ]

**Date:** Thu, 9 Aug 2007 17:44:57 -0700 (PDT)

**From:** "Teresa Valencia" <valenciaisthe1@yahoo.com>

**Subject:** Teresa Valencia

**To:** Tyrone_Brandyburg@nps.gov, Buddy.Henderson@va.gov, James.Lowe@va.gov

**HTML Attachment** [ Scan and Save to Computer ]

Dear Mr. Tyrone Brandyburg

You might not be aware that I sustained an injury on July 30, 2007. While conducting my

regular daily routine, due to my dizziness and numbness, collapsed in the Oaks while going down the stairs. On the date in question I was informed to submit a CA-1, which I have. Due to the fall, I sustained neck, back, and hip injuries (i.e., spasms, joint stiffness, and bruises). The physician's request that I take one day with medication to assist with the soreness and asked me to return August 9, 2007 for a follow-up visit. Diagnosis are as stated per physician (see attachment). Prognosis, due to other medical testing I was asked to return on August 15, 2007. Testing includes MRI, intense CAT Scanning, and Tilt Table Testing.

My concerns are the remainder of the time needed for testing. Would you submit another CA-1 for the following dates? I have been asked to follow-up with management when there are concerns about my health situation before anything can be approved and I am asking you to follow-up with this request.

If there are any questions, please feel free to contact me by cell (334)868-0901 or via email.

Respectfully yours,

Teresa Valencia

Looking for a deal? Find great prices on flights and hotels with Yahoo! FareChase

**Attachments**                                    Attachment scanning provided by:    Norton **AntiVirus**

Photos:

Scan and Save to Computer

Doctor_Injury.jpg (643k) [View]

Delete    Reply ▼    Forward ▼    Move... ▼

Previous | Next | Back to Messages                    Save Message Text | Full Headers

Check Mail    Compose                              Search Mail    Search the Web

Copyright © 1994-2007 Yahoo! Inc. All rights reserved. Terms of Service - Copyright/IP Policy - Guidelines
NOTICE: We collect personal information on this site.
To learn more about how we use your information, see our Privacy Policy



**Shirley K Baxter**
08/15/2007 04:02 PM
CST

To: Teresa Valencia/TUIN/NPS@NPS
cc:
Subject: Fw. safety question

--- Forwarded by Shirley K Baxter/TUIN/NPS on 08/15/2007 04:02 PM ---



**Shirley Streeter**
08/15/2007 01:54 PM
CDT

To: Shirley K Baxter/TUIN/NPS@NPS
cc: teresa_valencia@nps.gov, Andrew Callens/TUIN/NPS@NPS, Kevin Colley/TUAI/NPS@NPS, Catherine Light/TUIN/NPS@NPS, Tyrone Brandyburg/TUIN/NPS@NPS, Kevin Colley/TUAI/NPS@NPS
Subject: Re: safety question

Shirley,

I spoke with Andrew and he indicated everything was in order. Tyrone will be coming over shortly to assess the situation.

Shirley Streeter
Administrative Officer
Tuskegee Institute National Historic Site
Phone: 334-727-6390
Fax:    334-727-4597
Email:   Shirley_Streeter@nps.gov
Shirley K Baxter



**Shirley K Baxter**
08/15/2007 01:41 PM
EDT

To: Shirley Streeter/TUIN/NPS@NPS
cc: teresa_valencia@nps.gov
Subject: safety question

Shirley S.—

Teresa was leaving for a doctor's appointment and asked me to ask you if the contractors stripping the floors in the restrooms need to be wearing PPE and is there adequate ventilation for them in that confined area. There is a strong chemical odor coming from the restroom area.

Thanks

August 7, 2007

Dear Director Mary Bomar:

This letter is in regards to an unsafe working environment that has been condoned by park administration officials through either out right indifference and or negligence

On April 19, 2007, I contacted OSHA on regards to exposure of lead and arsenic in the Museum Collection. I was showing symptoms of lead and arsenic exposure (i.e., headaches, light headedness, insomnia, irregular heartbeat, dizziness, fainting spells, lethargic, tremors, memory loss, anxiety, depression, difficulties concentrating, joint pain, muscle soreness, nausea, numbness, and diarrhea/constipation). I have been requesting from Superintendent Catherine Light and the Chief of Resource Education and Interpretation the right to be placed on the leave share program list or to be given an advancement of sick leave. Also, I have tried repeatedly to invoke my Family Medical Leave Act (FMLA) rights and on each occasion my requests have been denied. My finances are becoming negatively impacted by my superior's decisions and my treatment has been compromised.

I have been under the treatment of Dr. Gilberto Sanchez for the treatment of the above symptoms. The park Superintendent, Catherine Light and Chief of Resource Education and Interpretation, Tyrone Brandyburg have requested documentation above the normal in such similar circumstances. The information requested is a violation of the Health Information Protection Act (HIPA). My doctors have been willing to provide much of the information that they have requested, but I have been told repeatedly that the documentation provided is unacceptable.

I felt compelled to go to OSHA with my complaint concerned with exposure limits to lead and arsenic. After a number of OSHA inspections the park was cited with 8 violations, which are listed below:

**Citation 1 Item 1 Type of Violation: Serious**

29 CFR 1910.141(b)(1)(i): Potable water was not provided in all places of employment, for drinking, washing of the person, cooking, washing of foods, washing of cooking or eating utensils, washing of food preparation or processing premises, and personal service rooms:

(a) Maintenance Shed: Employees were not provided drinking water when mowing, trimming, cutting, cultivating, and maintaining equipment and grounds.

Date by Which Violation Must be Abated: 08/02/2007

**Citation 1 Item 2 Type of Violation: Serious**

29 CFR 1910.141(d)(2)(iii): Lavatories were not provided with hand soap or similar cleansing agent:

(a) Basement of G.W. Carver Museum: Employer did not provide hand soap for employees performing maintenance of museum displays and keeping the museum clean.

Date by Which Violation Must be Abated: 08/01/2007

Citation 1 Item 3 Type of Violation: Serious

29 CFR 1910.1018(e)(2): Initial monitoring was not performed for each workplace or work operation covered by this section to accurately determine the airborne concentration of inorganic arsenic to which employees may be exposed:

(a) G.W. Carver Museum: Employer failed to conduct exposure measurements to ascertain the levels of arsenic for employees arranging, disassembling, rearranging, shipping, and receiving taxidermied artifacts.

Date by Which Violation Must be Abated: 08/08/2007

Citation 1 Item 4 Type of Violation: Serious

29 CFR 1910.1025(d)(3)(i): The initial determination for lead was not based on employee exposure monitoring results and other relevant considerations listed in (A), (B) and (C) of this paragraph:

(a) G.W. Carver Museum: Employer failed to provide exposure measurements to ascertain the levels of lead for employees arranging, disassembling, rearranging, shipping, and receiving taxidermied artifacts

Date by Which Violation Must be Abated: 08/02/2007

**The alleged violations below have been grouped because they involve similar or related hazards that may increase the potential for illness.**

Citation 1 Item 5a Type of Violation: Serious

29 CFR 1910.1025 (1)(1)(i): Employee(s) working in an area where there was potential exposure to airborne lead at any level were not informed of the content of Appendices A and B of this regulation:

(a) G.W. Carver Museum: Employees were not informed of the proper methods of personal protection, personal hygiene, and medical surveillance while arranging, disassembling, rearranging, shipping, and receiving taxidermied artifacts in displays containing lead.

Date by Which Violation Must be Abated: 08/08/2007

Citation 1 Item 5b Type of Violation: Serious

29 CFR 1910.1200(h)(1): Employer did not provide employees with effective information and training on hazardous chemicals in their work area at the time of their initial assignment, and wherever a new physical or health hazard the employees have not previously been trained about is introduced into their work area. Information and training may be designed to cover categories of hazards (e.g., flammability, carcinogenicity) or specific chemicals. Chemical-specific information must always be available through labels and material safety data sheets.

(a) Artifact Storage Department: Employer failed to provide adequate training for employees handling taxidermied artifacts containing hazardous chemicals such as, but not limited to, arsenic, compounds, with health effects, such as, but not limited to, skin disorders, digestive and respiratory system disorders.

Date By Which Violation Must be Abated: 08/02/2007

Citation 1 Item 6 Type of Violation: Serious

29 CFR 1910 1200(g)(8): The employer did not maintain copies of the required material safety data sheets for each hazardous chemical in the workplace

(a) Artifact Storage Department: Employer failed to provide material safety data sheets for employees handling
taxidermied artifacts containing hazardous chemicals, such as, but not limited to, arsenic and lead, with health effects, such as, but not limited to, central nervous system, reproductive, and renal disorders.

Date by Which Violation Must be Abated: 08/02/2007

Given the fact that the park has been cited for these violations and have continually thwarted my efforts to be placed on the leave share recipient list, advanced sick leave, and the right to invoke my Family Medical Leave Act (FMLA) Rights, I would like to request a telephone conference with you concerning this issue with the hope that you might be able to assist me with this situation.

I have served this organization loyally and with skill for 14.5 years and as such I am writing this letter with a great deal of concern. In the place of overwhelming evidence the park has been unwilling to offer any form of assistance.

Thank you for your time and consideration in this matter.

Respectfully yours,


Teresa Valencia

**IN THE DISTRICT COURT OF THE
UNITED STATES FOR THE MIDDLE DISTRICT
OF ALABAMA
EASTERN DIVISION**

Civil No:    2008 SEP -2  A 10: 48

3:08-cv-069-WKW   URA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

Teresa Valencia vs. Department of Interior, Washington, D.C.

**Notice of Filing**

Please Take Notice
Come Now, Teresa Valencia, in want of counsel, and cause the following to be served on
the court (1) copy to the clerk, and (1) copy to the Defendants Attorney.

Leura G. Canary
United States Attorney
James J. DuBois
Assistant U.S. Attorney
Georgia Bar No. 281445
U.S. Attorney's Office
P.O. Box 197
Montgomery, AL 36101-0197

Date                                          Respectfully submitted

August 30, 2008                               Teresa A. Valencia, Pro'se